No. 2:09cv00327-TJW

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

_____

ROBERT L. ROBERSON, III,

*Petitioner,*

v.

RICK THALER,
    Director, Texas Department of Criminal Justice,
    Institutional Division,

*Respondent.*
_____

Petition for Writ of Habeas Corpus
from a Capital Murder Conviction in the
87th District Court of Anderson County, Texas
_____

# SUPPLEMENT TO
# PETITION FOR WRIT OF HABEAS CORPUS
_____

**JAMES W. VOLBERDING**     **JOHN E. WRIGHT**
SBN: 00786313    SBN: 20048500

Plaza Tower    Law Office of John E. Wright, P. C.
110 North College Avenue    P. O. Box 6547
Suite 1850    Huntsville, Texas 77342-6547
Tyler, Texas 75702

(903) 597-6622 (Office)    (936) 291-2211 (Office)
(903) 597-5522 (fax)    (832) 201-0463 (fax)
e-mail:
jamesvolberding@gmail.com    e-mail: wright49@swbell.net

Court-Appointed Attorneys for the Petitioner

No. 2:09cv00327-TJW

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

───────────────────────────────────────────────

ROBERT L. ROBERSON, III

*Petitioner,*

v.

RICK THALER,
    Director, Texas Department of Criminal Justice,
    Institutional Division,

*Respondent.*

───────────────────────────────────────────────

Petition for Writ of Habeas Corpus
from a Capital Murder Conviction in the
87th District Court of Anderson County, Texas

───────────────────────────────────────────────

# SUPPLEMENT TO
# PETITION FOR WRIT OF HABEAS CORPUS

───────────────────────────────────────────────

TO THE HONORABLE U.S. DISTRICT COURT:

NOW COMES, ROBERT L. ROBERSON, III, the Petitioner, and respectfully submits his Petition for Writ of Habeas Corpus, asking the Court to issue a writ ordering his release from the Institutional Division of the Texas Department of Criminal Justice. This application follows his conviction and death sentence in the 87th District Court of Anderson County, Texas, cause number 26,162, styled *State v. Robert L. Roberson, III.*

# SUPPLEMENT TO PETITION FOR WRIT OF HABEAS CORPUS

On September 14, 2010, Roberson filed his petition for writ of habeas corpus. Today, September 16, Roberson supplements the petition with ____ additional claims. This is necessary because the AEDPA limitations period expires today. The purpose of this supplement is to preserve these claims for review.

The petition contains some drafting flaws. Some of the issues overlap. The petition is too long. Roberson will seek leave to amend his petition and clean up these issues.

## Prosecutorial Misconduct/Ineffective Counsel / Fundamental Unfairness at Jury Argument–Punishment Phase

Claim Number 40: The prosecutor abused his office and intentionally fostered a false impression in the minds of the sentencing jurors by telling them that the word "probability" as used in the future dangerousness special issue, meant a low probability when he knew that the Texas courts had construed the term to mean "more likely than not." Sixth, Eighth and Fourteenth Amendments.

Claim Number 41: The trial judge fostered a fundamental miscarriage of justice when he failed to correct to the prosecutor's misleading of the sentencing jurors by telling them that the word "probability" as used in the future dangerousness special issue, meant a low probability when the Texas courts had construed the term to mean "more likely than not." Sixth, Eighth and Fourteenth Amendments.

Claim Number 42: Mr. Roberson's trial counsel rendered ineffective assistance to his client when he failed to object to the prosecutor's misleading of the sentencing jurors by telling them that the word "probability" as used in the future dangerousness special issue, meant a low probability when the Texas courts had construed the term to mean "more likely than not." Sixth, Eighth and Fourteenth Amendments.

## Argument

Here is what the prosecutor told the sentencing jury:

"Lastly, you'll have the verdict form on both special issues or the questions, if you'll recall. I want to go over the first one. Do you find from the evidence beyond a reasonable doubt that there's a probability that the defendant Robert Leslie Roberson, III, would commit criminal acts of violence that would constitute a continuing threat to society? Again, we're talking about probability. That doesn't mean high probability. It can mean low probability. Simply a probability."

