# Exhibit B

Olga —
Please put in
his file.
WR-63,081  Thanks,
Betty



RECEIVED IN
COURT OF CRIMINAL APPEALS
MAR 19 2007
Louise Pearson, Clerk

### Innocent Man on Death Row

Well lets start out by introducing myself to you. My name is Robert L. Roberston III. I'm here on Texas Death Row in Livingston, Texas, for Capital Murder. For a crime that I was falsely and wrongly convicted of, instead of a lesser included. I want you to know that I'm innocent of the crime for which I'm here for on Texas Death Row. However, because of my association with drugs and the woman that I covered up for, because my life and my family's life was threatened, the courts convicted me unjustly! Not because I'm guilty, but because I made the wrong choice, to use drugs, and being threatened into covering up for this woman.

**\*This is what actually happened that night.\***

"Sequence of Important Events and Conflicts that Didn't Come out At My Trial*

Well lets start out by saying my girlfriend was in the hospital in Palestine, Texas recovering from an operation. So the week before the operation we had set it up for her Mom to keep her daughter Rachel, and my Mom and the Bowmans to keep my baby daughter Nikki, on Monday and Tuesday. Well on January 30th, 2002, Mrs. Bowman wanted me to come and pick up Nikki that day, because she had gotten sick. So on Tuesday night I kept Nikki which was on January 30th 2002, the night of her severe injuries which finally caused her death.

Well the week was very hectic anyway, everything was going

on. So after I left the Palestine Regional Medical Center that night some time after 9:00pm, I stopped by Wal-Marts and Murphey's to get some apple juice, a coke, and some gas for my car. Then I went from Murphey's to the Bowman's house to pick up Nikki, my sweet precious angel. Then I was on the way home to settle in for the night. So we finally arrived at the house on 902 North Perry Street, Palestine Texas sometimes around 10:00pm or 11:00pm. I'm not sure what time it was exactly? But the first time I looked at the clock was about 11:45pm or around.

So I put everything in the house from the car when we got to the house, including my daughter Nikki. Then we went into the bedroom, I sit Nikki on our bed. I stuck a movie in the VCR, then I went into the kitchen to get her something to eat. Then I carried it back to the bedroom where Nikki was sitting on the bed. I gave her something to eat, then I started trying to finish up on some laundry in the dryer and in the washer. Then I went back to my bedroom where Nikki was and sat down on the bed beside her. It got hot in the house, so I went to the front door to let some air in and cool the house down some, because me and Nikki was hot. When I opened the door I got a surprise of my life. There standing was my girlfriends sister (Heather Rochelle Granger Berryhill). She scared me at first, but after I figured out who it was on the front porch I let her come into the house. I asked her what's going on, what's wrong? Because she knew that her sister was still in the hospital. So why did she come over there? I figured out real fast, because I had messed around with her a few times before and gave her money and etc.! Well we was doing some "crack cocaine" than night, she had a beer also. Then we put Nikki on the floor on a pallet beside the bed, and we started having sexual intercourse, Heather and I. Then Nikki started crying something terrible bad. So you could tell that Heather kind of got upset. Then I picked up Nikki and tried to get her to stop crying, but no such luck. But at the time Heather was upset because she figured out that she wasn't going to get any more money from me, then she was mad because I helped her smoke all her "crack cocaine" up. While Heather and I were arguing, and I couldn't get Nikki to stop crying. So I gave her to Heather, and tried to get her stop crying. I laid down on the bed because I was kind of high, or let's say my mind was altered from the drugs. I wasn't off it at first but I must have dozed off, or closed my eyes for a while. Then I could hear Nikki crying louder, it sounded kind of strange the way she was crying. So I opened my eyes and what I had seen tripped me out. Heather was shaking Nikki back and forth, from front to back. Then I asked Heather, what are you doing? Then she said I'm trying to get Nikki to stop crying some. I got on to her and Heather threw Nikki on the floor, and Nikki bounced off the floor, hitting the floor hard. Then I got up to check on my daughter, but Heather convinced me that Nikki was going




to be alright. So I went back to go lay down on the bed. But at the same time Heather and I were arguing some more about me not giving her any more money like I had been before that night. That's when she picked up my precious little sweet angel Nikki again, and started shaking her some more. Some how during that time, she had threatened me about my life and my family's life if I told on her to the police. She said the police wouldn't believe me anyway, because I had been to prison before. Me being a dummy, being scared and influenced on the drugs laid down and dozed off and went to sleep.