Here is what Texas law actually is on the point: While no statutory definition exists for the term "probability," Black's Law Dictionary, defines the term as the "likelihood of a proposition or hypothesis being true, from its conformity to reason or experience, or from superior evidence or argument adduced in its favor." abridged 5th Ed. 627. *Robison v. State,* 888 S.W.2d 473 (Tex. Crim. App. 1994), citing *Hughes v. State*, 878 S.W.2d 142, 147-148 (Tex.Crim.App.1992) (opinion on original submission); *Cuevas v. State*, 742 S.W.2d 331, 347 (Tex. Crim. App.1987). The State must prove beyond a reasonable doubt that there is a probability, or that the evidence indicates it is more likely than not, a capital defendant represents a continuing threat to society. *Robison,* supra.

This argument by the prosecutor, when combined with the refusal of the trial court to correct it with a clarifying instruction that conforms, at least, to the low standards for certainty set by the Texas CCA, worked a fundamental unfairness in that it fundamentally changed the role of the jurors with respect to the future dangerousness special issue. If the record evidence did not reveal that it was absolutely impossible for Mr. Roberson to commit criminal acts of violence that would constitute a continuing threat to society, the jurors were obliged to return an affirmative finding on the issue. That turns *Jurek v. Texas* on it head. The terms in the issue are supposed to have a core of common sense meaning that jurors will understand. But the prosecutor, the trial judge and Roberson's own lawyer allowed that common understanding to be subverted into a formula for an automatic finding of a death aggravator.

The making of this blatantly false and very harmful argument by the prosecutor, without objection by defense counsel, under the auspices of the trial court, offends the bedrock principles of fundamental fairness recognized by our Supreme Court. See *Donnelly v. DeChristoforo*, 416 U.S. 637, 94 S.Ct. 1868 (1974) and *Payne v. Tennessee,* 501 U.S. 808 (1991).

See also *Hooks v. Workman*, 10th. Cir. May 25, 2010, No. 07-6152, citing *Romano v. Oklahoma*, 512 U.S. 1 (1994) for the proposition that prosecutors may not affirmatively mislead jurors about their role in the process.

Absent the skunk that the prosecutor tossed into the jury box–the very weak claim of the rape of a child--Roberson had a fair chance to avoid death as a penalty. His criminal record was not one of violence. The unadjudicated misconduct adduced against Robertson was summarized by the Texas CCA as follows:

> "The State then called Della Gray, the appellant's ex-wife and the mother of his two older children. Gray testified that the appellant was physically abusive towards her both before and after they got married, including incidents where he strangled her with a coat hanger, punched her in the face and broke her nose while she was pregnant, and beat her with a fireplace shovel. She also told of a time when she had gone out to help a friend, leaving the appellant and their son, Robert, Jr., at home alone together. When she returned, Robert, Jr. had a bruised face, and when she asked him what happened, Robert, Jr. told her he had fallen off the bed. She also described an incident in which the appellant was alone in a bedroom with their then two-year-old daughter Victoria for thirty minutes. Victoria was screaming and upset, and when the appellant finally let her out of the room she had a "hickey" on her neck. Overall, Gray described herself as scared of the appellant, such that she never reported any of the suspected abuse to the authorities. She said she currently was not allowed to spend any time with her children. On cross-examination, Gray admitted she had been involved in a lengthy custody battle against the appellant and his mother, which she ultimately lost, some eleven years previously. She also admitted to some history of alcohol and drug abuse, and that she had not provided, nor has she been asked to provide, any support for her children in the years since she lost custody of them.
>
> There was testimony from another witness concerning a dispute with a neighbor that escalated into a physical altercation with a teenage boy. The State then rested its punishment case-in-chief."

Thus, absent to abruptly abandoned sex claim, the state did not have an overwhelming case for future dangerousness. Much of its case came from sources likely to have a bias against Roberson. A proper understanding of the degree of certainty required to establish a continuing threat to society would likely have changed the outcome.

The prosecution argument, and the failure of the trial judge and defense counsel to correct it is clear error that this Court must now correct.

### Clear Guilt Phase Error For Failure to Obtain a Limiting Instruction Regarding the Evidence of a Sexual Assault of the Child Victim

Claim Number 43: The trial was rendered fundamentally unfair because trial counsel failed to request the trial court to instruct the jury at the guilt-innocence phase that the jurors could not consider the evidence tending to show that Roberson sexually assaulted the victim, for any purpose, unless they found and believed beyond a reasonable doubt that the defendant committed a sexual assault of the victim, and even then that the jurors may only consider the same for its proffered purpose, and for no other purposes. Sixth, Eighth and Fourteenth Amendments.