So in the morning when I woke up, I got a shock of my life. When I woke up I couldn't get my daughter to respond at all. I freaked the smooth out. Then on top of that, Heather was nowhere to be found. I don't know when she left, and I don't know how she left. On top of that I'm not sure how she had gotten there to my house the night before? Then I called my girlfriend Teddie at the hospital and told her what was going on, and that I was on my way. She told me to hurry up and get her to the hospital. So I got us dressed and rushed Nikki to the hospital as fast as I could. But then when I got there, my girlfriend (Teddie) was waiting at the Emergency Room Entrance door in a wheel chair. She told me to hand Nikki to he in the wheel chair because for some reason the door was jammed that day. So I had to push her away around to the main entrance to get Nikki into the Emergency Room. When we finally gotten to the Emergency room I started yelling, 'open the door', so they opened the door and the medical staff took Nikki from us and started trying to revive her. The some other nurses was asking me all kinds of questions about Nikki and what had happened? Well, I lied to these nurses and doctors because I was scared and nervous because I was covering up for Heather, and she and threatened me about my and my families life, so I told them that she (Nikki) fell off the bed.




Well, at that time the Palestine Police Department was called in. So the Detectives gotten to the hospital and started asking me questions about what had happened to Nikki? Then they started talking to all of the family.. They did some investigating and then they wanted to go to my house since that's where Nikki had gotten injured. Well, the detectives followed me to my house to check the house out and do some more investigating. Then they wanted me to go to the Palestine Police Department to give a statement about everything! So I did give a statement to them. But it wasn't the truth. So I lied to cover up for Heather, because I was scared because she had threatened me about my life, and my families life. Then on top of that I was scared that the Police wouldn't believe me anyway. So I gave them a false statement, to cover up for

(Heather Rochelle Granger Berryhill).

## "Statement of the Case"

Mr. Robert L. Roberson III was indicted April 25 2002 for the January 30, 2002 murder of his daughter, Nikki Curtis, 2. He plead not guilty. The indictment alleged the following crimnes:

Offence
1) Intentionally and knowingly murdering a child under the age of 6 by blunt force trauma.
2) Intentionally murdering a person during a sexual assault.
3) Intentionally or knowingly causing injury to a child under 14

### The Following Summarizes the Events of the Case

1) Child brought to hospital – January 30, 2002
2) Death of Child – February 1, 2002
3) Arrest of Mr. Roberson – February 1, 2002
4) Indictment – April 25, 2002
5) Pre-trial Hearing – June 20, 2002
6) Pre-trial Hearing – July 19, 2002
7) Pre-trial Hearing – July 31, 2002
8) Pre-trial Hearing – August 22, 2002
9) Initial Panel Jury Selection – September 4, 2002
10) Commencement of individual voir-dire – September 11, 2002
11) Jury strikes and final selection of petit jury – December 28, 2002
12) First day of trial – February 3, 2003
13) Conviction jury verdict returned – February 11, 2003
14) Sentencing jury verdict returned – February 14, 2003
15) Judgment signed – February 19, 2003
16) Motion for new trial (no-ruling by court) – March 7, 2003
17) Roberson's opening direct appeal brief filed with Court of Criminal Appeals – February 16, 2004 (on time, by mail)
18) States appeal brief filed with the Court of Criminal Appeals – August 12, 2004
19) Oral arguments before Court of Criminal Appeals – November 17, 2004
20) Article 11.017 Application for writ of Habeas Corpus filed in 87th Dist
21) Decision by Court of Criminal Appeals on Direct Appeal – pending

### Statement of the Case

Robert L. Roberson III was indicted by the Anderson County Grand Jury on April 25, 2002, pursuant to five counts ranging from capital murder to reckless omission of treatment of a

minor child. The defendant had been arrested on a Capital Murder charge on February 1, 2002, and remained incarcerated in the Anderson County Jail through course of trial. Voir dire commenced on September 11, 2002 and ended with an empanelled jury on December 18, 2002. Trial on the merits began on February 3, 2003, with the state announcing abandonment of all charges presented in the indictment other than the two capital counts. Subsequent to trial on the issue of guilt or innocence, the jury returned a guilty verdict on the capital murder count that presented the intentional murder of a child under 6. The capital count that involved sexual assault as its capital predicate was abandoned by the state prior to submission of the guilt and innocence issues to the jury. Upon conclusion of the punishment phase of the trial, the jury answered presented special issues in the format that resulted in the mandatory issuance of a sentence of death. The trial court appointed the undersigned council to submit the enclosed brief before the court. The brief has been submitted timely in accord with the order of this court.