Claim Number 44: The trial was rendered fundamentally unfair because the trial court failed to instruct the jury at the guilt-innocence phase that the jurors could not consider the evidence tending to show that Roberson sexually assaulted the victim, for any purpose, unless they found and believed beyond a reasonable doubt that the defendant committed a sexual assault of the victim, and even then that the jurors may only consider the same for its proffered purpose, and for no other purposes. Sixth, Eighth and Fourteenth Amendments.

Claim Number 45: Mr. Roberson's trial counsel performed deficiently, and prejudiced Mr. Roberson's defense of the capital prosecution, in that he failed to request the trial court to instruct the jury at the guilt-innocence phase that the jurors could not consider the evidence tending to show that Roberson sexually assaulted the victim, for any purpose, unless they found and believed beyond a reasonable doubt that the defendant committed a sexual assault of the victim, and even then that the jurors may only consider the same for its proffered purpose, and for no other purposes. Sixth, Eighth and Fourteenth Amendments.

### Argument

Trial counsel missed an obvious step in the process of error preservation. The trial court should have stepped in to the prevent a fundamental unfairness. The judge did not. The result of these failures on the part of trial counsel and the trial court was fatal.

At the end of the state's case at guilt innocence, trial counsel moved for an instructed verdict of not guilty. The state belatedly, but voluntarily abandoned the bogus sexual assault allegations. 44 RR 3 At that point, trial counsel should have requested a limiting instruction regarding the evidence

of a sexual assault on the child victim. But he did not. He asked for a mistrial, which was denied. 44 RR 4

There can be little doubt that Texas law recognizes that extraneous-offense evidence of this nature does have a tendency to suggest a verdict on an improper basis because of the inherently inflammatory and prejudicial nature of crimes of a sexual nature committed against children. See *Montgomery v. State*, 810 S.W.2d 372 (Tex. Crim. App. 1990) ; *Bjorgaard v. State*, 220 S.W.3d 555, 560 (Tex.App.-Amarillo 2007), pet. dism'd, improvidently granted, 253 S.W.3d 661 (Tex. Crim. App.2008) (per curiam); *Blackwell v. State*, 193 S.W.3d 1 (Tex.App.– Houston [1st Dist] 2006).

It is not the function of our federal habeas courts to apply state rules of evidence. *Wheeler v. Thaler*, 347 Fed.Appx. 981 (5th. Cir. 2009), citing *Wood v. Quarterman*, 503 F.3d 408, 414 (5th Cir.2007), cert. denied, --- U.S. ----, 128 S.Ct. 1874, 170 L.Ed.2d 752 (2008). A state court admitting or excluding evidence does not present a cognizable habeas claim unless it violates a specific constitutional right or renders the trial fundamentally unfair. *Pemberton v. Collins*, 991 F.2d 1218, 1226 (5th Cir.1993). But where, as here, the unlimited introduction of the extraneous evidence of his alleged molestation of the child victim was unduly prejudicial and was not related to the offense of conviction the state court ruling violates the specific constitutional right to a fair and impartial jury, or renders the trial fundamentally unfair. To the extent that a habeas petitioner challenges the admissibility of evidence under state evidentiary rules, an error in the application of state law does not constitute an independent ground for granting federal habeas relief. The admission of an extraneous offense does violate due process, where, as here, the State fails to "makes a strong showing that the defendant committed the offense." *Wood*, 503 F.3d at 414.

The trial court did issue a general limiting instruction regarding offenses other than offenses alleged against Roberson in the indictment. CR 00617. The trouble with this general instruction is

that the sexual assault *was* alleged in the indictment, rendering the instruction of no benefit to Mr. Roberson.

The question for a federal habeas court is "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." *Cupp v. Naughten*, 414 U.S. 141, 147, 94 S.Ct. 396 (1973); see also *Henderson v. Kibbe*, 431 U.S. 145, 154, 97 S.Ct. 1730, (1977); *Donnelly v. DeChristoforo*, 416 U.S. 637, 643, 94 S.Ct. 1868, 1871 (1974) (" `[I]t must be established not merely that the instruction is undesirable, erroneous, or even "universally condemned," but that it violated some [constitutional right]' "). It is well established that the instruction "may not be judged in artificial isolation," but must be considered in the context of the instructions as a whole and the trial record. *Cupp v. Naughten*, supra, 414 U.S., at 147, 94 S.Ct., at 400-01. In addition, in reviewing an arguably ambiguous instruction such as the one at issue here, a federal court will inquire "whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way" that violates the Constitution. *Boyde v. California*, 494 U.S. 370, 380, 110 S.Ct. 1190 (1990).