## Facts of the Case

Nikki Michelle Curtis was born on October 20th 1999, in Tarrant county, Texas, to a mother who was a habitual drug user and occasional prostitute. The father was not listed on the birth certificate, but was presumed to be another boyfriend of the mother, when in fact the biological father was Robert Roberson III, Appellant herein. Care of the child was directly assumed by the maternal grandparents as the mother was unfit to maintain care of the child. The mother played no further role in the child's life. Eventually, through intercession by Roberson's mother, the real biological father was identified. Initially, custody was predominantly held by the maternal grandparents of the child, Mr. and Mrs. Bowman. There were visitations with the child by the paternal grandmother, Carolyn Roberson, but discord developed and resulted in numerous accusations and calls to Child Protective Services. Eventually in November 2001, Roberson personally intervened in the custody situation, legally established paternity and by virtue of an agreement between the Bowman's and Roberson, Roberson was formally granted managing conservatorship of the child. The situation developed a positive atmosphere until January of 2002. The Bowman's had noticed some red marks on the buttocks of Nikki, but after discussion with Roberson, were of the opinion that this was a deviation from the norm. Mr. Bowman believed in the sincere nature of Roberson and continued to entrust care to Roberson.

Roberson lived in a house with his girlfriend, Teddie Cox and her daughter, Rachel Cox, age 11. Teddie Cox assumed responsibility for the child whiles she was in their home.

Roberson, while a parent of two other children much older, did not have experience in direct child care. Roberson was trying to support himself and Teddie and Rachel by engaging in a number of limited jobs, such as a paper route. In the latter part of January 2002, Teddie Cox had developed health issues that required significant surgery involving a full hysterectomy. This surgery required a three day hospital stay at the Palestine Regional Medical Center. The Bowman's had intended to keep Nikki during the hospital stay, but due to illness were unable to do so. On January 30th, 2002, Roberson left his girlfriend at the hospital and went to pick up Nikki. This would be the first time that Roberson had ever had primary care responsibilities for the child, yet the Bowman's were not hesitant to place Nikki into Roberson's care.

At some point during the late evening of January 30, 2002 or early morning of January 31, 200, Nikki suffered trauma to her head that induced intra-cranial bleeding and diminished her body's life support capability. At approximately 10:00 am on the morning of 31st, Roberson brought Nikki to the hospital and was met by Teddie Cox outside the building. This encounter had been arranged through a series of phone calls between Robert and Teddie regarding the unresponsive nature of the child. The pair found the normal entry doors to the hospital ER locked, and were forced to enter the ER through a circuitous route. Upon presentation to the ER, the child was noted to be limp, without appropriate signs of life. She was stabilized to a degree, and after a CT scan the degree of brain injury was detected.

Trial testimony varied as to the degree of Roberson's reaction. It was characterized as anywhere from indifferent to distraught. Roberson reported to hospital personnel that the child fell from a bed an had been unresponsive for some time. The medical personnel did not accept the explanation provided by Roberson and made a call to Palestine Police Department and Child Protective Services. As the child's condition was determined to be dire, a decision was made by the attending physicians that the child would be transferred to Children's Medical Center in Dallas, Texas. Further, the ER physician requested the staff SANE nurse to perform an examination for sexual assault of the child. Nikki expired at the Children's Medical Center several hours later. The hospital SANE nurse found a single abrasion near the anus of the child that was not prominent enough to appear in photography, and an injury under the lip. The medical director at Children's examined the child upon presentation and sis not find any evidence consistent with sexual assault. Later forensic autopsy examination also did not find any physical evidence consistent with sexual assault or other abuse.

Palestine Police interviewed Roberson after Nikki had been transferred to Children's Medical Center. Interviews were conducted at both Roberson's home and the Anderson County Sherriff's Office. Roberson provided a written statement that provided the scenario that Nikki had fallen from the bed, and after being comforted with liquids and being held, went to sleep. Upon awakening the next morning, Roberson noticed blue lips and attempted to wake the child with some mild slaps to the face. With the child failing to respond, Roberson called his girlfriend and brought the child to the hospital. Upon the demise of the child at Children's on February 1, 2002, Roberson was placed under arrest and charged with Capital Murder the following day.

### **The Trial**

*A) The Prosecution*

The case proceeded to trial upon an indictment that alleged two Capital counts, one predicated upon the victim being under the age of 6, and the other being a death in the course of actual or attempted sexual assault. There were also five other counts that were generally dealing with differing degrees of injuries to a child. After four months of individual voir dire, with many potential jurors reacting with strong emotion in regard to the mere presentation of the charges, a jury was empanelled and trial began on February 3, 2003. The Stat abandoned four of five counts of the indictment but continued with both Capital counts. The State announced it would present sufficient evidence to support both counts, yet abandoned the sexual assault and injury to a child counts at the conclusion of its case in chief, consistent with the dilemma outlined in the defendant's motion to sever. The State brought numerous medical, expert and lay witnesses, yet only one indicated that there was any evidence of sexual assault. In fact, the assertion by the latter witnesses was clearly refuted by states witness, Dr. Janet Squires, MD.