Texas Rule of Evidence 105 would have required the trial judge to limit the use of the sex assault evidence. It was deficient performance of trial counsel to fail to invoke the rule. This omission left the jury free to use that evidence for any purpose. There can be no legitimate tactical or strategic purpose for this. The trial defense team and the trial court simply stood by and allowed the prosecutor's dirty trick to work. It now falls to this court to find a remedy for this abuse of our legal process.

### Supplement to Claims 5 through 8

The following authority are relevant to these claims, which Roberson incorporates by reference:

Cunningham, M. D., & Reidy, T. J. (1998a). Antisocial personality disorder and psychopathy: Diagnostic dilemmas in classifying patterns of antisocial behavior in sentencing evaluations. Behavioral Sciences and the Law, 16, 331-351.

DeMatteo, D., & Edens, J. F. (2006). The role and relevance of the Psychopathy Checklist-Revised in court: A case law survey of U.S. courts (1991-2004). Psychology, Public Policy, and Law, 12, 214-241.

Edens, J. F. (2001). Misuses of the Hare Psychopathy Checklist-Revised in court: Two case examples. Journal of Interpersonal Violence, 16, 1082-1093.

Edens, J. F., Buffington-Vollum, J. K., Keilen, A., Roskamp, P., & Anthony, C. (2005). Predictions of future dangerousness in capital murder trials: Is it time to "disinvent the wheel"? Law and Human Behavior, 29, 55-86.

Edens, J. F., Colwell, L. H., Desforges, D. M., & Fernandez, K. (2005). The impact of mental health evidence on support for capital punishment: Are defendants labeled psychopathic considered more deserving of death? Behavioral Sciences and the Law, 23, 603-625.

Edens, J. F., & Cox, J. (2010). Examining the prevalence, role and impact of evidence regarding antisocial personality, sociopathy and psychopathy in capital cases: A survey of defense team members. Manuscript submitted for publication.

Edens, J. F., Desforges, D. M., Fernandez, K. & Palac, C. A. (2004). Effects of psychopathy and violence risk testimony on mock juror perceptions of dangerousness in a capital murder trial. Psychology, Crime, and Law, 10, 393-412.

Edens, J. F., Petrila, J., & Buffington-Vollum, J. K. (2001). Psychopathy and the death penalty: Can the Psychopathy Checklist-Revised identify offenders who represent "a continuing threat to society"? Journal of Psychiatry and Law, 29, 433-481.

Guy, L. S., Edens, J. F., Anthony, C., & Douglas, K. S. (2005). Does psychopathy predict institutional misconduct among adults? A meta-analytic investigation. Journal of Consulting and Clinical Psychology, 73, 1056-1064.

Respectfully submitted this 16 day of September 2010,

*/s/ James W. Volberding*

_____

**JAMES W. VOLBERDING**
**SBN: 00786313**

**Plaza Tower**
**110 North College Avenue**
**Suite 1850**
**Tyler, Texas 75702**

**(903) 597-6622 (Office)**
**(903) 597-5522 (fax)**
*e-mail: volberding@attglobal.net*

*/s/ John E. Wright*

_____

**JOHN E. WRIGHT**
**SBN: 20048500**

**Law Office of John E. Wright, P. C.**
**P. O. Box 6547**
**Huntsville, Texas 77342-6547**
**(936) 291-2211 Voice**
**(832) 201-0463  Fax**
*e-mail: wright49@swbell.net*

# CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of this pleading has been delivered this 16 day of September 2010 to:

Ms. Georgette P. Oden
Office of the Attorney General                                          *Counsel for the State*
Capital Litigation Division
P.O. Box 12548, Capitol Station
Austin, TX 78711-2548
(512) 936-1400 (voice)
(512) 320-8132 (fax)

by the following means:

_____          By U.S. Postal Service Certified Mail, R.R.R.
_____          By First Class U.S. Mail
_____          By Special Courier _____

8

|  |  |
|---|---|
| \_\_\_\_\_ | By Hand Delivery |
| \_\_\_\_\_ | By Fax <u>before</u> 5 p.m., |
| \_\_\_\_\_ | By Fax <u>after</u> 5 p.m. |
| \_X\_\_\_ | By Email at Georgette.Oden@oag.state.tx.us |

*/s/ James W. Volberding*
_____
JAMES W. VOLBERDING