*B The Defense*

From the opening statement and through cross examination of the State's witnesses, the defense asserted that this incident stemmed from Roberson losing control with the child and induced injury in an effort to still her crying and fussy behavior. Further, there was no evidence of prior abuse, nor was there any evidence that was convincing to the level of beyond a reasonable doubt that a sexual assault had occurred or been attempted. This injury, like unfortunately too many others, is a product of impaired judgment, anger management, poor impulsive control and inexperience with child care. Roberson acted out of poor impulse rather than any deliberate

or knowledge having the death of the child as the specific intentional outcome of his actions. The defense was unable to provide expert testimony on the limited impulse control of Roberson due to trial court denying Dr Krusz's testimony, as it went to diminished capacity without prior notice of tender of an insanity defense, even though the testimony did not go to such a level. The defense requested that several other charges regarded as lesser included level offense be submitted for consideration. These offenses were the ones that were the applicable criminal responsibility for the situation, rather than asserted capital count. Yet, after being inflamed by the specter of sexual assault on a three year old baby girl, the jury returned a verdict of guilty as to the capital murder count, with less than four hours deliberation.

*C Punishment*

After presentation of the ex-wife of Roberson, two individuals who alleged Roberson confronted them with what was in essence of a shoving match, and Teddie Cox again relating an unverified incident involving Roberson's use of a box cutter, the punishment evidence centered on expert testimony in regard for the potential of future dangerousness by Roberson within a penal setting. Three (Goodness, Allen, Burleson) experts viewed Roberson as a low risk for future violence potential, the jury answered the special punishment issues that were submitted without appropriate risk factor definitions by the defense, resulting in the application of the ultimate sanction of a death penalty.

*Summary of the Argument*

As presented during opening statement of the trial, the position of the Appellant is that the incident involved that resulted in the death of Nikki Curtis, was the product of an inexperienced parent, who had little in the way of training, experience or sophistication to deal with a young child that had an upper respiratory infection and was fussy in temperament. Plagued by his lack of emotional and judgment assets, Roberson lost control, shook the child and inflicted the injury. This is not the type of facts that was contemplated in the construction of the under age 6 capital murder statute amendment as provided by the legislature. The statute was an arbitrary and capricious effort to make a political statement, rather than advanced a legitimate government interest. The focus was on those who engaged in predatory conduct with children as the known and intended victims, not where one acts as a result of rage or lack of control without the specific intent to kill. The trial of this case was plagued by a fatal defect from its inception, as the state intentionally joined an inflammatory count to the jury, but not submitted to it at conclusion of the State's case. This

was done in order to cast Appellant in the evil light of the predator and sexual deviant, rather than an incident that in all fact was a spontaneous combustion of loss of control. The aggravating factor of the sexual assault count, despite a demonstration of a paucity of evidence, prompted the jury to ignore the more specific and applicable criminal sanctions, and rush to the answer of special punishment issues without sufficient evidentiary support and without adequate instruction that left the jury believing that the appellant had the burden of proof with regard to the evaluation of evidence on a special punishment issue No. 1. In sum, the conduct of the trail was undermined by manifest and fatal harm in statutory construction, error by the trial court in overruling a timely motion for severance, and in applying the ultimate sanction to an individual that acted in negligence and ignorance, rather than in a depraved disregard for human life, as should be the prima facie standard for the application of a death sentence.

The defects in evidence, trial procedure and statutory construction should merit the entry of order vacating the conviction and resulting sentence of death, returning the case to the trial court for new trial consistent with the honorable courts findings.

## In need of Legal Investigation and Help

 

Roberson has asked his court appointed attorneys to investigate this woman that Roberson knows is the person that actually did the crime that Roberson is convicted of falsely and wrongly. But Roberson's court appointed Attorney states in a letter that investigating this woman would hurt his appeal and state write, so his State Writ Attorney states that it's not going to be investigated. However, this Court Appointed Attorney limited time and money for the investigation. Roberson needs help to find this woman; and have her investigated, and talking to other witnesses who were not allowed to testify at the trial. Roberson is an indigent inmate and cannot afford to pay investigation fees to hire an investigator. He needs your help in finding and securing an investigator.

To help, contact Roberson at:

Robert L. Roberson III
Polunsky Unit / 999442
3872 FM 350 South
Livingston
TX 77351
USA

Robert Roberson 999442
Polunsky Unit
3872 FM 350 South
Livingston, TX 77351

JACKSONVILLE FL 322

12 MAR 2007 PM 4 L

Court of Criminal Appeals
Box 12308
Capital Station
Austin, TX 78711

Clerk of the Court

78711+2308