**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| **ROBERT LESLIE ROBERSON, III** | § | |
| **v.** | § | **CIVIL ACTION NO. 2:09cv327** |
| **DIRECTOR, TDCJ-CID** | § | |

## REPORT AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Petitioner Robert Leslie Roberson, III, a death row inmate confined in the Texas Department of Criminal Justice, Correctional Institutions Division, filed this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.

The above-styled action was referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636 and the Amended Order for the Adoption of Local Rules for the Assignment of Duties to the United States Magistrate Judge for findings of fact, conclusions of law, and recommendations for the disposition of the case.

## PROCEDURAL HISTORY OF THE CASE

Roberson was convicted and sentenced to death for the murder of his two year-old daughter, Nikki Curtis. The offense took place on January 31, 2002, in Anderson County, Texas. Based on the jury's answers to the special issues set forth in Texas Code of Criminal Procedure Article 37.071, the trial court sentenced Roberson to death on February 14, 2003. The Texas Court of Criminal Appeals affirmed the conviction. *Roberson v. State*, No. AP-74671, 2002 WL 34217382 (Tex. Crim. App. June 20, 2007). The Supreme Court denied his petition for a writ of certiorari. *Roberson v. Texas*, 552 U.S. 1314 (2008).

Roberson filed his first application for a writ of habeas corpus in state court on December 13, 2004.  On July 21, 2005, the trial court issued findings of fact and conclusions of law, which contained 186 paragraphs.  On September 16, 2009, "[b]ased upon the trial court's findings and conclusions and [its] own review," the Texas Court of Criminal Appeals denied relief.  *Ex parte Roberson*, No. WR-63,081-01, WR-63,081-02, 2009 WL 2959738 (Tex. Crim. App. 2009).  During the course of the state habeas proceedings, Roberson filed a *pro se* notice of desire to raise additional habeas corpus claims.  The Texas Court of Criminal Appeals treated the notice as a subsequent application and dismissed it as an abuse of the writ under Section 5 of Article 11.071.  *Id.*

The present petition for a writ of habeas corpus (docket entry #11) was filed on September 14, 2010.  A supplemental petition (docket entry #12) was filed on September 16, 2010.  The petition contains forty-five claims, many of which overlap and are repetitious.  Related claims will be grouped together for purposes of discussion and analysis.  The Director filed an answer (docket entry #27) on April 2, 2012.  Roberson filed a reply (docket entry #39) on January 7, 2013.

## FACTUAL BACKGROUND OF THE CASE

The Texas Court of Criminal Appeals summarized the relevant evidence presented during the guilt-innocence phase of the trial as follows:

> The State called twelve witnesses during its case-in-chief. Among them was Kelly Gurganus, a registered nurse, who testified that she was working in the emergency room of the Palestine Regional Medical Center when the appellant came in, pushing a wheelchair in which sat his girlfriend Teddie Cox. Gurganus said Teddie was holding something in her lap, covered in a blanket or coat of some sort. Teddie told Gurganus, "She's not breathing," at which point Gurganus removed the covering and saw Nikki Curtis lying in Teddie's lap, limp and blue. Gurganus described Nikki as being like a rag doll, and said that in her five years of nursing she had never seen anyone appear that shade of blue, not even a drowning victim. Gurganus immediately took Nikki to a trauma room and called a doctor.
>
> Gurganus further testified that when she laid Nikki down on the bed in the trauma room, she saw bruising on Nikki's body, including on her head. She said that she then spoke with the appellant and asked him what happened, and that he told her that Nikki's injuries were

the result of falling off of the bed. She said she immediately became suspicious because that story seemed implausible in light of the severity of Nikki's injuries. She instructed the director of nurses to call the police.

Gurganus spoke again with the appellant and said that he appeared nervous and anxious. She also said that he never once asked her about Nikki's condition, and that he was not crying. She said that she attempted to speak with Nikki's maternal grandparents, who had also come to the hospital, but that the appellant prevented her from doing so. That was the extent of her conversation with the appellant, except that he did approach her at some point later to say he loved his daughter and that he would never mean to hurt her. The State also called Robbin Odem, the chief nursing officer at Palestine Regional Medical Center, who testified to her own observations of Nikki's extensive head injuries, as well as her similar interaction with, and impression of, the appellant in the emergency room that night.

Dr. John Ross, the pediatrician who examined Nikki the day she died, testified that she had bruising on her chin, as well as along her left cheek and jaw. Dr. Ross said she also had a large subdural hematoma, which he described as "bleeding outside the brain, but inside the skull." He said there was edema on the brain tissue, and that her brain had actually shifted from the right side to the left. He said that, in his opinion, Nikki's injuries were not accidental but instead intentionally inflicted.

Dr. Thomas Konjoyan, the emergency room physician who treated Nikki the day she died, also testified that she had bruising on the left side of her jaw, and that she had uncal herniation, which is "essentially a precursor to brain death." Dr. Konjoyan said that the severity of the swelling in Nikki's brain necessitated her transfer to the Children's Medical Center in Dallas for pediatric neurosurgical services. He said that, in his opinion, it would be "basically impossible" for such an injury to have resulted from a fall out of bed. Dr. Jill Urban, a forensic pathologist for Dallas County, testified for the State that she performed the autopsy on Nikki and concluded that Nikki died as a result of "blunt force head injuries."

The jury also heard from Courtney Berryhill, Teddie Cox's eleven-year-old niece, who testified that sometimes she spent the night at the home where the appellant lived with Teddie, Nikki, and Teddie's ten-year-old daughter Rachel Cox. Courtney said that she once witnessed the appellant shake Nikki by the arms in an attempt to make her stop crying. Rachel Cox then testified that the appellant had a "bad temper," and that she had witnessed him shake and spank Nikki when she was crying. Rachel said she had seen this happen about ten times. She also recalled a time that the appellant threatened to kill Nikki.

Finally, Teddie Cox testified for the State. Teddie said that, although Nikki was not her biological child, she loved Nikki as her own. At the time she moved in with the appellant, Nikki was living with her maternal grandparents, the Bowmans. Teddie said that the appellant had no interest in gaining custody of Nikki but did so only because Teddie wanted to care for Nikki, and so she—along with the appellant's mother—prodded the appellant to seek custody of Nikki. They did, and Nikki came to live in their home in November of 2001. Teddie said that, although she and Rachel were both very close with Nikki, the appellant was not, nor did

3

he seem to care about her. She said that Nikki did not like to be around the appellant and would cry every time he tried to pick her up or play with her.

Teddie testified that the appellant had a bad temper, and that he would yell at Nikki when she cried, which apparently happened every time he approached her. Teddie said she once heard the appellant yell at Nikki: "If you don't shut up I'm going to beat your ass." She also said that the appellant would hit Nikki with his hand and also once with a paddle. She said that on that occasion she told the appellant that he should not do that because Nikki was a baby. That whipping left bruising on Nikki's buttocks which the Bowmans later noticed. Teddie said that, when the Bowmans asked about it, the appellant told them that Rachel did it. She said that she confronted the appellant about the incident and that he promised her he would never hit Nikki again.

Teddie also testified that she witnessed the appellant, when he was angry at Nikki, pick her up off the bed, shake her for a few seconds, and throw her back on the bed. This upset Teddie, and she briefly left the appellant's home with Rachel, but the appellant apologized and convinced her to return. According to Teddie, this incident happened within a month of Nikki's death.

Teddie testified that, on the evening of January 30, 2002, Teddie was in the hospital after undergoing a hysterectomy procedure. Nikki was staying with the Bowmans, but Mrs. Bowman became ill, so it became necessary for the appellant to pick up Nikki and look after her. Teddie said the appellant seemed mad about this development, because he preferred to stay with her in her hospital room watching a movie on television. Teddie said the appellant had never once before been asked to be the sole caretaker of Nikki. She said the appellant did not leave immediately, but waited quite a while and, when he finally did leave, he was mad.

The next morning, Teddie was told she was being released. When she spoke to the appellant about picking her up, he said that he was bringing Nikki to the hospital because she wasn't breathing and he couldn't get her to wake up. Teddie noted that he did not seem upset about the situation. She called him back five minutes later, but he still had not yet left the house, so she urged him to do so. She then went to the nurse's desk to get a wheelchair so she could make her way downstairs to meet them as they arrived. The appellant eventually pulled into the parking lot. Teddie said he did not seem to be moving urgently and in fact found a parking spot instead of pulling up to the front door. Nor did he seem to be in any hurry to get Nikki out of the car.

Teddie urged him to bring Nikki to her, and he did. Teddie said Nikki was limp, blue, and did not appear to be breathing. Teddie said she asked the appellant what happened, and he said that they had fallen asleep in bed while watching a movie and that he awoke to her crying near the foot of the bed, on the floor. He said he made sure that she was okay and then brought her back into bed with him, and they went back to sleep. Teddie said she was skeptical of this story, because, in her experience, Nikki would always cry for Teddie when the appellant tried to sleep in the bed with her. In fact, Teddie said, the appellant later did tell her that Nikki was crying for her.

4

Nikki died from her injuries after being taken to the hospital in Dallas. Teddie could not accompany Nikki when she was taken to Dallas, but she did not want to return to the appellant's home, so she took her daughter to stay with a relative. In the ensuing weeks, she spoke with the appellant occasionally, and she said he never once mentioned Nikki, and that when she did he expressed no interest in talking about her. Teddie said he did not seem sad or emotionally distraught, but that he just showed no interest. At one point, while the appellant was in the Anderson County Jail, Teddie said she asked him directly if he had killed Nikki. She said his response was that if he did do it, he didn't remember; that he might have "snapped," but that he doesn't remember doing so.

In his case-in-chief, the appellant called Patricia Conklin, Teddie's sister, who testified that, in her opinion, the appellant had a loving relationship with Nikki. She said that in her experience she had never seen the appellant spank Nikki, but that she had once seen Rachel do so. She also said that, in her opinion, Teddie had a poor reputation for truthfulness. . . .

The appellant offered the testimony of Dr. Krusz toward the end of his case-in-chief. The State objected and was granted the opportunity to conduct a voir-dire examination of Dr. Krusz outside the presence of the jury. Dr. Krusz testified on voir dire that he had examined the appellant and concluded that the appellant suffered from organic brain syndrome (or more specifically, post-concussional syndrome), which caused him to have poor impulse control and difficulty making rational decisions. The State objected that the testimony amounted to a diminished-capacity defense, which is not recognized as a legal justification for criminal acts.

After the voir dire examination of Dr. Krusz, the trial court expressed reservations about the admissibility of his testimony:

[The Court]: Gentlemen, to be honest with you, as I listened to the doctor testify, that was my concern is, we're getting into the, you know, the negation, as they say of intent that he cannot form intent or knowledge in his mind to commit a crime.

[Appellant's Counsel]: That's not all this doctor is testifying to, your honor. First of all, it's saying how he effects [sic], not that there's an absolute absence, but of how it affects his ability to form intent and knowledge. Further, the doctor I believe will testify that are certain stress factors, particularly the situation that is the subject will present an emotional response, your Honor. The jury has the obligation to find intentional and knowing conduct. There are also other culpable mental states that we're going to request that the Court put before this jury and I believe those type, the type of organic brain injury that my client suffers has a direct and loathing effect as to whether he was in one of those intents or whether or not he was acting primarily upon an emotional basis.

The trial court ultimately agreed with the State and excluded Dr. Krusz's testimony from the guilt-innocence phase of the trial.

*Roberson*, 2002 WL 34217382, at *1-4, 6-7.

5

## STANDARD OF REVIEW

Roberson's petition is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  28 U.S.C. § 2254.  Under AEDPA, a petitioner who is in custody "pursuant to the judgment of a State court" is not entitled to federal habeas corpus relief with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -

> (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or

> (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d).  "By its terms § 2254 bars relitigation of any claim 'adjudicated on the merits' in state court, subject only to the exceptions in §§ 2254(d)(1) and (d)(2)." *Harrington v. Richter*, 131 S. Ct. 770, 784 (2011).  AEDPA imposes a "highly deferential standard for evaluating state-court rulings, and demands that state-court decisions be given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766, 773 (2010) (citations and internal quotation marks omitted).  With respect to the first provision, a "state court decision is 'contrary to' clearly established federal law if (1) the state court 'applies a rule that contradicts the governing law' announced in Supreme Court cases, or (2) the state court decides a case differently than the Supreme Court did on a set of materially indistinguishable facts." *Nelson v. Quarterman*, 472 F.3d 287, 292 (5th Cir. 2006) (en banc) (quoting *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003)).  "[R]eview under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011).  Consequently, "evidence later introduced in federal court is irrelevant." *Id.* at 1400.  "The same rule necessarily applies to a federal court's review of purely factual determinations under § 2254(d)(2), as all nine Justices acknowledged." *Blue v. Thaler*, 665 F.3d 647, 656 (5th Cir. 2011),

*cert. denied*, 133 S. Ct. 105 (2012).  With respect to § 2254(d)(2), a Texas court's factual findings are presumed to be sound unless the petitioner rebuts the "presumption of correctness by clear and convincing evidence." *Miller-El v. Dretke*, 545 U.S. 231, 240 (2005).  The "standard is demanding but not insatiable; . . . [d]eference does not by definition preclude relief." *Id.* (citation and internal quotation marks omitted); *Goodrum v. Quarterman*, 547 F.3d 249, 256 (5th Cir. 2008), *cert. denied*, 556 U.S. 1130 (2009).  Most recently, the Supreme Court held that a "state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Richter*, 131 S. Ct. at 786.   The Supreme Court has explained that the provisions of AEDPA "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002).  Federal habeas corpus relief is not available just because a state court decision may have been incorrect; instead, a petitioner must show that the state court decision was unreasonable. *Id.* at 694.  Furthermore, when a state court provides alternative reasons for denying relief, a federal court may not grant relief "unless *each* ground supporting the state court decision is examined and found to be unreasonable." *Wetzel v. Lambert*, 132 S. Ct. 1195, 1199 (2012) (emphasis in original).

### DISCUSSION AND ANALYSIS

**Claim Number 1:  The prosecutors made allegations of sexual assault of which they knew they did not have sufficient evidence in order to prejudice the jurors and increase the odds of a death sentence in what would otherwise be a Shaken Baby Case.  Improper allegations by the State for the purpose of prejudicing jurors for tactical advantage deprived Roberson of his Sixth Amendment right to a fair jury trial.**

**Claim Number 2:  The prosecutors made allegations of sexual assault of which they knew they did not have sufficient evidence in order to prejudice the jurors and increase the odds of a death sentence in what would otherwise be a Shaken Baby Case.  Improper allegations by the State for the purpose of prejudicing jurors for tactical advantage deprived Roberson of his Fourteenth Amendment right to due process.**

**Claim Number 3:   The prosecutors made allegations of sexual assault of which they knew they did not have sufficient evidence in order to prejudice the jurors and increase the odds of a death sentence in what would otherwise be a Shaken Baby Case.  Improper allegations by the State for the purpose of prejudicing jurors for tactical advantage deprived Roberson of his Eighth Amendment right to be free from cruel and unusual punishment.**

Roberson's first three claims involve allegations of prosecutorial misconduct.  He alleges that the prosecutors made allegations of sexual assault of which they knew they did not have sufficient evidence in order to prejudice the jury and increase the odds of a death sentence in what would otherwise be nothing more than a "Shaken Baby Case."  He argued that the prosecutors made the improper allegations for the purpose of prejudicing the jurors for tactical advantage thereby violating his Sixth Amendment right to a fair jury trial, his Fourteenth Amendment right to due process and his Eighth Amendment right to be free from cruel and unusual punishment.

The indictment returned by the Grand Jury in this case contained alternative theories in which Roberson allegedly committed capital murder.  One theory was that he committed capital murder by intentionally causing the death of his daughter, who was under six years of age.  An alternative theory was that he committed capital murder by causing the death of his daughter in the course of committing or attempting to commit the offense of aggravated sexual assault.  The State presented these alternative theories during voir dire and the guilt-innocence phase of the trial. With respect to the aggravated sexual assault theory, Nurse Andrea Sims testified that she examined the victim and found tears to her anal area and tears that were caused by over stretching.  41 RR 127.[1]  She explained that anal tears are an indicator of sexual assault.  *Id.* at 128.  She added that the rate of dilation of the anal canal also suggested sexual penetration.  *Id.* at 130.  Based on her examination, she concluded there was a

---

[1]"RR" refers to the trial transcript, preceded by the volume number and followed by the page number(s).

8

probable sexual assault.  *Id.* at 131.  Nurse Sims further testified, in the form of a hypothetical, that a

torn frenulum is an indicator of a sexual assault.  *Id.* at 138.  She did not observe any signs of sexual

assault involving the victim's vagina.  *Id.* at 128-29.  No semen was found in the vagina or anus.  *Id.*

at 150-51.  Dr. Janet Squires testified that she examined the anal area and observed a "little tiny

laceration" but did not observe major trauma.  42 RR 97.  She further testified that she could not "say

she was or was not abused."  *Id.* at 100.

At the close of the guilt-innocence phase of the trial, the State elected to proceed on the claim

that Roberson committed capital murder by intentionally causing the death of his daughter, who was

under six years of age.  The alternative theory that the death was caused in the course of committing

or attempting to commit the offense of aggravated sexual assault was dropped.  The prosecutor

dropped the alternative theory because he thought he could proceed on only one theory.  Roberson's

trial attorneys criticized the decision to drop the alternative theory, which prompted the prosecutor to

provide the following explanation to the jury:

> You'll recall in voir dire we indicted under alternative theories of capital murder.  The law says
> at the end of the State's case in chief we've got to pick, and we did, and now [Roberson] wants
> to hold it against us.

46 RR 53-54.  The prosecutor subsequently repeated his explanation as follows:

> There's evidence of sexual assault here.  The fact of the matter is we had to choose.  Now they
> want to hold it against us.

*Id.* at 60-61.  The jury went on to find Roberson guilty of capital murder under the theory elected by

the State.

Roberson alleges that the State never possessed any evidence that he sexually assaulted his

daughter.  The State purportedly inserted the allegation into the indictment merely for the benefit that

a sexual assault allegation would have in creating and fostering jury hostility toward him.  He opined

9

that the present offense was nothing more than a "Shaken Baby Case." He argued that the inclusion of the sexual assault allegation violated his rights under the Sixth, Fourteenth and Eighth Amendments.

The Director argued that the prosecutorial misconduct claims are procedurally barred and without merit. With respect to the procedural bar, he noted that Roberson failed to contemporaneously object on this basis. Roberson's only objection at trial was that the court should sever the two manner and means. 5 RR 19-20. The Director further observed that Roberson never raised an objection to the possibility that the State could elect to only go forward with the child under six predicate murder charge at the conclusion of the case. *Id.* at 23-28. He noted that the trial court found that there was no legal precedent barring a prosecutor from proceeding to trial on a valid grand jury indictment. He finally argued that the prosecutorial misconduct claims are procedurally barred because they were not raised on direct appeal when they should have been.

Roberson has not made any real effort to rebut the argument that his prosecutorial misconduct claims are procedurally barred. In the petition, he acknowledged that the state trial court found that the claims were procedurally barred because they were not raised on direct appeal. In response, he merely asserted that the claims "were exhausted and none procedurally defaulted." Pet. 68. His discussion, however, focused on the denial of his motion for a severance, as opposed to prosecutorial misconduct. In his reply to the answer, Roberson provided nothing more than a one paragraph response that the concept of a procedural bar is a federal rule and "the adequacy of state procedural bars to the assertion of federal questions . . . is not within the State's prerogative finally to decide; rather, adequacy is itself a federal question." *Cone v. Bell*, 556 U.S. 449, 465-66 (2009) (internal citations omitted). He made no effort to apply the quotation to the present case. He made no effort to address the Director's assertion that he failed to contemporaneously object on the basis of

prosecutorial misconduct and that his actual objection at trial concerned the denial of his motion to sever the two manner and means.

The procedural default doctrine was announced by the Supreme Court in *Coleman v. Thompson*, 501 U.S. 722 (1991). The Court explained the doctrine as follows:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Id.* at 750. Applying this principle, the Fifth Circuit has held that the "procedural-default doctrine precludes federal habeas review when the last reasoned state-court opinion addressing a claim explicitly rejects it on a state procedural ground." *Matchett v. Dretke*, 380 F.3d 844, 848 (5th Cir. 2004), *cert. denied*, 543 U.S. 1124 (2005). The Fifth Circuit has consistently held, for example, that the Texas contemporaneous objection rule constitutes an adequate and independent ground that procedurally bars federal habeas review of a petitioner's claims. *Turner v. Quarterman*, 481 F.3d 292, 301 (5th Cir.), *cert. denied*, 551 U.S. 1193 (2007); *Cardenas v. Dretke*, 405 F.3d 244, 249 (5th Cir. 2005), *cert. denied*, 548 U.S. 925 (2006); *Dowthitt v. Johnson*, 230 F.3d 733, 752 (5th Cir. 2000) ("[T]he Texas contemporaneous objection rule is strictly or regularly applied evenhandedly to the vast majority of similar claims, and is therefore an adequate procedural bar."), *cert. denied*, 532 U.S. 915 (2001). The procedural default doctrine also applies to sufficiency of the evidence claims that could have been raised but were not raised on direct appeal. *Renz v. Scott*, 28 F.3d 431, 432 (5th Cir. 1994). *See also Register v. Thaler*, 681 F.3d 623, 628 (5th Cir. 2012); *Coleman v. Quarterman*, 456 F.3d 537, 546 (5th Cir. 2006), *cert. denied*, 549 U.S. 1343 (2007).

The Fifth Circuit recently issued a decision that illustrates the operation of the bars as follows:

> In the first place, Doyle never objected to the admission of the statements he made to his friends wherein he confessed his crimes. Second, though he objected to the voluntariness of his confession based on his mental state, he did not raise his current theory—coercion by the conditioning of state officials—at trial. Nor did he raise those issues on direct appeal. In his state habeas proceedings, the court found that Claim 3 could have been raised on direct appeal and that Doyle had thus defaulted on it. Texas bars all record-based claims not raised on direct appeal. It also requires contemporaneous objection. We "ha[ve] consistently held that the Texas contemporaneous objection rule constitutes an adequate and independent state ground that procedurally bars federal habeas review...." *Fisher v. Texas,* 169 F.3d 295, 300 (5th Cir.1999).
>
> Doyle makes no real response to his default of Claim 3, nor does he attempt to demonstrate actual prejudice or good cause for the default. He instead urges that his IAC claim, Claim 4, is necessarily tied to the merits of Claim 3. That, however, does not satisfy Texas caselaw regarding the default, so Doyle has procedurally defaulted as to the substantive issues of Claim 3.

*Doyle v. Stephens*, 535 F. App'x 391, 393-94 (5th Cir. 2013) (footnotes omitted), *cert. denied*, 134 S. Ct. 1294 (2014).

In the state habeas proceedings in the present case, the trial court specifically found that the prosecutorial misconduct claims were procedurally barred because Roberson "could have, but did not, raise the claim[s] on direct appeal." 17 SHCR 2745-46.[2]  The Texas Court of Criminal Appeals denied relief based on the trial court's findings and conclusions and its own review.  Much like the situation in *Doyle*, Roberson made no real attempt in his petition, supplemental petition or reply to the answer to demonstrate cause for the default and actual prejudice, or demonstrate that the failure to consider the claims would result in a fundamental miscarriage of justice; thus, the claims are procedurally barred.

---

[2]"SHCR" refers to the state habeas clerk's record, preceded by the volume number and followed by the page number.

Even though the claims are procedurally barred, the Court, in the interest of justice, is inclined to discuss the merits of the prosecutorial misconduct claims.  The standard for granting habeas corpus relief because of prosecutorial misconduct is "the narrow one of due process, and not the broad exercise of supervisory power."  *Darden v. Wainwright*, 477 U.S. 168, 181 (1986).  To prevail on a claim of prosecutorial misconduct in a state habeas corpus proceeding, a petitioner must show that the prosecutor's actions were so egregious as to render the trial fundamentally unfair.  *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974); *Cobb v. Wainwright*, 609 F.2d 754, 756 (5th Cir.), *cert. denied*, 447 U.S. 907 (1980).  His actions must have  "so infected the trial with unfairness as to make the resulting conviction a denial of due process."  *Darden*, 477 U.S. at 181.  It is not enough that his actions "were undesirable or even universally condemned."  *Id.*

Roberson complains that the State presented alternative theories for finding him guilty when there was unequivocally no evidence that the victim had been sexually assaulted.  The Director appropriately observed, however, that there was, in fact, evidence that the victim was sexually assaulted.  In the context of a prosecutorial misconduct claim, the real issue for the Court's consideration is whether the State presented a false case or knowingly used perjury.  The Supreme Court has found that a the "deliberate deception of a court and jurors by the presentation of known false evidence is incompatible with 'rudimentary demands of justice.'" *Giglio v. United States*, 405 U.S. 150, 153 (1972) (citations omitted).  "The same result obtains when the State, although not soliciting false evidence, allows it to go uncorrected when it appears." *Id.* (citations omitted).  A *Giglio* violation occurs when the State convicts a defendant based on testimony the prosecution knows is perjured and that prejudices the defendant.  Following *Giglio*, the Fifth Circuit  dealt with the issue of perjury in *Kutzner v. Cockrell*, 303 F.3d 333, 336 (5th Cir.), *cert. denied*, 536 U.S. 978 (2002).  A petitioner must prove that the prosecution knowingly presented or failed to correct materially false

13

testimony during trial.   303 F.3d at 337.   Due process is not implicated by the prosecutions's introduction or allowance of false or perjured testimony unless the prosecution actually knows or believes the testimony to be false or perjured; it is not enough that the testimony is challenged by another witness or is inconsistent with prior statements.  *Id.*

In the present case, Nurse Andrea Sims provided testimony that there was evidence justifying her belief that Nikki had been subjected to a sexual assault.   Roberson's claim that there was unequivocally no evidence to suggest that the victim was sexually assaulted is a misrepresentation of the record.   Roberson has not shown that Nurse Sims' testimony was false, that the State knowingly presented false testimony or that the State failed to correct materially false testimony during the trial. He failed to satisfy his burden of showing that he is entitled to relief based on the standards set forth in *Giglio*.

The facts of this case are somewhat problematic, however, because the prosecutor apparently was under the impression that the State had to elect between the alternative theories.   His impression had some support in Texas case law.  *See, e.g., O'Neal v. State*, 746 S.W.2d 769, 771-72 (Tex. Crim. App. 1988) (en banc) (The State must elect when it rests its case-in-chief in a sexual assault case as to which act it would rely on for a conviction.).   Nonetheless, in the state habeas proceedings, the trial court observed "that *Kitchens v. State*, 823 S.W.2d 256 (Tex. Crim. App. 1991), appears to support the position that the State was entitled to submit both manner and means alleged in the indictment to the jury in this case."  17 SHCR 2748.  Federal courts must defer to the state court's interpretation of its own law.  *Arnold v. Cockrell*, 306 F.3d 277, 279 (5th Cir. 2002).  Consequently, in light of the state court's findings, the Court assumes that the State could have submitted both theories to the jury. Roberson seizes on the prosecutor's misunderstanding of the law as a catalyst to claim that the prosecutor had an ulterior motive, that he misrepresented the law and acted in bad faith.  He asserted

14

that the "prosecutor must have known that this evidence would not pass muster, either with the trial judge or this Court." Pet. 40.  The Director, in response, characterized Roberson's claim as conjecture. Indeed, the Court's own review of the record reveals that Roberson has not gone beyond mere supposition in claiming that the prosecutor acted in bad faith.  He offered nothing other than conclusory allegations and bald assertions, which are insufficient to support a petition for a writ of habeas corpus.  *See Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000);  *Koch v. Puckett*, 907 F.2d 524, 530 (5th Cir. 1990);  *Ross v. Estelle*, 694 F.2d 1008, 1011 (5th Cir. 1983).

Roberson goes to great lengths to argue that he was denied a fair trial because the prosecutor discussed the evidence of sexual assault when there was no basis for doing so.  He complained that the jury was tainted during voir dire.  Nonetheless, since his underlying claim that there was absolutely no evidence to support the sexual assault charge lacks merit and his bad faith claim is conclusory, his related allegations that hinge on these unsubstantiated claims lack merit.

After finding that the prosecutorial misconduct claims were procedurally barred, the trial court alternatively issued the following findings on the merits of the claims:

12.     The Court finds that there is no evidence before this Court that the prosecutor in this case proceeded to trial in bad faith, or with an intent to improperly prejudice [Roberson's] right to a fair trial by proceeding on both manner and means alleged in the indictment.

13.     The Court finds that there is no evidence before the Court that the prosecutor believed or had reason to believe at the start of trial that he could not prove the sexual assault allegation of the indictment.

21.     The Court agrees that *Kitchens v. State*, 823 S.W. 2d 256 (Tex. Crim. App. 1991) appears to support the position that the State was entitled to submit both manner and means alleged in the indictment to the jury in this case.

22.     The Court finds, however, that there is no evidence before this Court which, if true, would prove that the prosecutor in this case was aware that he could submit both manner and means to the jury.  Similarly, the Court finds that there is no evidence

15

before the Court that the prosecutor in this case abandoned the sexual assault paragraph because he believed that he had no evidence to support the claim.

23. The Court finds that, based upon the record of the motion to sever hearing, the prosecutor in this case believed in good faith that he was required to abandon one claim and elect to proceed on only one at the close of evidence at guilt-innocence.

24. The Court further finds that defense counsel reasonably refrained from correct[ing] his understanding, presumably because the post-evidence election and subsequent submission of a single manner and means was beneficial to [Roberson].

25. The Court further finds and concludes as a matter of law that [Roberson] has failed to establish that any argument by the prosecutor violated his constitutional rights.

27. The Court further concludes as a matter of law, pursuant to *Kitchens v. State*, 823 S.W.2d 256 (Tex. Crim. App. 1991), that severance of the two manner and means alleged in the indictment was not required.

17 SHCR 2747-49. The Texas Court of Criminal Appeals subsequently denied relief based on the trial court's findings and conclusions and its own review.  To the extent that the state courts issued a decision on the merits, Roberson is not entitled to relief because he has not shown, as required by 28 U.S.C. § 2254(d), that the state court findings resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States, or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

Roberson has included a number of sub-claims under the broad umbrella of prosecutorial misconduct.  He characterized the evidence of sexual assault submitted at trial as an inadmissible extraneous offense.  However, the state court found that the sexual assault evidence was relevant and admissible as same-transaction contextual evidence and under Texas Code of Criminal Procedure Article 38.36.  17 SHCR 2749.  "Same-transaction contextual evidence results when an extraneous matter is so intertwined with the State's proof of the charged crime that avoiding reference to it would make the State's case incomplete or difficult to understand."  *Prible v. State*, 175 S.W.3d 724, 732

16

(Tex. Crim. App. 2005).  The evidence was admissible under Texas law.  Relief on this sub-claim

should primarily be denied, however, because federal habeas corpus relief ordinarily is unavailable

when a petitioner challenges an evidentiary ruling.   The Fifth Circuit provided the following

explanation:

> Due process is implicated only for rulings "of such magnitude" or "so egregious" that they
> "render the trial fundamentally unfair."  It offers no authority to federal courts to review the
> mine run of evidentiary rulings of state trial courts.  Relief will be warranted only when the
> challenged evidence "played a crucial, critical, and highly significant role in the trial."

*Gonzales v. Thaler*, 643 F.3d 425, 430 (5th Cir. 2011).  Roberson has not shown that the admission

of the evidence was improper under Texas law or that its erroneous admission played a crucial, critical,

and highly significant role in the trial.  The sub-claim lacks merit.

Roberson also complained that his cell was searched during the trial.  Other than noting that

the officer who searched the cell, Joe Willis, was an investigator for the prosecutor, he has not shown

that the State was involved.  Moreover, he has not shown that any evidence was admitted relating to

the search or that he was harmed.  Federal habeas corpus relief is unavailable in the absence of actual

prejudice or harm.  *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993).

The trial court issued the following findings on this issue:

8.   The Court finds that [Roberson] waived any complaint regarding the search of his jail
cell when he agreed before this Court that the matter would be resolved by a stipulation
that the State would not use any evidence obtained in the search.

14.   The Court specifically adopts the statements previously made by this Court in its
affidavit, and adopts those statements and incorporates them in these findings,
particularly finding that [Roberson] was not prejudiced by seizure of any documents
from his cell, that there was no improper intent to interfere with the attorney-client
privilege, and that the District Attorney did not act in bad faith and did not act
improperly.

15.   The Court concludes as a matter of law that while a defendant is incarcerated, he has
no expectation of privacy in the jail cell or the clothing he wears within the cell.

17

16.   The Court finds that there has been no evidence presented to this Court that Investigator Joe Willis was ever a jailer, that he had any particular knowledge of jail procedures, or that he had any particular training regarding review or preservation of inmate mail.

17.   The Court finds that the evidence before the Court proves that Investigator Willis assisted in searching [Roberson's] cell because he was told to do so and because the D.A. had received a letter from another inmate that [Roberson] had confessed to him the sexual assault on the victim of this offense.

17 SHCR 2746-48.  The Texas Court of Criminal Appeals subsequently adopted these findings.  Once again, Roberson is not entitled to relief because he has not shown, as required by 28 U.S.C. § 2254(d), that the state court findings resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States, or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

Overall, Roberson's prosecutorial misconduct claims are procedurally barred.  Alternatively, the claims lack merit because Roberson has not shown that the prosecutor's actions were so egregious as to render his trial fundamentally unfair.  Stated differently, he failed to satisfy his burden of showing that the prosecutors' actions so infected the trial with unfairness as to make the resulting conviction a denial of due process.  Additionally, to the extent that the state courts issued a decision on the merits of his prosecutorial misconduct claims, he failed to satisfy the requirements of § 2254(d).  Finally, considering all of the reasons provided by the state court for denying relief on the prosecutorial misconduct claims, Roberson is not entitled to relief because he has not shown that each reason provided by the state court was unreasonable.  *See Wetzel*, 132 S. Ct. at 1199.   Habeas corpus relief should be denied on the first three grounds for relief.

**Claim Number 4:  The absence of a state procedure to permit severance of theories of criminal liability when necessary to provide a fair trial as required by the Due Process**

18

**Clause and Fair Jury Trial Clause and to prevent the violation of the Cruel and Unusual Punishment Clause, violates *Chambers v. Mississippi*[3] and the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution.**

In claim number four, Roberson asserts that the two theories of liability on which he was indicted should have been severed.  He specifically argued that the absence of a state procedure to permit severance when necessary to provide a fair trial as required by the Due Process Clause and the Fair Jury Trial Clause and to prevent a violation of the Cruel and Unusual Punishment Clause violates *Chambers* and the Fifth, Sixth, Eighth and Fourteenth Amendments.  In support of the claim, Roberson asserts that *Chambers* stands for the proposition that the Fourteenth Amendment guarantees a criminal defendant the opportunity to present a complete defense.  *See also Crane v. Kentucky*, 476 U.S. 683 (1986);  *California v. Trombetta*, 467 U.S. 479 (1984);  *Washington v. Texas*, 388 U.S. 14 (1967).  He argued that the trial court should have severed the two theories of liability contained in the indictment, pursuant to Texas Penal Code Section 3.04, and conducted a suppression hearing, pursuant to Texas Code of Criminal Procedure Article 38.32, so that he could challenge and exclude the sexual assault evidence which he alleges the State had "no legitimate basis in law" for presenting.

 On direct appeal, the Texas Court of Criminal Appeals fully explained why the ground for relief lacks merit under Texas law:

> Section 3.04(a) says, "Whenever two or more offenses have been consolidated or joined for trial under Section 3.02, the defendant shall have a right to severance of the offenses." We have held that an indictment may contain as many separate paragraphs charging the same offense as is necessary to meet the contingencies of evidence. Where an indictment charges different theories under which a defendant may have committed a single capital murder, Section 3.04(a) is inapplicable. Here, the appellant argues that he was harmed by the trial court's decision in this case to "support the continued joinder of the two capital counts." The record, however, shows that no such thing happened. The indictment in this case did not allege two separate offenses, but rather one offense (capital murder) under two different theories (the victim was under six years of age, and the murder was committed in the course of committing aggravated

---

[3]410 U.S. 284 (1973).

> sexual assault). The trial court did not err by denying the appellant's motion to sever under Section 3.04. Nor did the trial court's ruling implicate, much less violate, any of the appellant's federal constitutional rights, as he claims. Point of error five is overruled.

*Roberson*, 2002 WL 34217382, at *6  (footnotes omitted).  As was previously noted, this Court will defer to the state courts' interpretation of its own law.  *Arnold*, 306 F.3d at 279.  According to the Texas Court of Criminal Appeals, Roberson was not entitled to a severance under Texas law.  In his answer, the Director appropriately cited the Texas Court of Criminal Appeals' decision in arguing that there was no basis for a severance under Section 3.04(a) because the indictment in the present case had multiple theories of charging a single capital murder.  In his reply, Roberson argued that the Director has misread Texas law and that he was entitled to a severance.  *Rojas-Diaz v. State*, No. 05-08-01580-CR, 2010 WL 1532411 (Tex. App. - Dallas April 19, 2010, no pet.) (reversing trial court's failure to sever aggravated robbery from burglary charges).  However, *Rojas-Diaz* does not support Roberson's claim.  *Rojas-Diaz* concerned two separate offenses consolidated for one trial, while the present lawsuit concerned multiple theories under which Roberson committed a single capital murder.

It should be added at this juncture that Roberson's focus on Texas law and the Director's alleged misreading of Texas law does not, standing alone, provide a basis for federal habeas corpus relief.  A petitioner seeking federal habeas corpus review must assert a violation of a federal constitutional right.  *Lowery v. Collins*, 988 F.2d 1364, 1367 (5th Cir. 1993).  Federal habeas corpus relief will not issue to correct errors of state constitutional, statutory, or procedural law, unless a federal issue is also present.  *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991);  *West v. Johnson*, 92 F.3d 1385, 1404 (5th Cir. 1996).  In the course of reviewing state proceedings, a federal court does "not sit as a super state supreme court to review error under state law."  *Wood v. Quarterman*, 503 F.3d 408, 414 (5th Cir. 2007);  *Skillern v. Estelle*, 720 F.2d 839, 852 (5th Cir. 1983), *cert. denied*, 469 U.S. 1067 (1984).

Roberson also complained that Texas does not have a procedure to permit the severance of multiple theories.  The state trial court appropriately explained why this argument lacks merit under the United States Constitution:

> 28.  The Court further concludes as a matter of law that had the State attempted to try [Roberson] sequentially, one manner and means at a time, such a procedure would have violated [Roberson's] right against double jeopardy, and the Court finds that this Court would not have permitted such a procedure.

17 SHCR 2749.  The Texas Court of Criminal Appeals subsequently adopted these findings.  The finding that a second trial for capital murder was forbidden by the Fifth Amendment Double Jeopardy Clause was consistent with clearly established federal law.  *United States v. Dixon*, 509 U.S. 688, 695-96 (1993) ("This protection applies both to successive punishments and to successive prosecutions for the same criminal offense.");  *North Carolina v. Pearce*, 395 U.S. 711, 717 (1969).  More recently, the Fifth Circuit reiterated that the Double Jeopardy Clause forbids convicting a defendant twice for capital murder for the same offense.  *United States v. Agofsky*, 458 F.3d 369, 371-73 (5th Cir. 2006).  Roberson is advocating a position that, if adopted, would amount to a blatant violation of the Double Jeopardy Clause.  The position that he is taking is untenable.  Roberson is not entitled to relief because he has not shown, as required by 28 U.S.C. § 2254(d), that the state court findings on this issue resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States, or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

Roberson argues, however, that denying him a severance violated his right to a fair opportunity to defend himself against the State's accusations in light of *Chambers*.  Roberson's reliance on *Chambers* is misplaced.  The Supreme Court observed that the "right of an accused in a criminal trial

to due process is, in essence, the right to a fair opportunity to defend against the State's accusations."

*Chambers*, 410 U.S at 294.  In *Chambers*, Mississippi's "party witness" or "voucher" rule and its

hearsay rule served to exclude or prevent the cross-examination of witnesses pivotal to the petitioner's

exculpatory defense.  *Id.*  The Court found that the "right to confront and cross-examine witnesses and

to call witnesses in one's own behalf have long been recognized as essential to due process."  *Id.*  The

issues raised in *Chambers* are not relevant to Roberson's claims.  He has not identified how he was

denied any of these rights.  The Director correctly opined that the cases cited by Roberson concern

restrictions improperly placed on the petitioner in presenting a defense.  *See United States v. McClure*,

546 F.2d 670, 673 (5th Cir. 1977) ("a jury could not properly convict him absent the opportunity to

hear the proffered testimony bearing upon his theory of defense and weigh its credibility along with

the other evidence in a case").  No restrictions were placed on Roberson.  He was given the

opportunity to fully proffer evidence and to cross-examine the witnesses against him.  *Chambers* has

no bearing on this case.  Roberson has not cited any cases supporting his claim that *Chambers* stands

for the proposition that he was entitled to have the separate theories of capital murder alleged in his

case severed into separate criminal trials.  The *Chambers* argument lacks merit.

Overall, Roberson has not shown that he was entitled to a severance, and he failed to satisfy

the requirements of § 2254(d) on this issue.  He is not entitled to federal habeas corpus relief on claim

number four.

> **Claim Number 5:  Unreliable and unscientific testimony by the State's psychologists that Roberson was a future danger lacked scientific reliability required by *Daubert v. Merrill Dow Pharmaceuticals, Inc.,*[4] and *Kumho Tire Co. v. Carmichael.*[5]**

---

[4]509 U.S. 579 (1993).

[5]526 U.S. 137 (1999).

**Claim Number 6:  The State's psychologists who testified that Roberson was a future danger lacked scientific qualifications as required by *Daubert v. Merrill Dow Pharmaceuticals, Inc.* and *Kumho Tire Co. v. Carmichael.***

**Claim Number 7:  Unreliable and unscientific testimony by the State's psychologists that Roberson was a future danger lacked scientific reliability, and thereby violated the Due Process Clause of the Fourteenth Amendment to the United States Constitution.**

**Claim Number 8:  Unreliable and unscientific testimony by the State's psychologists that Roberson was a future danger lacked scientific reliability, and thereby violated the Fifth, Sixth and Eighth Amendments to the United States Constitution.**

Claims five through eight concern the State's expert witnesses regarding Roberson's future dangerousness.  Roberson challenges the qualifications and testimony of Dr. Tom Allen and Dr. David Self, the State's psychologists, under *Daubert* and *Kumho Tire.*  He asserted that they offered unreliable and unscientific testimony in violation of the Fifth, Sixth, Eighth and Fourteenth Amendments.

A *Daubert* hearing was, in fact, conducted during the course of the punishment phase of the trial.  48 RR 108-115.  The hearing was conducted before the experts were permitted to testify before the jury.  Dr. Allen was the only expert questioned during the *Daubert* hearing.  He established his credentials and testified that 85% of his work was in the field of forensic psychology.  *Id.* at 109.  No objections were raised or argued by the defense.  Defense counsel declined the opportunity to question Dr. Allen.  *Id.* at 115.  Roberson did not make an issue about the qualifications of these witnesses at trial or on direct appeal.  The issue was not raised until he filed his state application for a writ of habeas corpus.

The state trial court fully discussed the *Daubert* claims and found that they were procedurally barred.  The specific findings were as follows:

29.     The Court finds that [Roberson] makes related claims in his fifth through eighth grounds alleging that the testimony of Dr. Allen and Dr. Self did not satisfy the reliability requirements of *Daubert v. Merrell Dow*, and that the admission of their

23

testimony at punishment therefore violated the Due Process Clause of the Fourteenth Amendment as well as the Fifth and Sixth Amendments and the Cruel and Unusual Punishment Clause of the Eighth Amendment.

30.     The Court finds and concludes as a matter of law that [Roberson] is procedurally barred from raising these issues by way of habeas corpus by his failure to make these objections at trial. *Ladd v. State*, 3 S.W.3d 547, 566 (Tex. Crim. App. 1999); *Wright v. State*, 28 S.W.3d 526, 536 (Tex. Crim. App. 2000) ("Because he did not object to error under the Confrontation Clause, appellant waives this argument on appeal."), citing *Dewberry v. State*, 4 S.W.3d 735, 752 & n. 16 (Tex. Crim. App. 1999); see also *Briggs v. State*, 789 S.W.2d 918, 924 (Tex. Crim. App. 1990) (stating that even constitutional error may be waived).

31.     The Court further finds and concludes as a matter of law that [Roberson] is procedurally barred from raising these issues by way of habeas corpus by his failure to raise these issues on direct appeal. *Ex parte Gardner*, 959 S.W.2d 189, 199 (Tex. Crim. App. 1996) (on reh'g), (citing *Ex parte Goodman*, 816 S.W.2d 383, 385 (Tex. Crim. App. 1991)).

32.     This Court further finds and concludes as a matter of law that [Roberson's] claim is not "novel," nor was it unknown to [Roberson], so as to excuse his failure to raise the issue in the trial court.

33.     The Court further finds and concludes as a matter of law that the voluminous scholarly articles attached to [Roberson's] application for writ of habeas corpus do not excuse his failure to raise these issues on direct appeal.

34.     The Court finds that [Roberson] fails to even explain how the vast majority of the scholarly articles attached to his writ application even relate to the issues raised here; this Court declines to make [Roberson's] claim for him.

35.     The Court concludes as a matter of law that [Roberson's] claim - that the Court abused its discretion in admitting the State's experts' testimony in violation of Tex. R. Evid. 702 - is not cognizable by way of the writ of habeas corpus, because this is merely a claim that the Court failed to comply with an evidentiary rule.

36.     The Court further concludes as a matter of law that [Roberson's] claim of a violation of the Supreme Court's holding in *Daubert v. Merrell Dow* is not cognizable on the writ of habeas corpus because *Daubert* simply construes the federal rule of evidence relating to expert witness qualification in a civil case and does not purport to establish a constitutional standard or right.

17 SHCR 2750-51.  The Texas Court of Criminal Appeals adopted all of these findings and

conclusions.

The Director observed in his answer that Roberson did not address any of the procedural bars in his petition except for his general hypothetical contentions about procedural defaults and his promise to answer the bars in future pleadings.

The Director's assessment of Roberson's discussion of the procedural bars is correct.  In his petition, Roberson made no real effort to address the trial court's findings.  Instead, he asserted that it was not possible for counsel to brief the litany of waiver and procedural default findings and conclusions issued by the trial court in its 41 page decision due to the AEDPA's statute of limitations. Pet. 156.  As opposed to specifically addressing the state court's findings, he merely provided a long list of reasons why procedural defaults may be excused.  *Id.* at 157-58.  He did not explain how any of these excuses apply in his case.  He asserted that he intended to address the state court findings in a supplemental brief; however, neither his supplemental petition nor his response to the answer specifically addressed the state court findings.  In the supplemental petition, he provided a list of scholarly articles, but he did not explain how any of these articles have any relevancy to the present case.  The state trial court appropriately observed that Roberson "fails to even explain how the vast majority of the scholarly articles attached to his writ application even relate to the issues here; this Court declines to make [Roberson's] claim for him."  17 SHCR 2751.

The state court's observations about the scholarly articles offered during the state habeas corpus proceedings are equally apropos with respect to the scholarly articles submitted in the present proceeding.  Roberson failed to explain how the articles relate to the issues raised herein.  Neither his supplemental petition nor his response to the answer specifically addressed the state court findings. Roberson made no real attempt to demonstrate cause for the default and actual prejudice, or demonstrate that the failure to consider the claim would result in a fundamental miscarriage of justice; thus, claims five through eight are procedurally barred.

25

Even though the state trial court was under no obligation to discuss the merits of the claims after finding that they were procedurally barred, the court went on to explain that habeas claims based on *Daubert* lack merit:

> 37.     This Court finds that [Roberson] has failed to direct this Court's attention to any relevant Texas or federal case law demonstrating that similar testimony by similarly qualified witnesses has ever been denied admission on a *Daubert* challenge.

17 SHCR 2751-52.  The observation was consistent with clearly established federal law.  In another recent capital murder habeas case, the Fifth Circuit rejected a claim that the State failed to satisfy the *Daubert* test for reliability with the explanation that such claims are "squarely foreclosed by Supreme Court and circuit precedent."  *Rivas v. Thaler*, 432 F. App'x 395, 404 (5th Cir. 2011)(citing *Barefoot v. Estelle*, 463 U.S. 880, 896-906 (1983);  *United States v. Fields*, 483 F.3d 313, 341-46 & n. 28 (5th Cir. 2007)), *cert. denied*, 132 S. Ct. 850 (2011).  Roberson's *Daubert* claims are both procedurally barred and squarely foreclosed by Supreme Court and Fifth Circuit precedent.

Finally, even though it is unnecessary for this Court to discuss Roberson's specific complaints about the substance of the experts' testimony in light of the procedural bars, the Court feels compelled to provide an overview of his complaints.  He initially complained about the State's experts' use of the Hare Psychopathy Tests in discussing his future dangerousness.  The Fifth Circuit rejected a similar claim as follows:

> Because the jury considered a number of pieces of evidence regarding Martinez's future dangerousness and because Martinez's counsel challenged the merits of the Hare Test's procedures, the court did not violate Martinez's due process rights by allowing the test and Ferrara's testimony into evidence.

*Martinez v. Dretke*, 99 F. App'x 538, 544 (5th Cir. 2004), *cert. denied*, 543 U.S. 1068 (2005).  The reasoning is equally applicable in this case.  Experts may present testimony discussing the Hare Psychopathy Tests, and the jury has the function of determining the weight to give to such testimony.

Roberson may not agree with the correctness of the State's experts' testimony and the applicability of the Hare Psychopathy tests, but such arguments go to the weight of the evidence as opposed to the admissibility of the evidence. *Daubert* is clear that critiques of the substance of an expert's testimony and conclusions go to the weight of the testimony, not its admissibility. *See United States v. Valencia*, 600 F.3d 389, 421 (5th Cir. 2010), *cert. denied*, 131 S. Ct. 285 (2010).

Roberson further argued that the testimony presented by Dr. Allen and Dr. Self to predict his future dangerousness was inherently unreliable and that they failed to follow acceptable scientific methodology. The basic flaw with his argument is that it assumes that there is only one valid methodology that may be employed. The state trial court appropriately found that Roberson "failed to allege facts which, if true, would render Dr. Allen's and Dr. Self's expert testimony inadmissible." 17 SHCR 2752. The court further found that Roberson "failed to allege or prove that there is only one valid methodology for assessing an inmate's risk for committing violent acts." *Id.* at 2753. These findings were adopted by the Texas Court of Criminal Appeals.

The substance of the experts' testimony reveals that Dr. Allen, a psychologist, began his testimony by establishing his academic credentials and his background in capital litigation. 48 RR 116-17. In particular, he discussed his background working with maximum security inmates with mental problems at Rusk State Hospital and the process of evaluating the risk assessment of these inmates. *Id.* at 117-18. He noted that he had conducted risk assessments in about 40 to 50 capital murder cases. *Id.* at 118. Dr. Allen specified that he had testified in behalf of both the State and defendants in capital murder cases. *Id.* He testified about his findings regarding Roberson only after giving his credentials and background. Dr. Self likewise discussed his academic background and his profession as a psychiatrist at Rusk State Hospital. *Id.* at 156-57. He discussed his findings regarding

27

Roberson only after establishing his credentials and background.  There were no objections to either

expert, and there was no basis for a meritorious objection.

The record reveals that Dr. Allen and Dr. Self presented their conclusions about Roberson's

future dangerousness, while Roberson countered with the testimony of Dr. Kelly R. Goodness.  All

three experts were highly qualified, and their testimony was appropriately presented to the jury.  The

evidence reveals that Dr. Goodness likewise conducted a Hare analysis, according to prison

psychologist William Burleson and her own admission.  47 RR 142-43; 17 SHCR 2731.  Both Dr.

Allen and Dr. Goodness agreed that Roberson's risk of future dangerousness in the prison environment

would be minimal.  48 RR 56, 60, 105, 114, 142.  All three doctors believed he would pose a greater

risk in the free world.  *Id.* at 95, 142, 166.  Dr. Goodness specified that Roberson's Hare score of 28

was two points below the generally accepted cut-off score of 30 necessary to be considered a

diagnosable psychopath.  17 SHCR 2731.  She testified that psychopathy is not very common in the

general population, that it makes up about 25 percent of the prison population, and that there is not

sufficient research as to whether it predicts future dangerousness.  48 RR 22-23.  She testified, in the

form of a hypothetical, that the actions attributed to Roberson showed a complete and utter lack of

remorse and empathy, which could be described as cold blooded.  *Id.* at 87.  Like the situation in

*Martinez*, all of the evidence presented by both sides was subjected to cross-examination.  Roberson

was not denied due process by having the evidence go to the jury, including the evidence presented

by Dr. Allen and Dr. Self.  The Director persuasively argued that Roberson's points and complaints

about their testimony go to the weight to be given to their testimony, not its admissibility.  Indeed,

"vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden

of proof are the traditional and appropriate means of attacking shaky but admissible evidence."

*Stevenson v. E. I. DuPont De Nemours and Co.*, 327 F.3d 400, 407 (5th Cir. 2003) (citing *Daubert*,

509 U.S. at 599) (internal quotation marks omitted).  The state trial court accordingly found that Roberson "has failed to prove by the preponderance of the evidence that Dr. Self and Dr. Allen were not properly qualified to provide the expert testimony they gave at this trial or that admission of the unobjected-to testimony of Dr. Self or Dr. Allen violated any of his constitutional rights."  17 SHCR 2753-54.  Once again, Roberson has not shown, as required by 28 U.S.C. § 2254(d), that the state court findings resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States, or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

Overall, claims five through eight are procedurally barred.  Alternatively, Roberson's various claims asserting the testimony of Dr. Allen and Dr. Self should not have been admitted because such testimony was unreliable and unscientific lack merit.  Additionally, to the extent that the state court issued a decision on the merits, Roberson is not entitled to relief on these claims because he has not satisfied the requirements of 2254(d).  Finally, considering all of the reasons provided by the state court for denying relief on claims five through eight, Roberson is not entitled to relief because he has not shown that each reason provided by the state court was unreasonable.  *See Wetzel*, 132 S. Ct. at 1199.  Habeas corpus relief should be denied on claims five through eight.

**Claim Number 9:  Roberson received ineffective assistance of counsel in the sentencing phase of the trial in violation of the Sixth Amendment and Fourteenth Amendment to the United States Constitution by failing to challenge adequately the State's forensic psychology testimony that Roberson would constitute a future danger.**

Roberson's ninth claim is related to claims five through eight.  This time, he presents his arguments in the context of an ineffective assistance of counsel claim.  He specifically argued that counsel's representation was ineffective by failing to adequately challenge the State's forensic

29

psychology testimony that he would constitute a future danger.  In support of the claim, Roberson argued that counsel was ineffective because he did not make the same objections and conduct the same cross-examination of the experts as he outlined in claims five through eight.

Ineffective assistance of counsel claims are governed by the Supreme Court's standard established in *Strickland v. Washington*, 466 U.S. 668 (1984).  *Strickland* provides a two-pronged standard, and the petitioner bears the burden of proving both prongs.  *Id.* at 687.  Under the first prong, he must show that counsel's performance was deficient.  *Id.*  To establish deficient performance, he must show that "counsel's representation fell below an objective standard of reasonableness," with reasonableness judged under professional norms prevailing at the time counsel rendered assistance. *Id.* at 688.  The standard requires the reviewing court to give great deference to counsel's performance, strongly presuming counsel exercised reasonable professional judgment.  *Id.* at 690.  Under the second prong, the petitioner must show that his attorney's deficient performance resulted in prejudice.  *Id.* at 687.  To satisfy the prejudice prong, the habeas petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.  An ineffective assistance of counsel claim fails if a petitioner cannot satisfy either the deficient performance or prejudice prong; a court need not evaluate both if he makes an insufficient showing as to either.  *Id.* at 697.

In the context of § 2254(d), the deferential standard that must be accorded to trial counsel's representation must also be considered in tandem with the deference that must be accorded to state court decisions, which has been referred to as "doubly" deferential. *Richter*, 131 S. Ct. at 788. "When § 2254(d) applies, the question is not whether counsel's actions were reasonable.  The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*

"If the standard is difficult to meet, that is because it was meant to be." *Id.* at 786.  *Also see Morales v. Thaler*, 714 F.3d 295, 302 (5th Cir.), *cert. denied*, 134 S. Ct. 393 (2013).

In the present case, as was noted in the previous section, Dr. Allen and Dr. Self were well qualified to testify as experts.  Defense counsel did not object and had no reason to object to them testifying at trial.  Any objection to them testifying at trial would have been overruled.  Counsel was not required to make frivolous or futile motions or objections. *Johnson v. Cockrell*, 306 F.3d 249, 255 (5th Cir. 2002), *cert. denied*, 538 U.S. 926 (2003);  *Koch v. Puckett*, 907 F.2d at 527.  "The failure to raise meritless objections is not ineffective lawyering; it is the very opposite." *Clark v. Collins*, 19 F.3d 959, 966 (5th Cir.), *cert. denied*, 513 U.S. 966 (1994).

As was noted by the Fifth Circuit in *Stevenson*, the proper method of challenging an adverse expert's testimony is by vigorous cross-examination, presentation of contrary evidence and careful instruction on the burden of proof.  *Stevenson*, 327 F.3d at 407.  Defense counsel vigorously cross-examined the State's experts and presented contrary evidence through Dr. Goodness.  Defense counsel adhered to standard practices in challenging the State's evidence concerning Roberson's future dangerousness.  Roberson has not shown that counsel's representation fell below an objective standard of reasonableness.

The type of argument that Roberson is making is akin to arguments made in *Coble v. Quarterman*, 496 F.3d 430 (5th Cir. 2007).  The Fifth Circuit provided the following discussion:

> Coble also argues that trial counsel failed to present a coherent theory regarding mitigation evidence in order to persuade the jury to answer "no" to the second special issue question....
> At its base, Coble's current challenge is to the strategy employed by trial counsel. Such a challenge does not establish ineffective assistance. *See Yarborough v. Gentry,* 540 U.S. 1, 5-6, 124 S. Ct. 1, 157 L.Ed.2d 1 (2003) ("[C]ounsel has wide latitude in deciding how best to represent a client, and deference to counsel's tactical decisions in his closing presentation is particularly important because of the broad range of legitimate defense strategy at that stage .... Judicial review of a defense attorney's summation is therefore highly deferential-and doubly deferential when it is conducted through the lens of federal habeas.").... Coble's desire to have

> a specific defense theory presented does not amount to ineffective assistance on federal habeas review. *Johnson v. Cockrell,* 301 F.3d 234, 239 (5th Cir.2002) (quoting *Strickland,* 466 U.S. at 689, 104 S.Ct. 2052) ("[C]ourts must 'indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.' ").

*Id.* at 437 (footnotes omitted).  The Fifth Circuit's analysis is equally applicable to the present case. Trial counsel presented a sound trial strategy on the issue of future dangerousness.  He presented an expert to counter the State's experts and vigorously cross-examined the State's experts.   Roberson's tactic in the present ground for relief is nothing more than an argument that alternative arguments and defensive theories should have been employed, but his desire to have a specific defense theory presented does not satisfy his burden of showing ineffective assistance of trial counsel.  *Id.*  The type of approach that he is taking is inconsistent with his burden on federal habeas review.  The issue before the Court is whether trial counsel's representation fell below an objective standard of reasonableness, and Roberson has not satisfied his burden on this issue.   Roberson has not shown deficient representation nor prejudice.  He has not satisfied *Strickland*.  The ineffective assistance of trial counsel claim lacks merit.

It is further noted that the present ineffective assistance of counsel claim was fully developed in the state habeas corpus proceedings.  The state trial court initially found that the claim was barred because Roberson could have but failed to raise it on direct appeal:

> 51.  The Court further finds and concludes as a matter of law that [Roberson] is procedurally barred from raising this issue by way of habeas corpus because he could have - but failed - to raise this issue on direct appeal.  *Ex parte Gardner*, 959 S.W.2d 189, 199 (Tex. Crim. App. 1996) (on reh'g), (citing *Ex parte Goodman*, 816 S.W.2d 383, 385 (Tex. Crim. App. 1991)).
>
> 52.  The Court is cognizant of the Court of Criminal Appeals' holding in *Ex parte Torres*, 943 S.W.2d 469, 475 (Tex. Crim. App. 1997), that the rejection of his claim on direct appeal does not bar re-litigation of his claim on habeas corpus to the extent that [Roberson] seeks to gather and introduce additional evidence not contained in the direct appeal record, but the Court finds and concludes as a matter of law that *Torres*

32

does not authorize review of the present complaint because [Roberson] has failed to "gather and introduce new evidence not contained in the direct appeal record."

53.     The Court finds and concludes as a matter of law that the voluminous articles and excerpts from various published writings attached to the writ application do not constitute "new evidence" within the meaning of *Torres*, because these writings could have been cited by appellate counsel on direct appeal.

54.     The Court further finds and concludes as a matter of law that [Roberson's] hypothetical questions and objections set out in his writ application do not constitute any evidence of ineffective assistance, particularly since [Roberson] has not even attempted to present any **evidence** - as opposed to mere speculation and argument - to this Court regarding how the State's experts would have responded, and since [Roberson] has failed to present any affidavit or evidence from his trial counsel that his cross-examination of the State's experts was not part of his trial strategy.

55.     The Court further finds that [Roberson] has failed to adequately state a claim upon which relief could be granted, because he has failed to allege specifically or to prove how the cross-examination of the State's experts contained in the trial record was deficient.

17 SHCR 2755-56.  The Texas Court of Criminal Appeals adopted all of these findings.

In his petition, Roberson addressed the findings of the state trial court by once again asserting that it was not possible for counsel to brief the litany of waiver and procedural default findings and conclusions found by the trial court due to the AEDPA's statute of limitations.  Pet. 179.  As opposed to specifically addressing the state court's findings, he merely provided a long list of reasons why procedural defaults may be excused.  *Id.* at 179-80.  He did not, however, explain how these excuses apply in this case.  He asserted that he intended to address the findings in a supplemental brief; however, neither his supplemental petition nor his response to the answer specifically addressed the state court findings.  Roberson has made no real attempt to demonstrate cause for the default and actual prejudice, or demonstrate that the failure to consider the claim would result in a fundamental miscarriage of justice; thus, the ineffective assistance of counsel claim is procedurally barred.

33

As with Roberson's previous claims, the state trial court went on to alternatively discuss the ineffective assistance of counsel claim on the merits.  The trial court found that the claim lacks merit as follows:

56.   The Court finds, after review of the record, that trial counsel's actions and examination of the State's experts constituted part of a reasonable trial strategy, particularly since trial counsel was able to effectively point out the similarities between Dr. Allen's and Dr. Goodness's testimony, he was able to use those similarities to attempt to impeach Dr. Self's more damaging opinions, and he was able to point out that the State's experts had limited exposure to [Roberson] compared to Dr. Goodness.

57.   The Court finds that the extensive cross-examination and badgering of the State's witnesses proposed by [Roberson] in his writ application would have been detrimental to [Roberson's] defense, because the course of action proposed by [Roberson] would have served to emphasi[ze] the opinions already expressed by the State's experts while alienating and irritating the jury.

58.   The Court finds that there is no evidence that the defense expert Dr. Goodness could have competently testified regarding [Roberson's] "base rate data" theory, or that such testimony would even have been admissible.

59.   The Court finds that there is no evidence that Dr. Goodness could have performed an *ad hoc* Hare analysis of [Roberson] on redirect, and the Court further finds that had she done so, it would only have served to impeach her previous testimony that she did not believe such analysis to be appropriate in the context of a capital murder trial.

60.   The Court finds that there is no evidence before the Court that Dr. Goodness could or would have "destroyed" Dr. Allen's assessment of [Roberson] as a psychopath; rather, the Court finds that had Dr. Goodness been questioned further, she would more likely have only supported Dr. Allen's diagnosis.

61.   The Court finds that [Roberson] has failed to even adequately allege a claim of ineffective assistance, since counsel has failed to prove what actions of trial counsel were outside the scope of reasonably effective assistance.

62.   The Court further finds and concludes that in light of the absolute absence in this record of any explanation of trial counsel's action - through counsel's affidavit or otherwise - which would tend to prove that counsel's actions were not part of a reasonable strategy or that they were outside the range of reasonably effective assistance or that they harmed [Roberson], this Court is without authority to find ineffective assistance pursuant to *Bone v. State*, 77 S.W.3d 828, 836 (Tex. Crim. App. 2002).

34

17 SHCR 2756-2758.  These findings and conclusions were adopted by the Texas Court of Criminal Appeals.  The Director observed that Roberson's arguments simply duplicated the arguments he raised in the state habeas proceedings without variance.  He argued that because Roberson did nothing more than copy and paste from his earlier pleading, he did not demonstrate that he is entitled to relief.  *See Richter*, 131 S. Ct. at 785.  Indeed, Roberson has not shown, as required by 28 U.S.C. § 2254(d), that the state court findings resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States, or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.  Moreover, he failed to satisfy the doubly deferential standard that must be afforded to state court decisions on the merits regarding ineffective assistance of counsel claims.  *Id.* at 788.

Overall, claim number nine is procedurally barred.  Furthermore, it lacks merit.  Additionally, to the extent that the state court issued a decision on the merits, Roberson is not entitled to relief on the claim because he has not satisfied the requirements of § 2254(d).  Finally, considering all of the reasons provided by the state court for denying relief on this ineffective assistance of counsel claim, Roberson is not entitled to relief because he has not shown that each reason provided by the state court was unreasonable.  *See Wetzel*, 132 S. Ct. at 1199.  Federal habeas corpus relief should be denied on claim number nine.

### Claim Number 10:  Roberson received ineffective assistance of counsel in the sentencing phase of the trial in violation of the Sixth Amendment and Fourteenth Amendment to the United States Constitution.

In claim number ten, Roberson argues that he received ineffective assistance of counsel during the sentencing phase of the trial by (1) failing to object to the jury charge during sentencing, (2) failing

35

to object to the jury charge in the liability phase, (3) failing to object to improper prosecutor argument, (4) general failure to preserve error, (5) general failure to brief the direct appeal adequately, and (6) failure to object to the refusal of the trial judge to adequately fund the defense.

Roberson failed to develop any of these sub-claims.  With respect to the first sub-claim, he stated nothing more than "[t]he defense did not lodge certain constitutional objections to the jury charge in the sentencing phase.  This may have constituted waiver or procedural default."  With respect to the second sub-claim, Roberson shifted gears from the sentencing phase of the trial and asserted that counsel should have objected to the jury charge during the guilt-innocence phase of the trial concerning the lack of an accurate definition of the term "reasonable doubt."  He did not discuss how the definition was deficient nor provide any sort of an alternative that should have been provided by counsel.  With respect to the third sub-claim, Roberson complained that counsel did not object to the State's misleading argument that it was required to abandon the sexual assault allegations.  This complaint is a rehash of Roberson's first ground for relief presented in terms of an ineffective assistance of counsel claim.  Nonetheless, Roberson misrepresents the record since counsel made an issue of the State's decision to drop the allegations, which necessitated a response from the State in its closing argument. 46 RR 53-54, 60-61.  In his fourth and fifth sub-claims, Roberson stated nothing more than counsel failed to preserve error and failed to brief the direct appeal adequately.  With respect to the final sub-claim, Roberson complained that counsel did not object to the rate of compensation, which was only $75 per hour.  With respect to all of these claims, Roberson offered nothing other than conclusory allegations and bald assertions, which are insufficient to support a petition for a writ of habeas corpus. *See Miller*, 200 F.3d at 282; *Koch*, 907 F.2d at 530; *Ross*, 694 F.2d at 1011.  He did not satisfy either *Strickland* prong.  Claim number ten lacks merit.

Claim number ten should also be denied in light of the reasons provided by the state trial court.

The trial court made the following findings:

63.     The Court finds that in his tenth ground, [Roberson] contends that his trial counsel were ineffective in failing to make "certain constitutional objections" to the jury charges, in failing to object to unspecified jury arguments, and in failing to preserve and brief unspecified constitutional issues.

64.     The Court finds and concludes as a matter of law that these claims are procedurally barred, because [Roberson] has presented no facts outside the appellate record to support the claims, and they therefore could have been raised on direct appeal.

65.     The Court finds and concludes as a matter of law that [Roberson] has failed to state sufficient facts or present any evidence so as to present these claims properly for review in habeas corpus.

66.     The Court concludes as a matter of law that [Roberson] has failed to assert any facts supporting any specific claim of ineffectiveness and failed even to allege how any error was harmful or entitled him to relief from his conviction or sentence.  *Ex parte McPherson*, 32 S.W.3d 860, 861 (Tex. Crim. App. 2000).

67.     The Court finds that in regard to the one claim that [Roberson] has even attempted to link to specific facts in the trial record - that counsel failed to object to the prosecutor's claim that he was required to elect between paragraphs - [Roberson] has failed to allege or prove how this actually prejudiced his right to a fair trial.

68.     The Court further finds that [Roberson] has failed to allege or prove how any of the other claimed acts of ineffective assistance prejudiced him.

69.     The Court finds that [Roberson] has not even alleged how counsel's actions were ineffective, has not attempted to explain why the actions were not "in the exercise of reasonable professional judgment," has not presented any affidavits from defense counsel admitting that their actions were the result of any lapses in professional judgment or ability, and has not advised whether trial counsel were even "accorded an opportunity to explain" prior to the filing of this application.

70.     The Court further finds that [Roberson] has failed to allege or prove what objections should have been made to the jury charges which were not made, how counsel was ineffective in omitting such objections, and how he was prejudiced by the lack of such unspecified objections.

71.     The Court further finds that [Roberson] has failed to allege or prove what objections should have been made to the jury charges which were not made, how counsel was

ineffective in omitting such objections, and how he was prejudiced by the lack of such unspecified objections.

72.     The Court further finds that [Roberson] has failed to allege or prove that any objections to jury argument would likely have been sustained, nor has he alleged or proven that such objections would have preserved any reversible error.

73.     The Court finds that [Roberson] has failed to allege or prove that appellate counsel was ineffective in his representation on appeal; the Court notes that defense appellate counsel submitted a fifty-seven page brief asserting thirteen points of error from this lengthy trial, and that under such circumstances, exclusion of some possible issues becomes a virtual necessity.

74.     The Court further finds that [Roberson] has failed to plead or prove that any omitted claims would have been more likely to succeed than the claims already asserted on direct appeal, or that counsel's omissions of such claims was not a reasonable exercise of appellate counsel's professional judgment.

75.     The Court finds and concludes as a matter of law that because [Roberson] has failed to allege or prove facts which, if true, would support his various hypothetical claims of ineffective assistance, because he has failed to present any evidence to the Court demonstrating trial and appellate counsels' reasons for counsels' actions, and because he has failed to allege or prove how he was harmed by any unspecified deficiency in counsel's performance, his tenth ground for relief is wholly without merit.

17 SHCR 2758-60.  Once again, the Texas Court of Criminal Appeals adopted all of the findings by the trial court.

In the present petition, Roberson addressed the findings by asserting that it was not possible for counsel to brief the litany of waiver and procedural default findings and conclusions found by the trial court due to the AEDPA's statute of limitations.  Pet. 184.  He once again asserted that he intended to address the findings in a supplemental brief; however, neither his supplemental petition nor his response to the answer specifically addressed the state court findings.  Roberson has made no real attempt to demonstrate cause for the default and actual prejudice, or demonstrate that the failure to consider the claim would result in a fundamental miscarriage of justice; thus, the claim should be dismissed as procedurally barred.  Furthermore, to the extent that the state courts alternatively decided

the claims on the merits, Roberson failed to show, as required by 28 U.S.C. § 2254(d), that the State

court findings resulted in a decision that was contrary to, or involved an unreasonable application of,

clearly established federal law as determined by the Supreme Court of the United States, or resulted

in a decision that was based on an unreasonable determination of the facts in light of the evidence

presented in the State court proceedings.  Finally, he failed to overcome the doubly deferential standard

that must be accorded to trial counsel's representation in light of the fact that the state court issued a

decision on the merits regarding these ineffective assistance of counsel claims.  Relief should be denied

on ground number ten.

**Ground Number 11:  The trial court violated *United States v. Cronic*[6], and *Wiggins*,[7] by refusing to fund adequately the defense in violation of a standing order, requirement of Texas law, and the Sixth and Fourteenth Amendments to the United States Constitution.**

Roberson skipped claim number eleven.  After finishing his discussion regarding claim number

ten, he immediately started a discussion on claim number twelve.  He presented the ground for relief

to the state courts, but he chose to forego presenting it to this Court; thus, the issue is deemed

abandoned for purposes of federal habeas review.

**Ground Number 12:  Under a *Ring*[8] and *Apprendi* [9] analysis, Tex. Code Crim. Pro. art, 37.071 § 2(b)(1) operates as a functional equivalent of an element of a greater offense. Accordingly, jury determination of a defendant's "future dangerousness" in art. 37.071 § 2(b)(1), which if established is an aggravating circumstance or element the effect of which causes a defendant's execution, must be proven beyond a reasonable doubt, rather than by the current statutory requirement of a "probability" of future dangerousness beyond a reasonable doubt, which is a much lower standard.  Accordingly, Tex. Code**

---

[6]466 U.S. 648 (1984).

[7]*Wiggins v. Smith*, 539 U.S. 510 (2003).

[8]*Ring v. Arizona*, 536 U.S. 584 (2002).

[9]*Apprendi v. New Jersey*, 530 U.S. 466 (2000).

**Crim. Pro. art. 37.071 § 2(b)(1) is unconstitutional.  As such, Roberson must not be executed.**

Article 37.071 § 2(b)(1) of the Texas Code of Criminal Procedure provides that the following special issue is to be submitted to the jury at the conclusion of the sentencing phase: "whether there is a *probability* that the defendant would commit criminal acts of violence that would constitute a continuing threat to society."   The statute provides that the jury may not answer "yes" unless it unanimously agrees that the prosecution proved the issue beyond a reasonable doubt.  Tex. Code Crim. Pro. art. 37.071 § 2(c), (d)(2).  Roberson argues that Article 37.071 § 2(b)(1) operates as the functional equivalent of an element of a greater offense.  He explained that if a jury decides there is a mere probability beyond a reasonable doubt that a defendant will commit criminal acts that would constitute a continuing threat to society, the effect of the jury's decision (if the other elements of Article 37.071 §§ (b)-(c) are also established) is the execution of the defendant, rather than the default life sentence imposed by statute under Article 37.071.  He argued that the massive increase in punishment is the type of increase envisioned by *Apprendi*, which held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."  *Apprendi*, 530 U.S. at 490.  He argued that the future dangerousness element must be proven by the State and decided by a jury beyond a reasonable doubt, rather than by a "probability" of future dangerousness beyond a reasonable doubt.  He thus argued that the statute as it presently exists is unconstitutional and was likewise unconstitutional when it was applied in Roberson's case.

On habeas review, the state trial court found that the claim was procedurally barred because it was not raised at trial or on direct appeal.  17 SHCR 2763.  In the alternative, the court found that

the claim lacks merit.  *Id.* at 2763-64.  The findings were adopted by the Texas Court of Criminal Appeals.

In the present petition, Roberson addressed the findings by asserting that it was not possible for counsel to brief the litany of waiver and procedural default findings and conclusions found by the trial court due to the AEDPA's statute of limitations.  Pet. 190.  He asserted that he intended to address the findings in a supplemental brief; however, neither his supplemental petition nor his response to the answer specifically addressed the state court findings.  Roberson has made no real attempt to demonstrate cause for the default and actual prejudice, or demonstrate that the failure to consider the claim would result in a fundamental miscarriage of justice; thus, claim number twelve should be dismissed as procedurally barred.  Furthermore, to the extent that the state courts alternatively decided the claims on the merits, Roberson failed to show, as required by 28 U.S.C. § 2254(d), that the State court findings resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States, or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

In addition, Roberson is not entitled to relief because this type of claim was addressed and rejected by the Fifth Circuit in *Rowell v. Dretke*, 398 F.3d 370, 379 (5th Cir.), *cert, denied*, 546 U.S. 848 (2005).  The Court held:

> Texas's use of special issue no. 1 in the punishment phase of Rowell's capital case, which required the jury to answer "yes" only if the State had proven "beyond a reasonable doubt that there is a probability that [Rowell] would commit criminal acts of violence that would constitute a continuing threat to society," does not violate *Blakely*, *Apprendi*, or *Ring*. Accepting Rowell's argument that special issue no. 1 is unconstitutional because the term

"probability" swallows the reasonable doubt standard under an extension of *Apprendi* and *Ring* by *Blakely* would be a violation of *Teague*.[10]

*Id.* at 379.  Most recently, the Fifth Circuit reiterated that the *Apprendi* and *Ring* arguments have repeatedly been rejected, and, moreover, they are barred by the non-retroactivity rule of *Teague*.  *White v. Thaler*, 522 F. App'x 226, 234 (5th Cir. 2013), *cert. denied*, 134 S. Ct. 907 (2014).  Furthermore, this Court previously rejected an identical argument presented by Roberson's current counsel in *Simpson v. Quarterman*, Civil Action No. 1:04cv485,  2007 WL 1008193, at *19 (E.D. Tex. March 29, 2007).  The present petition was filed after *Rowell* and *Simpson* were decided.  Counsel knowingly included a claim that lacks merit.  He improvidently included the claim in the present petition.  Relief should be denied on claim number twelve.

> **Claim Number 13:  Roberson's Fourteenth Amendment Due Process rights as interpreted in *Apprendi* were violated because the statute under which Roberson was sentenced to death implicitly put the burden of proving the mitigation special issue on Roberson rather than requiring a jury finding against Roberson on that issue under the beyond a reasonable doubt standard and because the charging instrument did not give Roberson notice of the facts that the State intended to prove in order to establish Roberson's statutory qualification for the death penalty.**

In claim number thirteen, Roberson complains that the statute under which he was convicted implicitly placed the burden of proving the mitigation special issue on him.  He argued that *Apprendi* necessitates a finding that the Texas death penalty scheme is unconstitutional because it does not place the burden of proof on the State that would require the jury to find beyond a reasonable doubt that there are no mitigating circumstances sufficient to warrant the imposition of a life sentence rather than death.

---

[10] *Teague v. Lane*, 489 U.S. 288, 316 (1989) ("We therefore hold that, implicit in the retroactivity approach we adopt today, is the principle that habeas corpus cannot be used as a vehicle to create new constitutional rules of criminal procedure unless those rules would be applied retroactively to *all* defendants on collateral review through one of the exceptions we have articulated.").

On habeas review, the state trial court found that the claim was procedurally barred because it was not raised at trial or on direct appeal.  17 SHCR 2765.  In the alternative, the court found that the claim lacks merit.  *Id.*  The findings were adopted by the Texas Court of Criminal Appeals.

In the present petition, Roberson addressed the findings by asserting that it was not possible for counsel to brief the litany of waiver and procedural default findings and conclusions found by the trial court due to the AEDPA's statute of limitations.  Pet. 198.  He asserted that he intended to address the findings in a supplemental brief; however, neither his supplemental petition nor his response to the answer specifically addressed the state court findings.  Roberson has made no real attempt to demonstrate cause for the default and actual prejudice, or demonstrate that the failure to consider the claim would result in a fundamental miscarriage of justice; thus, claim number twelve should be dismissed as procedurally barred.  Furthermore, to the extent that the state courts alternatively decided the claims on the merits, Roberson failed to show, as required by 28 U.S.C. § 2254(d), that the State court findings resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States, or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

Furthermore, the claim should be rejected because it lacks merit.  This ground for relief, like the previous one, was rejected by the Fifth Circuit in *Rowell*, 398 F.3d at 378 ("No Supreme Court or Circuit precedent constitutionally requires that Texas's mitigation special issue be assigned a burden of proof.").  The Fifth Circuit has repeatedly held that claims regarding the failure to assign either party the burden of proof on the mitigation special issue are meritless.  *Blue*, 665 F.3d at 668; *Druery v. Thaler*, 647 F.3d 535, 546 (5th Cir. 2011), *cert. denied*, 132 S. Ct. 1550 (2012); *Adams v. Thaler*, 421 F. App'x 322, 334 (5th Cir.), *cert. denied*, 132 S. Ct. 399 (2011); *Kerr v. Thaler*, 384 F. App'x 400,

403 (5th Cir. 2010), *cert. denied*, 131 S. Ct. 907 (2011).  *See also Avila v. Quarterman*, 560 F.3d 299,

315 (5th Cir. 2009) (The Fifth Circuit observed that it was bound by its precedent on this issue).  The

thirteenth ground for relief lacks merit.

> **Claim Number 14:  Roberson's Fourteenth Amendment due process right to be free from a wholly arbitrary deprivation of liberty and Eighth Amendment right to be free from the arbitrary and capricious infliction of the death penalty were violated because the evidence adduced at trial was legally and factually insufficient to support the jury's answer to the future dangerousness special issue.**

In his fourteenth ground for relief, Roberson contends that the evidence adduced at trial was

legally and factually insufficient to support the jury's answer on the future dangerousness special issue.

He correctly observed that the proper standard for determining whether the evidence satisfies the

burden of proving the issue beyond a reasonable doubt is the test established in *Jackson v. Virginia*,

443 U.S. 307, 323 (1979).  *See Woods v. Cockrell*, 307 F.3d 353, 357-58 (5th Cir. 2002).  As such,

the Court should review the evidence in the light most favorable to the verdict and determine whether

a rational jury could have answered the future dangerousness issue in the affirmative.  Roberson argues

that no reasonable juror could have answered the issue in the affirmative.  In support of the argument,

he noted that the testimony of the three psychologists who collectively testified that he would not pose

a threat in a controlled prison environment.  He stressed that even Dr. Allen, the State's psychologist,

stated that he would be a minimal risk in prison.

On direct appeal, the Texas Court of Criminal Appeals described at length the evidence

presented during the penalty phase.  *Roberson*, 2002 WL 34217382, at *9-10.  The State initially

submitted evidence of Roberson's prior convictions.  The State then called Della Gray, Roberson's ex-

wife, who provided examples of his physically abusive behavior, and Erica Marie Gomez, who

witnessed a physical altercation between Roberson and a teenage boy.  *Id.* at 9.  The State rested its

punishment case-in-chief after presenting this evidence.  Roberson, in turn, called two officers, who testified that Roberson had no history of violence or disciplinary problems while confined in the jail, along with Dr. John Krusz, M.D., and Dr. Kelly R. Goodness, Ph.D.  *Id.* at 10.  In rebuttal, the State called Dr. Thomas Allen, Ph.D., and Dr. David Self, M.D.  *Id.*  The Court of Criminal Appeals proceeded to reject the insufficient evidence claim as follows:

> The appellant contends that the evidence above was insufficient to support the jury's finding on future dangerousness because he had no prior convictions of violent crimes and because the State over-emphasized the nature and importance of the scuffle between the appellant and his neighbor. We note that the crime itself—killing a two-year-old child by beating or shaking her—was particularly violent. We also note that the appellant had a lengthy criminal record, even in the absence of a violent-crime conviction. Both sides presented expert testimony as to the appellant's future dangerousness, but we do not find the appellant's expert testimony to be significantly more compelling than that which was presented by the State. In short, viewed in the light most favorable to the verdict, we find a rational jury could have answered "yes" to Special Issue No. 1, the issue of future dangerousness. The evidence was therefore sufficient to support the jury's answer beyond a reasonable doubt.

*Id.* at 11.

"When a habeas petitioner asserts that the evidence presented to the state court was insufficient to find future dangerousness, the limited question before a federal habeas court is whether the state courts' decision to reject that claim was an objectively unreasonable application of the clearly established law set out in *Jackson*." *White v. Dretke*, 126 F. App'x 173, 177 (5th Cir.), *cert. denied*, 546 U.S. 940 (2005).  "Under *Jackson*, a conviction is constitutional if, 'after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'"  *Id.* (citing *Jackson*, 443 U.S. at 319).  Under Texas' substantive law, "the circumstances of the charged offense may alone be sufficient to support an affirmative finding of future dangerousness."  *Id.*

After hearing all of the evidence, the jury in the present case unanimously found beyond a reasonable doubt that there was a probability that Roberson would commit criminal acts of violence

that would constitute a continuing threat to society.  The evidence presented to the jury, particularly the evidence of the crime itself, was sufficient for a rational jury to answer in the affirmative.  The Texas Court of Criminal Appeals properly employed the *Jackson* standard in denying relief.  The decision to reject the claim was not an objectively unreasonable application of the clearly established law set out in *Jackson*, and it should not be disturbed.  Relief on this claim should be denied.

Roberson raised the issue again in the state habeas proceedings.  The state trial court observed that the proper standard of review of sufficiency of the evidence to prove future dangerousness was set out by the Texas Court of Criminal Appeals in *Mathis v. State*, 67 S.W.3d 918 (Tex. Crim. App. 2002).  17 SHCR 2770.  In that case, the Texas Court of Criminal Appeals cited and applied the *Jackson* standards.  *Mathis*, 67 S.W.3d at 921-22.  The trial court proceeded to issue the following findings regarding the merits of Roberson's insufficient evidence claim:

120.    The Court finds that the facts of the instant case, as in *Mathis*, are sufficient alone to justify the affirmative answer.  The Court finds that the instant offense was pointless, vicious, and sadistic.

121.    The Court finds that [Roberson] shook and beat his daughter until she was senseless, then delayed seeking medical help for at least five hours, after which he had to be pushed by his girlfriend to seek help.

122.    The Court finds that the evidence at trial proves that [Roberson] failed to even provide the care for the child one would expect from a stranger or mere acquaintance, much less from a parent.

123.    The Court finds that the evidence at trial proved that [Roberson] demonstrated a lack of remorse or real concern.

124.    The Court finds that the punishment evidence presented by both the State and the defense proved that [Roberson] is an anti-social personality with a history of criminal behavior and demonstrated inability to conform to probation and parole conditions.

125.    The Court finds that the evidence at trial showed that [Roberson] has an inability to control his impulses, that the instant offense was consistent with prior aggressive behavior toward the helpless victim, that he would be a high risk to commit future violence in the free world, and that he lacks control over his rage reactions.

46

126.    The Court finds that [Roberson's] claim is without merit.

17 SHCR 2770-71.  The Texas Court of Criminal Appeals subsequently denied relief based on the trial

court's findings and conclusions and its own review.

In the present petition, Roberson addressed the findings by asserting that it was not possible

for counsel to brief the litany of waiver and procedural default findings and conclusions found by the

trial court due to the AEDPA's statute of limitations.  Pet. 203.  He asserted that he intended to address

the findings in a supplemental brief; however, neither his supplemental petition nor his response to the

answer specifically addressed the state court findings.  Roberson has made no real attempt to rebut the

state court findings.  He failed to show, as required by 28 U.S.C. § 2254(d), that the State court

findings resulted in a decision that was contrary to, or involved an unreasonable application of, clearly

established federal law as determined by the Supreme Court of the United States, or resulted in a

decision that was based on an unreasonable determination of the facts in light of the evidence presented

in the State court proceedings.  Roberson has not shown that he is entitled to federal habeas corpus

relief with respect to claim number fourteen; thus, relief should be denied.

**Claim Number 15:  Roberson's Fourteenth Amendment due process right to be free from a wholly arbitrary deprivation of liberty and Eighth Amendment right to be free from the arbitrary and capricious infliction of the death penalty were violated because the evidence adduced at trial was legally and factually insufficient to support the conviction for capital murder.**

**Claim Number 31:  The decision that the evidence was sufficient to support a conviction for capital murder was an unreasonable application of clearly established constitutional law.  *Jackson v. Virginia*, 443 U.S. 307 (1979), overruling *Thompson v. City of Louisville*, 362 U.S. 199 (1960) (citing *In re Winship*, 397 U.S. 358 (1970)).**

Claims fifteen and thirty-one involve additional allegations of insufficient evidence.  In his

fifteenth ground for relief, Roberson contends that the evidence adduced at trial was legally and

factually insufficient to support a conviction for capital murder.  He reiterated that this was nothing

47

more than a "Shaking Baby Case." He asserted that, at worst, he lost control and shook and struck his

child. He argued that the evidence was insufficient to show that he intended to kill her. He asserted

that even Dr. Squires conceded that it was likely that he did not intend to kill her. In his thirty-first

ground for relief, Roberson asserted that the evidence was insufficient to show his intent:

> Nobody saw it. Nobody heard it. Nobody admitted it. The crime scene and forensic evidence
> does not tell us who did it or what they were thinking.

Pet. 253. He argued that the evidence was insufficient to prove that he knowingly or intentionally

committed the murder of a child under the age of six.

The Texas Court of Criminal Appeals fully discussed his insufficient evidence claim under the

*Jackson* standard as follows:

> In his sixth point of error, the appellant contends that the evidence at trial was legally
> insufficient to support the verdict. We evaluate legal sufficiency claims under the standard first
> articulated by the Supreme Court in *Jackson v. Virginia*. That is, we view the evidence in the
> light most favorable to the verdict to determine whether any rational trier of fact could have
> found that the State proved the elements of the charged offense beyond a reasonable doubt.
>
> The substance of the appellant's argument on this point concerns the element of intent.
> He asserts that the evidence presented by the State as to his intent was insufficient to prove that
> he knowingly or intentionally committed the murder of a child under the age of six, or that
> such evidence was just as consistent with a finding that the appellant committed a
> lesser-included offense, and therefore could not be the basis of finding him guilty of capital
> murder beyond a reasonable doubt.

*Roberson*, 2002 WL 34217382, at *1. The Texas Court of Criminal Appeals went on to discuss the

testimony presented during the guilt-innocence phase of the trial, which was previously presented on

pages two through five of this Report and Recommendation. After discussing the evidence, the Court

specifically addressed the basis of the claim that the evidence was legally insufficient to support the

conviction:

> The appellant's argument for legal insufficiency focuses almost entirely on the issue of
> intent. He contends that the evidence failed to prove beyond a reasonable doubt that he acted
> intentionally or knowingly:

Given the fact that the objective evidence introduced during the trial was consistent with the scenario of an act of rage, loss of control or emotional outburst, it is not sufficient to provide the requisite conclusion of the specific intent or knowledge to take the life of the child.

The appellant specifically focuses on the testimony of Janet Squires, M.D., a board-certified pediatrician who testified for the State. Dr. Squires examined the victim shortly before she died from massive head trauma and concluded that she had been the victim of child abuse. She was asked about her conclusions on direct examination:

[The State]: All right. And so do you feel like this child was the victim of child abuse?

[Dr. Squires]: Yes.

Q: Child abuse, does that mean accidental?

A: It means non-accidental.

Q: It means intentional?

A: I don't know intentional. It means inflicted. Our words are non-accidental inflicted trauma, abusive trauma.

During cross-examination of Dr. Squires, the following exchange occurred:

[Appellant's Counsel]: You also said that intentional is not a term that y'all like to use; is that correct?

[Dr. Squires]: That's correct.

Q: Is that because that really doesn't have a medical aspect?

A: I would even agree with that, yes.

Q: Okay.

A: It was a term that in our medical—we used to use words like intentional and non-intentional injury. Those were common to be used and about 10 years ago it sort of became obvious that we don't always know intent. So from a medical standpoint we use much more inflicted versus non-inflicted, accidental versus non-accidental.

The appellant seizes upon these portions of Dr. Squires's testimony as negating any possibility that his intent could be inferred by the nature of Nikki's injuries, or at least negating his intent to commit capital murder. However, we find Dr. Squires's testimony as quoted here unremarkable, in the sense that, rather than negating the appellant's intent, she appeared to be

merely refraining from testifying to an ultimate issue of the case—the appellant's guilt. As a doctor, it is entirely prudent for her to only testify as to what she could conclude medically from her examination of Nikki.

Moreover, proof of a culpable mental state almost necessarily relies on circumstantial evidence. Therefore, it is entirely appropriate for a fact finder to infer intent, regardless of whether any witness can or cannot testify to direct knowledge of someone's intent. We have consistently held that a rational fact finder could infer knowledge and intent from conduct of, remarks by, and circumstances surrounding the acts engaged in by, the accused.

Therefore, regardless of Dr. Squires's opinion of the appellant's intent, the jury could have reasonably inferred the appellant's intent from the severity of Nikki's injuries as well as from the testimony of three other doctors who examined her and concluded that such injuries must have resulted from intentional blows to her head rather than from an accidental fall off the bed, as the appellant claimed. It was undisputed that the appellant was alone with Nikki's when she suffered the injuries. The jury also heard testimony that the appellant had a bad temper and that he would be set off by Nikki's crying, which she seemed to always do in his presence. When viewed in a light most favorable to the verdict, the evidence would allow a rational jury to find beyond a reasonable doubt that the appellant intentionally or knowingly caused Nikki's death. Point of error six is overruled.

*Roberson*, 2002 WL 34217382, at *4-5. The Texas Court of Criminal Appeals' analysis appropriately employed the test set forth in *Jackson*. The Court observed that this case is a circumstantial evidence case, and the evidence was sufficient for a rational jury to find beyond a reasonable doubt that Roberson intentionally or knowingly caused the death of his child. Roberson has not shown that the analysis was unreasonable. As the Fifth Circuit concluded in *Woods*, since the decision followed *Jackson* and was not unreasonable, this Court "will not disturb it." *Woods*, 307 F.3d at 358.

It is noted that Roberson distinguished between legal and factual insufficiency. This distinction was once significant in Texas criminal law. The Texas Court of Criminal Appeals, however, has abandoned the distinction. *Brooks v. State*, 323 S.W.3d 893, 894-95 (Tex. Crim. App. 2010) (finding no meaningful distinction between the legal and factual sufficiency standards and no justification for retaining both standards). In *Woods*, the Fifth Circuit observed that Texas employed varying standards regarding the sufficiency of the evidence but stressed that federal courts' review of

the sufficiency of the evidence employs only the *Jackson* standard.  *Woods*, 307 F.3d at 358.  The evidence in this case was sufficient using the *Jackson* standard.

Roberson raised the insufficient evidence claims again in his state application for a writ of habeas corpus.  In response, the state trial court found that the claims were not cognizable on a writ of habeas corpus.  17  SHCR 2771.  The Director correctly observed that the finding was consistent with state and federal law.  In support of the claim, he cited *Ex parte McLain*, 869 S.W.2d 349, 350 (Tex. Crim. App. 1994) ("[H]abeas corpus is available only to review jurisdictional defects, or denials of fundamental or constitutional rights.  Among those claims which are not cognizable by way of post conviction collateral attack is a challenge to the sufficiency of the evidence.");  *Coleman*, 456 F.3d at 546;  *Renz*, 28 F.3d at 432;  *Ex parte McWilliams*, 634 S.W.2d 815 (Tex. Crim. App. 1980);  *Ex parte Ash*, 514 S.W.2d 762 (Tex. Crim. App. 1974).

The state trial court alternatively found that the insufficient evidence claims lack merit.  The court made the following findings with respect to claim number fifteen:

131.   The Court finds that [Roberson] was admittedly the only adult in the house with Nikki on the night she was fatally injured and that every medical expert testified that her injuries would have altered her consciousness immediately, that she would have shown drastic and obvious signs of distress, and that she would have been unable to talk and struggling for breath.

132.   The Court further finds that the medical examiner and other doctors testified that Nikki's injuries could not have resulted from a blow or two, but resulted from an extreme and violent attack with a mixture of violent shaking and impacts between Nikki's head and some other object or objects.  The experts testified that no minimally competent adult could inflict those injuries without knowing that they would cause extreme injury, and that the actions of the person inflicting the injury were "non-accidental" and intentionally abusive.  The Court finds that all of this testimony was credible and worthy of belief.

133.   The Court finds that [Roberson] has failed to demonstrate, considering all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt, that the jury's verdict was not supported by the evidence.

51

134.   The Court finds that [Roberson] has similarly failed to demonstrate that the evidence, considered in a neutral light with deference to the fact-finders' role in determining the credibility of the witnesses, is factually insufficient to justify the jury's verdict.

135.   The Court finds that [Roberson's] sufficiency claim is without merit.

17 SHCR 2772.  The state trial court likewise found that claim number thirty-one lacks merit.  17 SHCR 2782.  The type of analysis employed by the state trial court was consistent with *Jackson*.  The Texas Court of Criminal Appeals subsequently adopted the findings and conclusions of the state trial court.  In the present petition, Roberson once again made no real effort to show that the findings were unreasonable.  He failed to show, as required by 28 U.S.C. § 2254(d), that the State court findings resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States, or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

It is noted that the fifteenth ground for relief is problematic because Roberson significantly changed his discussion in the present petition compared to his state application.  He presented only one paragraph in the state application, which reads as follows:

> In this issue, Mr. Roberson challenges his conviction on the basis that he is factually and legally innocent of capital murder.  He incorporates all arguments above and the attachments to this application.  As mentioned, this is a shaking baby case.  Roberson at worst lost control and shook and struck his child.  There was never, however, sufficient evidence that he intended to kill her.  Even Dr. Squires conceded that this was likely.

1 SHCR 231.  In the present petition, he started out with this same paragraph, but he then changed the focus of the claim to a proportionality argument.  He argued that the death penalty should be reserved for the worst of the worst, and the death penalty for him would violate the Eighth and Fourteenth Amendments because it is disproportionate.  *See Atkins v. Virginia*, 536 U.S. 304 (2002); *Roper v. Simmons*, 543 U.S. 551 (2005); *Kennedy v. Louisiana*, 554 U.S. 407 (2008); *Graham v. Florida*, 560

52

U.S. 48 (2010).  He presented seven additional pages in the present petition beyond the single paragraph that he submitted to the state courts.

To the extent that Roberson embellished on the ground for relief to include a proportionality argument, the ground for relief is unexhausted.  A federal court may not grant habeas relief to a state prisoner unless "the applicant has exhausted the remedies available in the courts of the State."  28 U.S.C. § 2254(b)(1)(A).  In order to exhaust properly, he must "fairly present" all of his claims to the state court.  *Picard v. Connor*, 404 U.S. 270 (1981).  This means that the petitioner must have informed the state court system of the same facts and legal theories upon which he bases his assertions in his federal habeas petition.  *Id.* at 276-77; *Dispensa v. Lynaugh*, 847 F.2d 211, 217-18 (5th Cir. 1988).  Nonetheless, "[a]n application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."  28 U.S.C. § 2254(b)(2).  *See Miller v. Dretke*, 431 F.3d 241, 245 (5th Cir. 2005) ("As noted, under § 2254(b)(2) we can *deny* (but *not* grant) [petitioner's] non-exhausted claim."), *cert. denied*, 549 U.S. 838 (2006);  *Mercadel v. Cain*, 179 F.3d 271, 276-78 (5th Cir. 1999).

Roberson argues that the death penalty is disproportionate for a "Shaking Baby Case."  His claim lacks merit.  It is initially noted that the Constitution does not require proportionality review.  *Cobb v. Thaler*, 682 F.3d 364, 381 (5th Cir. 2012), *cert. denied*, 133 S. Ct. 933 (2013).  On the other hand, the Fifth Circuit has observed that a "death sentence violates the Eighth Amendment if it is not proportional to the crime for which the defendant was convicted."  *Foster v. Quarterman*, 466 F.3d 359, 371 (5th Cir. 2006) (citing *Tison v. Arizona*, 481 U.S. 137, 148 (1987) (noting that a death sentence for armed robbery violates the Eighth Amendment because it is excessive)).  In the present case, however, a death sentence is proportional to the offense of murder.

The cases cited by Roberson do not support his argument that a death sentence for shaking his daughter to death is disproportionate to the offense. *Atkins* concerns executing mentally retarded criminals. *Atkins*, 536 U.S. at 321. Mental retardation is not an issue in this case. *Roper* concerns executing individuals who were under eighteen at the time they committed their capital offense. *Roper*, 543 U.S. at 578. Roberson was not under eighteen years of age when he killed his daughter. *Kennedy* concerns giving the death penalty to a criminal for the rape of a child where the crime did not result, and was not intended to result, in the death of the victim. *Kennedy*, 554 U.S. at 421. In the present case, Roberson's actions resulted in the death of his child. *Graham* is not a capital case at all; instead, it concerns giving juveniles life imprisonment without the possibility of parole. *Graham*, 560 U.S. at 79. In comparison, the present case concerns the violent and heinous death of a young child by her adult father. Roberson's claim that the punishment does not fit the crime is disingenuous. The disproportionality argument is devoid of merit.

Finally, the Director correctly argued that the disproportionality argument is foreclosed by the anti-retroactivity doctrine of *Teague*, 489 U.S. at 316. *See Garza v. Thaler*, 909 F. Supp.2d 578, 671 (W.D. Tex. 2012) (*Teague* forecloses claims that the Constitution mandates proportionality review), *c.o.a. denied*, 738 F.3d 669 (2013).

> **Claim Number 16: Roberson's Fourteenth Amendment right to due process and Eighth Amendment right to be free from the arbitrary and capricious infliction of the death penalty were violated because the statute under which Roberson was sentenced to die allows the jury too much discretion to determine who should live and who should die and because it lacks the minimal standards and guidance necessary for the jury to avoid the arbitrary and capricious imposition of the death penalty.**

Roberson next argues that the statute under which he was sentenced to die allows the jury too much discretion in determining who should live and die because it lacks the minimal standards and guidance necessary for the jury to avoid the arbitrary and capricious imposition of the death penalty.

He argues that the evolution of the death penalty has come full circle because, under the present Texas statute as applied to him, the jury has once again been given unfettered discretion that both invites and permits arbitrary application of the ultimate penalty.  *Cf. Gregg v. Georgia*, 428 U.S. 153, 189 (1976) (plurality op.) ("*Furman*[11] mandates that where discretion is afforded a sentencing body on  a matter so grave as the determination of whether a human life should be taken or spared, that discretion must be suitably directed and limited so as to minimize the risk of wholly arbitrary and capricious action.").

Roberson places special emphasis on the dissenting opinion in the denial of certiorari by Justice Blackmun in *Callins v. Collins*, 510 U.S. 1141 (1994).  Roberson stressed that Justice Blackmun asserted that the death penalty must be fairly administered with reasonable consistency in order to comply with the mandates of Eighth Amendment.  *Id.* at 1144.

The Director argued that the state courts reasonably determined that the claim was procedurally barred by Roberson's failure to contemporaneously object.  In addition, the claim is barred because Roberson could have but did not raise it on direct appeal.  The Director observed that Roberson failed to demonstrate cause and prejudice for the default.  He thus argued that the Court should not reach the merits of the claim.  Nonetheless, with respect to the merits of the claim, he observed that Justice Blackmun's dissenting opinion has never been adopted by the Supreme Court.  He finally observed that the state habeas court alternatively dismissed the claim as meritless, and he argued that the claim is, in fact, meritless.

The state trial court issued the following findings with respect to claim number sixteen:

136.    The Court finds that in his sixteenth ground for relief, applicant contends that the statutory mitigation issue given to the jury at punishment renders the jury's discretion unconstitutionally overbroad.

---

[11]*Furman v. Georgia*, 408 U.S. 238 (1972).

137.    The Court finds and concludes as a matter of law that this complaint is procedurally barred, because applicant raised the complaint on direct appeal in his issues numbers 9 and 10, and the Court of Criminal Appeals will address the complaint on direct appeal.

138.    Should some Court determine that the claim was not fully raised on direct appeal, the Court further finds that applicant is procedurally barred from raising this claim because he should have (but did not) raise the claim on direct appeal, and the Court finds that applicant has asserted no valid reason why he could not have raised on direct appeal the claim he asserts in this ground, particularly since the present claim is based upon legal argument and the existing trial record. *Ex parte Gardner*, 959 S.W.2d 189, 199 (Tex. Crim. App. 1996) (on reh'g), (citing *Ex parte Goodman*, 816 S.W.2d 383, 385 (Tex. Crim. App. 1991)); *see Ex parte Barber*, 879 S.W.2d 889, 891 n.1 (Tex. Crim. App. 1994).

139.    In addition, the Court finds and concludes as a matter of law that applicant is procedurally barred from asserting this claim now because he failed to make supporting objections at trial. *Curry v. State*, 910 S.W.2d 490, 496 n.2 (Tex. Crim. App. 1995).

140.    In the alternative, should some Court determine that the claim is properly before this Court on the writ of habeas corpus, the Court finds on the merits of this ground that applicant has failed to prove that Tex. Code Crim. Proc. art. 37.071 is unconstitutional as he has alleged.

141.    The Court concludes as a matter of law that the Court of Criminal Appeals and U. S. Supreme Court have decided identical claims adversely to applicant's position. *Turner v. State*, 87 S.W.3d 111, 118 (Tex. Crim. App. 2002), *cert. denied*, 123 S. Ct. 1760 (2003).

142.    The Court finds and concludes as a matter of law that applicant has failed to demonstrate by a preponderance of evidence that this claim has any merit.

17 SHCR 2773-74. The Texas Court of Criminal Appeals subsequently denied relief based on the trial court's findings and conclusions and its own review.

In the present petition, Roberson addressed the findings by asserting that it was not possible for counsel to brief the litany of waiver and procedural default findings and conclusions found by the trial court due to the AEDPA's statute of limitations. Pet. 215. He asserted that he intended to address the findings in a supplemental brief; however, neither his supplemental petition nor his response to the

56

answer specifically addressed the state court findings.  Roberson has made no real attempt to demonstrate cause for the default and actual prejudice, or demonstrate that the failure to consider the claim would result in a fundamental miscarriage of justice; thus, claim number sixteen is procedurally barred.  Furthermore, to the extent that the state courts alternatively decided the claims on the merits, Roberson failed to show, as required by 28 U.S.C. § 2254(d), that the State court findings resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States, or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

The Court further notes that the ground for relief lacks merit in light of clearly established case law.  The Supreme Court distinguished between two aspects of the capital sentencing decision, more specifically, the eligibility decision and the selection decision, in *Tuilaepa v. California*, 512 U.S. 967, 971-72 (1994).  The Supreme Court has repeatedly upheld the constitutionality of Texas' procedures for determining the existence of aggravating circumstances to make eligibility decisions.  *See Jurek v. Texas*, 428 U.S. 262,  276 (1976); *see also Sonnier v. Quarterman*, 476 F.3d 349, 366-67 (5th Cir.), *cert. denied*, 552 U.S. 948 (2007).  In making the selection decision, the jury must be allowed to make "an *individualized* determination" by considering "relevant mitigating evidence of the character and record of the defendant and the circumstances of the crime." *Tuilaepa*, 512 U.S. at 972.  A jury "may be given 'unbridled discretion in determining whether the death penalty should be imposed after it has found that the defendant is a member of the class made eligible for that penalty.'" *Id.* at 979-80 (quoting *Zant v. Stephens*, 462 U.S. 862, 875 (1983)).  In exercising its discretion, the jury "need not be instructed how to weigh any particular fact in the capital sentencing decision." *Id.* at 979.  During the years immediately following the issuance of the decision in *Tuilaepa*, the Fifth Circuit regularly

rejected complaints that juries in Texas have unbridled discretion in determining who should live or die. *See, e.g., Turner*, 481 F.3d at 299; *Woods v. Cockrell*, 307 F.3d at 359; *Moore v. Johnson*, 225 F.3d 495, 506-07 (5th Cir. 2000) ("Texas followed Supreme Court instructions to the letter"), *cert. denied*, 532 U.S. 949 (2001).  In addition to the foregoing, the Fifth Circuit repeatedly rejected such claims in unpublished decisions.  *See, e.g., Sprouse v. Stephens*, No. 13-70028, 2014 WL 1356973, at *8 (5th Cir. Apr. 7, 2014); *Adams*, 421 F. App'x at 337; *Valle v. Quarterman*, No. 08-70005, 2008 WL 4656945 (5th Cir. 2008).  Finally, prior to the filing of the present petition, this Court rejected an identical claim raised by Roberson's current counsel in *Simpson,* 2007 WL 1008193, at *30.  Once again, the present claim was improvidently included in the present petition.

Overall, claim number sixteen is procedurally barred.  To the extent that the state court issued a decision on the merits, Roberson is not entitled to relief on the claim because he has not satisfied the requirements of § 2254(d).  Considering all of the reasons provided by the state court in denying relief on claim number sixteen, Roberson is not entitled to relief because he has not shown that each reason provided by the state court was unreasonable.  *See Wetzel*, 132 S. Ct. at 1199.  Finally, the claim lacks merit in light of clearly established law as decided by the Supreme Court and Fifth Circuit.  Relief on claim number sixteen should be denied.

**Claim Number 17: Roberson's Fourteenth Amendment right to due process and Eighth Amendment rights as interpreted by *Penry v. Johnson*[12] were violated because the mitigation special issue set forth in the Texas death penalty statute sends mixed signals to the jury thereby rendering any verdict reached in response to that special issue intolerably unreliable.**

Roberson next argues that the mitigation special issue set forth in the Texas death penalty statute sends "mixed signals" to the jury thereby rendering any verdict reached in response to that

_____

[12]532 U.S. 782 (2001) ("*Penry II*").

special issue intolerably unreliable.  He asserts that this Court should hold that the Texas death penalty scheme violates the Eighth Amendment under the Supreme Court's "recent" decision in *Penry II*.  He added that while the opinion in that case only repudiated a judicially-crafted mitigation instruction, the statutory mitigation special issue given in his case is similarly vulnerable to the criticism that it sends "mixed signals" to the jury.  The signals are mixed, he says, because the statutory issue is unclear about the burden of proof.  *See Lawton v. State*, 913 S.W.2d 542, 557 (Tex. Crim. App. 1995), *cert. denied*, 519 U.S. 826 (1996).

During the state habeas corpus proceedings, the trial court found that the claim is procedurally barred and that it lacks merit.  17 SHCR 2774-75.  It was specifically found that the argument "ignores" the majority opinion in *Penry II*.  *Id.* at 2775.[13]  The Texas Court of Criminal Appeals subsequently denied relief based on the trial court's findings and conclusions and its own review.

In the present petition, Roberson addressed the findings by asserting that it was not possible for counsel to brief the litany of waiver and procedural default findings and conclusions found by the trial court due to the AEDPA's statute of limitations.  Pet. 221.  He asserted that he intended to address the findings in a supplemental brief; however, neither his supplemental petition nor his response to the answer specifically addressed the state court findings.  Roberson has made no real attempt to demonstrate cause for the default and actual prejudice, or demonstrate that the failure to consider the claim would result in a fundamental miscarriage of justice; thus, the claim is procedurally barred.  Furthermore, to the extent that the state courts alternatively decided the claims on the merits, Roberson failed to show, as required by 28 U.S.C. § 2254(d), that the State court findings resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as

---

[13]The portion of *Penry II* quoted by the trial court is included in the quote by the Fifth Circuit in *Oliver* on the following page.

determined by the Supreme Court of the United States, or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

It is further noted that with respect to the merits of the claim, the Fifth Circuit rejected this precise argument in *Oliver v. Quarterman*, 254 F. App'x 381 (5th Cir. 2007).  The following explanation was provided:

> In *Penry II,* the Supreme Court struck down a judicially crafted jury instruction because it was confusing and, in effect, required the jury to answer the special issues dishonestly in order to give effect to the defendant's mitigating evidence. *Id.* at 801, 121 S.Ct. 1910. The Court rejected the instruction as sending "mixed signals" to the jury. *Id.* at 802, 121 S.Ct. 1910. The Court, however, implicitly upheld Texas's current scheme:
>
>> A clearly drafted catchall instruction on mitigating evidence also might have complied with [the Court's precedents]. Texas' current capital sentencing scheme (revised after Penry's second trial and sentencing) provides a helpful frame of reference. Texas now requires the jury to decide "[w]hether, taking into consideration all of the evidence, including the circumstances of the offense, the defendant's character and background, and the personal moral culpability of the defendant, there is a sufficient mitigating circumstance or circumstances to warrant that a sentence of life imprisonment rather than a death sentence be imposed." TEX.CODE CRIM. PROC. ANN. art. 37.071(2)(e)(1) (Vernon Supp. 2001).... At the very least, the brevity and clarity of this instruction highlight the confusing nature of the supplemental instruction actually given, and indicate that the trial court had adequate alternatives available to it as it drafted the instructions for Penry's trial.
>
> *Id.* at 803, 121 S. Ct. 1910. Far from rejecting the current scheme regarding mitigation, therefore, the Supreme Court implicitly endorsed it. *See, e.g., Coleman v. Quarterman,* 456 F.3d 537, 542 (5th Cir.2006), *cert denied,* 549 U.S. 1343, 127 S. Ct. 2030, 167 L.Ed.2d 772 (2007) (quoting *Rowell,* 398 F.3d at 378) ("[N]o Supreme Court or Circuit precedent constitutionally requires that Texas's mitigation special issue be assigned a burden of proof."). Oliver has failed to make any plausible argument that Texas's mitigation special issue does not allow the jury to consider and give effect to a defendant's mitigating evidence. Oliver also points to no other cases to support his position.

*Id.* at 386-87.  In light of the decision in *Oliver,* Roberson's argument that Texas' current scheme should be rejected as unconstitutional lacks merit.  More recently, the Fifth Circuit rejected such arguments again in *White*, 522 F. App'x at 234.  In *White*, the Court also upheld the district court's

conclusion that the claim is *Teague*-barred.  *Id.   See also Foster v. Thaler*, 369 F. App'x 598, 606 (5th

Cir.), *cert. denied*, 131 S. Ct. 822 (2010).  Roberson simply is not entitled to relief on this claim.

Finally, prior to the filing of the present petition, this Court rejected an identical claim raised by

Roberson's current counsel in *Simpson*, 2007 WL 1008193, at *30.  Counsel was clearly aware that

the claim lacked merit when he included it in the present petition.  The claim was improvidently

included in the present petition.

**Claim Number 18:  The special sentencing issue asking jurors to weigh mitigating circumstances against aggravating circumstances violates the Due Process Clause of the Fourteenth Amendment to the United States Constitution because it does not provide a means for jurors to give effect to the mitigating circumstances warranting a life sentence.**

**Claim Number 19:  The special sentencing issue asking jurors to weigh mitigating circumstances against aggravating circumstances violates the Cruel and Unusual Punishment Clause of the Eighth Amendment to the United States Constitution because it does not provide a means for jurors to give effect to the mitigating circumstances warranting a life sentence.**

**Claim Number 20:  The special sentencing issue asking jurors to weigh mitigating circumstances against aggravating circumstances violates the Due Process Clause of the Fourteenth Amendment to the United States Constitution because it shifts the burden to the defendant to prove that sufficient mitigating circumstances exist to warrant a life sentence.**

**Claim Number 21:  The special sentencing issue asking jurors to weigh mitigating circumstances against aggravating circumstances violates the Cruel and Unusual Punishment Clause of the Eighth Amendment to the United States Constitution because it shifts the burden of proof to the defendant to prove that sufficient mitigating circumstances exist to warrant a life sentence.**

**Claim Number 22:  The special sentencing issue asking jurors to weigh mitigating circumstances against aggravating circumstances violates the Due Process Clause of the Fourteenth Amendment to the United States Constitution because it does not require jurors to consider mitigating circumstances alone in determining whether a life sentence is warranted.**

**Claim Number 23:  The special sentencing issue asking jurors to weigh mitigating circumstances against aggravating circumstances violates the Cruel and Unusual Punishment Clause of the Eighth Amendment to the United States Constitution because**

**it does not require jurors to consider mitigating circumstances alone in determining whether a life sentence is warranted.**

Roberson raises six related claims concerning the constitutionality of the special sentencing issue regarding mitigation, as provided by Tex. Code Crim. Proc. Ann. art. 37.071(e).  He contends that the mitigation special sentencing issue requires the jurors to weigh mitigating circumstances against aggravating circumstances.  He argues that the special sentencing issue violates the Due Process Clause and the Cruel and Unusual Punishment Clause for the following reasons: (1)  it does not provide a means for jurors to give effect to the mitigating circumstances warranting a life sentence; (2) it shifts the burden of proof to the defendant to prove that sufficient mitigating circumstances exist to warrant a life sentence; (3) it does not require jurors to consider mitigating circumstances alone in determining whether a life sentence is warranted.

During the state habeas proceedings, the trial court found that the claims concerning the mitigation special sentencing issue were procedurally barred because Roberson failed to contemporaneously object at trial or to raise them during direct appeal.  17 SHCR 2765.  In the alternative, the state trial court reviewed the merits of Roberson's claims and found that they lacked merit.  17 SHCR 2765-69.  The Texas Court of Criminal Appeals subsequently denied relief based on the trial court's findings and conclusions and its own review.

In the present petition, Roberson addressed the findings by asserting once again that it was not possible for counsel to brief the litany of waiver and procedural default findings and conclusions found by the trial court due to the AEDPA's statute of limitations.  Pet. 229.  He asserted that he intended to address the findings in a supplemental brief; however, neither his supplemental petition nor his response to the answer specifically addressed the state court findings.  Roberson has made no real attempt to demonstrate cause for the default and actual prejudice, or demonstrate that the failure to

consider the claim would result in a fundamental miscarriage of justice; thus, the claims 18 through 23 are procedurally barred.  Furthermore, to the extent that the state courts alternatively decided the claims on the merits, Roberson failed to show, as required by 28 U.S.C. § 2254(d), that the State court findings resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States, or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

In addition to the foregoing, Roberson's claims lack merit in light of clearly established federal law as decided by the Fifth Circuit.  He initially argued that the special issue on mitigation forces jurors to weigh the aggravating circumstances against mitigating circumstances, without informing them that such is their task.  He complained that jurors are not told the process by which they are to work through the weighing process.  Roberson's claims, however, misrepresent the nature of Texas law. Texas' capital sentencing scheme makes it a "non-weighing state" in that it does not require the jury to "weigh" aggravating factors against mitigating factors. *Hughes v. Johnson,* 191 F.3d 607, 623 (5th Cir.1999), *cert. denied,* 528 U.S. 1145 (2000).  In Texas, the jury considers aggravating factors in the guilt-innocence phase of the trial where the defendant's eligibility for a death sentence is determined. *Woods,* 307 F.3d at 359.  If the jury finds an aggravating factor in the guilt-innocence phase, the defendant is eligible for a death sentence.  *Hughes,* 191 F.3d at 623.  During the punishment phase, the jury selects either death or life imprisonment.  *Woods,* 307 F.3d at 359.  The jury instructions and special issues must allow the jury to consider and give full effect to a defendant's mitigating evidence in imposing a sentence.  *Penry II,* 532 U.S. at 797.  The case law is clear that the jury may be given unbridled discretion in deciding whether to spare the defendant's life.  *Tuilaepa,* 512 U.S. at 979-80; *Woods,* 307 F.3d at 359. Roberson's claims reveal a basic misunderstanding of Texas law. They are

devoid of merit.  Moreover, because no clearly established Supreme Court precedent requires that jurors be instructed to "weigh" evidence or "how to weigh" evidence in a non-weighing state, Roberson's request for relief would require the Court to issue a new rule that would be barred by *Teague* principles.

The Director astutely observed that Roberson's mistaken idea came from two sources:  *Walton v. Arizona*, 497 U.S. 639 (1990), and *Johnson v. Texas,* 509 U.S. 350 (1993) .  The Fifth Circuit has observed that the Supreme Court overruled *Walton* to the extent that it allowed a sentencing judge, sitting without a jury, to find an aggravating circumstance necessary for the imposition of the death penalty.  *Green v. Quarterman*, 312 F. App'x 635, 639-640 (5th Cir.), *cert. denied*, 558 U.S. 882 (2009).  The Director correctly noted that the sentencing structure of Arizona's capital sentencing scheme is nothing like that of Texas.  *Johnson*, on the other hand, concerned an older (pre-1991) version of the Texas sentencing scheme, a pre-*Penry I* conviction without a mitigation special issue, that did not apply to Roberson's trial.  *Johnson*, 509 U.S. at 353 n.1.  These cases simply are not applicable to Roberson's trial.

Roberson also claims that article 37.071 shifts the burden of proof to the defendant to prove that sufficient mitigating circumstances exist to warrant a life sentence.  This argument essentially repeats the claim in ground for relief thirteen.  As was previously noted, this type of claim has regularly been raised in Texas death penalty cases and rejected by both the Fifth Circuit and this Court. *Blue*, 665 F.3d at 668;  *Druery*, 647 F.3d at 546;  *Rowell*,  398 F.3d at 378;  *Cobb v. Thaler*, No. 2:08cv123, 2011 WL 672333 at *13 (E.D. Tex. Feb. 15, 2011), *aff'd*, 682 F.3d 364 (5th Cir. 2012), *cert. denied*, 133 S. Ct. 933 (2013).  The Director also appropriately noted that the issue is moot in this case because the explicit language in the jury instruction placed the burden of proof on both special issues on the State.  5 CR 638.  Indeed, the state habeas court in this case found that the jury was

instructed that "the burden of proof in this phase of the trial still rests upon the State and never shifts

to the Defendant."  17 SHCR 2767.  Roberson's claim that the burden was shifted to him is fallacious.

Roberson finally complained that the special sentencing issue does not require jurors to

consider mitigating circumstances alone in determining whether a life sentence is warranted.  He did

not, however, cite any Supreme Court authority for the proposition that jurors must consider mitigating

circumstances alone in determining whether to spare a defendant's life.  On the other hand, the

Supreme Court has held that it is not necessary to channel the jury's discretion to decide issues of

mitigation.  *Tuilaepa*, 512 U.S. at 979-80 (A jury  "may be given unbridled discretion in determining

whether the death penalty should be imposed after it has found that the defendant is a member of the

class made eligible for that penalty.").  Relief on claims 18 through 23 should be denied because the

grounds are procedurally barred, because Roberson failed to satisfy his burden under 2254(d) and

because they lack merit under clearly established federal law.

> **Claim Number 24:  The trial court violated the Eighth and Fourteenth Amendments to the United States Constitution by failing to instruct the jury that a "No" vote by a single jury member would result in a life sentence instead of a death sentence despite the statutory requirement of 10 votes for a "No" answer to Article 37.071 § 2(b)(1) or for a "Yes" vote to Article 37.071 § 2(e)**

> **Claim Number 25:  The trial court violated Article I, §§ 10, 13 and 19 of the Texas Constitution by failing to instruct the jury that a "No" vote by a single jury member would result in a life sentence instead of death despite the statutory requirement of 10 votes for a "No" answer to Article 37.071 § 2(b)(1) or for a "Yes" vote to Article 37.071 § 2(e).**

In claims 24 and 25, Roberson argued that the trial court violated the Eighth and Fourteenth

Amendments, along with Texas law, by failing to instruct the jury that a "No" vote by a single jury

member would result in a life sentence instead of death despite the statutory requirement of 10 votes

for a "No" answer to article 37.071 § 2(b)(1) or for a "Yes" vote to article 37.071 § 2(e).  The Texas

procedure "is commonly known as the '10-12 Rule.'" *Alexander v. Johnson*, 211 F.3d 895, 897 (5th Cir. 2000).  Roberson acknowledged that both the Fifth Circuit and Texas Court of Criminal Appeals have rejected these claims, but he presented them in order to preserve it for Supreme Court review.

During the state habeas proceedings, the trial court found that the claims concerning the mitigation special sentencing issue were procedurally barred because Roberson failed to contemporaneously object at trial or to raise them during direct appeal.  17 SHCR 2776.  In the alternative, the state trial court reviewed the merits of Roberson's claims and found that they lacked merit.  17 SHCR 2776-78.  The Texas Court of Criminal Appeals subsequently denied relief based on the trial court's findings and conclusions and its own review.

In the present petition, Roberson once again addressed the findings by asserting that it was not possible for counsel to brief the litany of waiver and procedural default findings and conclusions found by the trial court due to the AEDPA's statute of limitations.  Pet. 232.  He asserted that he intended to address the findings in a supplemental brief; however, neither his supplemental petition nor his response to the answer specifically addressed the state court findings.  Roberson has made no real attempt to demonstrate cause for the default and actual prejudice, or demonstrate that the failure to consider the claim would result in a fundamental miscarriage of justice; thus, the claims are procedurally barred.  Furthermore, to the extent that the state courts alternatively decided the claims on the merits, Roberson failed to show, as required by 28 U.S.C. § 2254(d), that the State court findings resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States, or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

In addition to the foregoing, Roberson's claims lack merit in light of clearly established federal law as decided by the Fifth Circuit.  Roberson acknowledged that the claims have been rejected by the Fifth Circuit.  Indeed, the Fifth Circuit has rejected such claims and further found that they were barred by *Teague*.  *Blue*, 665 F.3d at 669-670;  *Dreury*, 647 F.3d at 542-43;  *Miller*, 200 F.3d at 288-89. Relief on claims 24 and 25 should be denied because the claims are procedurally barred, because Roberson has not satisfied his burden under § 2254(d) and because they lack merit under clearly established federal law.

> **Claim Number 26:   Article 37.071 § 2(e) is unconstitutional under the Eighth and Fourteenth Amendments to the United States Constitution because appellate review of the second special issue is impossible.**

In claim number 26, Roberson argues that Article 37.071 § 2(e) is unconstitutional under the Eighth and Fourteenth Amendments because appellate review of the second special issue is impossible. He noted that the second special issue asks jurors to decide whether the defendant is a future danger to society.  He acknowledged that the argument was rejected by the Texas Court of Criminal Appeals in *Eldrige v. State*, 940 S.W.2d 646, 652 (Tex. Crim. App. 1996).  He specified that he raised the matter merely to preserve it for Supreme Court review.

During the state habeas proceedings, the trial court found that the claim is procedurally barred because Roberson failed to contemporaneously object at trial or to raise it on direct appeal.  17 SHCR 2776.  In the alternative, the state trial court reviewed the merits of Roberson's claim and found that it lacks merit.  17 SHCR 2778.  The Texas Court of Criminal Appeals subsequently denied relief based on the trial court's findings and conclusions and its own review.

In the present petition, Roberson once again addressed the findings by asserting that it was not possible for counsel to brief the litany of waiver and procedural default findings and conclusions found by the trial court due to the AEDPA's statute of limitations.  Pet. 236.  He asserted that he intended

to address the findings in a supplemental brief; however, neither his supplemental petition nor his response to the answer specifically addressed the state court findings.  Roberson has made no real attempt to demonstrate cause for the default and actual prejudice, or demonstrate that the failure to consider the claim would result in a fundamental miscarriage of justice; thus, claim number 26 is procedurally barred.  Furthermore, to the extent that the state courts alternatively decided the claims on the merits, Roberson failed to show, as required by 28 U.S.C. § 2254(d), that the State court findings resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States, or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

In addition to the foregoing, Roberson's claim lacks merit in light of clearly established federal law as decided by the Fifth Circuit.  The Fifth Circuit has regularly rejected claims complaining that the Constitution requires the Texas Court of Criminal Appeals to review mitigating evidence.  *Rowell*, 398 F.3d at 378; *Woods*, 307 F.3d at 359-60; *Moore*, 225 F.3d at 506-07.  More recently, the Fifth Circuit rejected this type of claim once again "because it is easily rejected on the merits."  *Adams*, 421 F. App'x at 336-37.  Claim number 26 should be denied because it is procedurally barred, because Roberson has not satisfied his burden under § 2254(d) and because it lacks merit under clearly established federal law.

> **Claim Number 27:  The Texas Capital Punishment Scheme and Texas Code of Criminal Procedure Article 37.071 violate the Cruel and Unusual Punishment Clauses of the Eighth and Fourteenth Amendments to the United States Constitution because they fail to provide for life without parole.**

Roberson skipped claim number 27.  After finishing his discussion regarding claim number 26, he immediately started a discussion on claim number 28.  He presented the ground for relief to the

state courts, but he chose to forego presenting it to this Court; thus, the issue is deemed abandoned for

purposes of federal habeas review.

> **Claim Number 28:  Science evidence demonstrates that the jury instructions used in the sentencing phase failed to explain the concept of mitigating evidence, thereby violating Roberson's rights to a fair trial, due process, equal protection and not to suffer cruel and unusual punishment as guaranteed by the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution.**

> **Claim Number 29:  Social science evidence demonstrates that the jury instructions used in the sentencing phase failed to define key terms "criminal acts of violence," "probability," "continuing threat," "society," thereby violating Roberson's rights to a fair trial, due process, equal protection and not to suffer cruel and unusual punishment as guaranteed by the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution.**

> **Claim Number 30:  Social science evidence aside, the jury instructions used in the sentencing phase failed to define key terms "criminal acts of violence," "probability," "continuing threat," society," "mitigating evidence," and "culpability," thereby violating Roberson's rights to a fair trial, due process, equal protection and not to suffer cruel and unusual punishment as guaranteed by the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution.**

Roberson contends that the jury instructions and special issues failed to adequately explain the

concept of mitigating evidence and key terms, including "criminal acts of violence," "probability,"

"continuing threat," "society," and "culpability," thereby denying him a fair trial, due process, equal

protection, and rendering his death sentence cruel and unusual punishment.

During the state habeas proceedings, the trial court found that the claims concerning the

mitigation special sentencing issue were procedurally barred because Roberson failed to

contemporaneously object at trial or to raise them during direct appeal.  17 SHCR 2776.  In the

alternative, the state trial court reviewed the merits of Roberson's claims and found that they lacked

merit.  17 SHCR 2777.  The state trial court provided the following explanation as to why the

punishment charge complied with the requirements of Tex. Code Crim. Proc. Ann. art. 37.071 and

sufficiently instructed the jury:

> 164.   The Court finds that [Roberson] complains that his reading of "social science evidence" proves that the charge at punishment does not instruct the jury adequately regarding mitigating circumstances and regarding certain definitions of words used in the charge, including "criminal acts of violence," "probability," "continuing threat," and "society." The Court finds and concludes as a matter of law that the charge given was proper, and that this Court was not constitutionally required to define the commonly used words contained in the special issues - even to the extent that [Roberson] objected and requested definitions at trial. (See CRV: 629-32). *Rayford v. State*, 125 S.W.3d 521, 532-35 (Tex. Crim. App. 2003); *Chamberlain v. State*, 998 S.W.2d 230, 237-38 (Tex. Crim. App. 1999), *cert. denied*, 528 U.S. 1082, 120 S. Ct. 805, 145 L.Ed.2d 678 (2000). *And se Corwin v. State*, 870 S.W.2d 23, 26 (Tex. Crim. App. 1993), *cert. denied*, 513 U.S. 826 (1994); and *Cantu v. State*, 939 S.W.2d 627, 649 (Tex. Crim. App. 1997) ("Because the consideration and weighing of mitigation evidence is an open-ended, subjective determination engaged in by each individual juror, we conclude that Article 37.071 § 2(f)(4) does not unconstitutionally narrow the jury's discretion to factors concerning only moral blameworthiness as appellant alleges").

17 SHCR 2779.  The Texas Court of Criminal Appeals subsequently denied relief based on the trial

court's findings and conclusions and its own review.

In the present petition, Roberson addressed the findings by asserting that it was not possible

for counsel to brief the litany of waiver and procedural default findings and conclusions found by the

trial court due to the AEDPA's statute of limitations.  Pet. 249-50.  He asserted that he intended to

address the findings in a supplemental brief; however, neither his supplemental petition nor his

response to the answer specifically addressed the state court findings.  Roberson has made no real

attempt to demonstrate cause for the default and actual prejudice, or demonstrate that the failure to

consider the claim would result in a fundamental miscarriage of justice; thus, claims 28 through 30 are

procedurally barred.  Furthermore, to the extent that the state courts alternatively decided the claims

on the merits, Roberson failed to show, as required by 28 U.S.C. § 2254(d), that the State court

findings resulted in a decision that was contrary to, or involved an unreasonable application of, clearly

established federal law as determined by the Supreme Court of the United States, or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

In addition to the foregoing, Roberson's claims lack merit in light of clearly established federal law as decided by the Fifth Circuit.  The Fifth Circuit recently rejected the same basic claims with the following explanation:

> In this claim, Rivas complains that his due process rights were violated by the trial court's instructions to the jury with special issues that contained allegedly vague and undefined terms. Specifically, Rivas complains of the trial court's failure to define the terms "probability," "criminal acts of violence," and "continuing threat to society," included in the first special issue submitted to the jury.  As with his previous claim, Rivas acknowledges that this claim is foreclosed by circuit precedent holding that these terms are not unconstitutionally vague and that their meanings may be readily understood.  *See, e.g., Woods v. Johnson*, 75 F.3d 1017, 1033-34 (5th Cir. 1996); *James v. Collins*, 987 F.2d 1116, 1119-20 (5th Cir. 1993); *Nethery v. Collins*, 993 F.2d 1154, 1162 (5th Cir. 1993).  Rivas again maintains this argument to preserve it for further review.  We deny a COA on this claim.

*Rivas*, 432 F. App'x at 405 (footnote omitted).  The cases cited by the Fifth Circuit reveal that this issue was settled in the 1990s.  Prior to the filing of the present petition, this Court rejected these claims raised by Roberson's current counsel in *Simpson*, 2007 WL 1008193, at *36-37.

**Claim Number 32:  The application of the "child under six" aggravator, Section 19.03(a)(8) of the Texas Penal Code, was an unreasonable application of clearly established federal law.  (Invalid death aggravator Eighth and Fourteenth Amendments to the United States Constitution)**

In claim number 32, Roberson argues that there is no valid penological reason for subjecting murderers of children under six to the death penalty.  Stated differently, the "child under six" provision contained in Section 19.03(a)(8) of the Texas Penal Code is not a valid aggravator under the Eighth and Fourteenth Amendments.  On direct appeal, he stressed that the Supreme Court has specified that "[t]here must be a valid penological reason for choosing from among the many criminal defendants the few who are sentenced to death."  *Spaziano v. Florida*, 468 U.S. 447, 459 n.7 (1984).  In the present petition, he acknowledged that "[t]he death of a child is a terrible thing," but he argued that the record fails to show that the offense in this case "is among the worse of the worst."  He emphasized that the death penalty is reserved for crimes that are "especially heinous, atrocious and cruel." *Maynard v. Cartwright*, 486 U.S. 356, 361 (1988).  He noted that the aggravating circumstances must permit the sentencer to make a "principled distinction between those who deserve the death penalty and those who do not."  *See Lewis v. Jeffers*, 497 U.S. 764, 774 (1990).  He argued that the present case does not warrant the death penalty.

The Texas Court of Criminal Appeals rejected the claim on direct appeal.  *Roberson*, 2002 WL 34217382, at *11.  The Court noted that it had considered and rejected the very argument Roberson was making in *Henderson v. State*, 962 S.W.2d 544 (Tex. Crim. App. 1997).  *Id.*  Indeed, the Texas Court of Criminal Appeals has consistently rejected challenges to the statute making a child murder a capital offense.  *See Ripkowski v. State*, 61 S.W.3d 378, 392 (Tex. Crim. App. 2001), *cert. denied*, 539 U.S. 916 (2003); *Black v. State*, 26 S.W.3d 895, 896-899 (Tex. Crim. App. 2000), *cert. denied*, 538 U.S. 988 (2003).

72

The Fifth Circuit has likewise considered the argument and rejected it as follows:

A COA was granted on the issue of whether Styron's conviction violated the cruel and unusual punishment clauses of the Eighth and Fourteenth Amendments. In *Arave v. Creech,* 507 U.S. 463, 470, 113 S.Ct. 1534, 123 L.Ed.2d 188 (1993), the Supreme Court held that "to satisfy the Eighth and Fourteenth Amendments, a capital sentencing scheme must 'suitably direc[t] and limi[t]' the sentencer's discretion 'so as to minimize the risk of wholly arbitrary and capricious action.' " (citing *Lewis v. Jeffers,* 497 U.S. 764, 110 S.Ct. 3092, 111 L.Ed.2d 606 (1990)). The Court has set out a two-part test to determine the constitutionality of a death penalty scheme, examining both the eligibility decision and selection decision. *Tuilaepa v. California,* 512 U.S. 967, 114 S.Ct. 2630, 129 L.Ed.2d 750 (1994). As Styron attacks only the eligibility requirement, only that portion of the test is relevant. "To render a defendant eligible for the death penalty in a homicide case, we have indicated that the trier of fact must convict the defendant of murder and find one 'aggravating circumstance' (or its equivalent) at either the guilt or penalty phase." *Tuilaepa,* 512 U.S. at 972, 114 S.Ct. 2630 (internal citations omitted). "As we have explained, the aggravating circumstance must meet two requirements. First the circumstance may not apply to every defendant convicted of a murder; it must apply only to a subclass of defendants convicted of murder. Second, the aggravating circumstance may not be unconstitutionally vague." *Id.* (internal citations omitted).

Styron argues that former Texas Penal Code § 19.03(a)(7), now Texas Penal Code § 19.03(a)(8), violates the prohibition against cruel and unusual punishment because the age of a victim does not establish a principled basis for distinguishing defendants under the constraints of *Arave.* He asserts that there is no principled basis for distinguishing between a defendant who murdered a child under the age of six from one who murdered an older child. We disagree. Under the test presented in *Tuilaepa,* the aggravating circumstance for capital murder of murdering a child under the age of six is constitutionally sufficient. First, it does not apply to every defendant convicted of murder; it applies only to a certain subclass of defendants. *See Tuilaepa,* 512 U.S. at 972, 114 S.Ct. 2630. Second, it is not unconstitutionally vague. *See Henderson v. State,* 962 S.W.2d 544, 563 (Tex.Crim.App.1997) ("The child-murder provision meets both tests: murderers of children under six is a subclass of murderers in general, and 'children under six' is a clear and definite category."). On the contrary, the statute is very clear unlike other statutes which the Supreme Court has found to be vague. *See, e.g., Maynard v. Cartwright,* 486 U.S. 356, 108 S.Ct. 1853, 100 L.Ed.2d 372 (1988) (holding "especially heinous, atrocious, or cruel" to be vague). The "vagueness review is quite deferential." *Tuilaepa,* 512 U.S. at 973, 114 S.Ct. 2630.

Styron misses the mark when he argues that under the Eighth Amendment, conviction and imposition of the death penalty for the murder of a child under six years old is arbitrary. "A *vague propositional factor* used in the sentencing decision creates an unacceptable risk of randomness, the mark of the arbitrary and capricious sentencing process prohibited by *Furman v. Georgia*." *Id.* at 974-75, 114 S.Ct. 2630 (emphasis added). Texas Penal Code § 19.03(a)(7), now Texas Penal Code § 19.03(a)(8), has no such vague propositional factor and is not arbitrary. *See Godfrey v. Georgia,* 446 U.S. 420, 428, 100 S.Ct. 1759, 64 L.Ed.2d 398 (1980) ("A capital sentencing scheme must, in short, provide a 'meaningful basis for distinguishing

73

the few cases in which [the penalty] is imposed from the many cases in which it is not. This means if a State wishes to authorize capital punishment it has a constitutional responsibility to tailor and apply its law in a manner that avoids arbitrary and capricious infliction of the death penalty. Part of a State's responsibility in this regard is to define the crimes for which death may be the sentence in a way that obviates 'standardless [sentencing] discretion.' ") (internal citations omitted).

On a more general level, the Supreme Court upheld the Texas death penalty scheme insofar as it narrowed the definition of capital murder to circumstances in which there was "at least one statutory aggravating circumstance in a first-degree murder case before a death sentence may even be considered." *Jurek v. Texas,* 428 U.S. 262, 276, 96 S.Ct. 2950, 49 L.Ed.2d 929 (1976). Murdering a child under six is a sufficiently narrow statutory aggravating factor. Therefore, we do not find a violation of the prohibition against cruel and unusual punishment.

*Styron v. Johnson*, 262 F.3d 438, 451-52 (5th Cir. 2001), *cert. denied*, 534 U.S. 1163 (2002).  The

*Styron* decision is clearly established law in the Fifth Circuit.  In light of *Styron*, the present claim lacks

merit and should be rejected.

**Claim Number 33:  By refusing to instruct the jury at either phase of the trial that, in order to impose death as a penalty, the State was required to establish beyond a reasonable doubt that Roberson acted deliberately, or even intentionally, in killing the victim, the decision of the Texas courts involved an unreasonable application of constitutional law clearly established in *Jurek*.  (Derived from points of error nine and ten on direct appeal to the Texas Court of Criminal Appeals.)**

In claim number thirty-three, Roberson complained about the lack of a "deliberateness"

requirement in the capital murder statute.  More specifically, he argues that by refusing to instruct the

jury at either phase of the trial that, in order to impose death as a penalty, the State was required to

establish beyond a reasonable doubt that he acted deliberately, or even intentionally, in killing the

victim, the Texas courts employed an unreasonable application of constitutional law clearly established

in *Jurek*.  He asserted that the lack of a "deliberateness" requirement in the capital murder statute

makes it unconstitutional under the Eighth and Fourteenth Amendments.

74

Roberson noted that this claim is derived from his ninth and tenth points of error presented on direct appeal.  He admitted that the Texas Court of Criminal Appeals cited *Jurek* in finding that it has been repeatedly held that Tex. Code. Crim. Pro. Ann. art. 37.071 does not violate the Eighth Amendment and the points of error were overruled.

A review of the opinion by the Texas Court of Criminal Appeals reveals that it rejected points of error nine and ten as follows:

> In his ninth point of error, the appellant claims the jury instructions called for under the Texas capital-murder statute violate his rights under the Eighth and Fourteenth Amendments because they permit the imposition of the death penalty without a finding of enhanced culpability. In his tenth point of error, he argues that the lack of a "deliberateness" requirement in the capital-murder statute makes it unconstitutional under the Eighth and Fourteenth Amendments. Article 37.071 has repeatedly been held not to violate the Eighth Amendment. We overrule points of error nine and ten.

*Roberson*, 2002 WL 34217382, at *12 (citing *Jurek v. Texas*, 428 U.S. 262;  *Threadgill v. State,* 146 S.W.3d 654, 672–73 (Tex. Crim. App. 2004);  *Garcia v. State,* 126 S.W.3d 921, 929 (Tex. Crim. App. 2004);  *Reyes v. State,* 84 S.W.3d 633, 637 (Tex. Crim. App. 2002)).

The Texas Court of Criminal Appeals' decision cites a number of cases which show that the issue has been regularly discussed by the Court.  The Court outlined the historical development of the special issues provided by Article 37.071 in *Ex parte Tennard*, 960 S.W.2d 57 (Tex. Crim. App. 1997), *cert. denied*, 524 U.S. 956 (1998).  The Court discussed the previous version of Article 37.071 and why it was changed as follows:

> In 1972, the Supreme Court held that the imposition of the death penalty in Texas for the offense of rape violated the Eighth and Fourteenth Amendments to the United States Constitution.  Subsequently, the Texas legislature narrowed the scope of the death penalty crimes to murder in specified circumstances, and required the jury to answer issues regarding deliberateness, future dangerousness, and in some instances provocation. *Jurek v. Texas*, 428 U.S. 262, 268-69, 96 S.Ct. 2950, 2954-55, 49 L.Ed.2d 929 (1976).  In a plurality opinion, the Supreme Court upheld the new Texas death penalty scheme as facially constitutional, in part, because the special issues permitted the jury's *consideration* of mitigating factors. *Id.* at 272-74, 276, 96 S.Ct. at 2956-57, 2958. . . .  In 1989, the Court held that the special issues of article

75

37.071(b) were unconstitutional as applied to Johnny Paul Penry they did not provide the jury with a vehicle in which to give full mitigating effect to evidence of Penry's mental retardation, arrested development, and background of childhood abuse.

*Id.* at 63 (footnote omitted).  *Penry I*[14] mandated the addition of a new instruction focusing on

mitigating evidence. *Id.* at 64.  The Texas Legislature complied by changing the statute in 1991.

The new statute omitted the deliberateness special issue, which led to the type of challenges

being presented by Roberson.  The Director correctly observed that the Texas Court of Criminal

Appeals fully addressed this issue in the context of *Jurek*  in *Sonnier v. State*, 913 S.W.2d 511 (Tex.

Crim. App. 1995).  The Court rejected the challenge as follows:

In point of error five appellant argues that Article 37.071 as amended is violative of the Eighth and Fourteenth Amendments to the United States Constitution. Appellant argues the deletion of the deliberateness special issues regresses from the safeguards against "wanton" and "freakish" application of the death penalty found in the former Article 37.071, with the result that the assessment of the death penalty has once again become unacceptably arbitrary and erratic. *See Branch v. Texas,* decided with *Furman v. Georgia,* 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972). Acknowledging that in *Jurek v. Texas,* 428 U.S. 262, 96 S.Ct. 2950, 49 L.Ed.2d 929 (1976), the United States Supreme Court held that our capital punishment scheme was not unconstitutional, arbitrary or erratic, appellant argues that *Jurek* is no longer controlling because of the amendments to Article 37.071.

In *Jurek* the Supreme Court focused on two aspects of our sentencing scheme. First the court focused on the narrow statutory definition of capital murder found in Section 19.03 of the Texas Penal Code. *Id.* at 270–271, 96 S.Ct. at 2955–2956. Thereafter, Justice Stevens, writing for the Court, focused on Article 37.071 asking whether it provided a vehicle for consideration of mitigating evidence; focusing entirely on the second special issue (future dangerousness), he found it could provide a sufficient vehicle for the consideration of mitigating evidence. *Id.* at 271–273, 96 S.Ct. at 2956–2957. The *Jurek* court in no way suggested that the question of deliberation was pivotal to its decision; to the contrary, an honest reading of the opinion suggests that the question of deliberation was irrelevant to the Court's concerns and analysis under *Furman*.

In *Jurek,* the Supreme Court held:

Thus, Texas law essentially requires that one of five aggravating circumstances be found before a defendant can be found guilty of capital murder, and that in considering

---

[14]*Penry v. Lynaugh*, 492 U.S. 302 (1989).

whether to impose a death sentence the jury may be asked to consider whatever evidence of mitigating circumstances the defense can bring before it. It would appear that, as in Georgia and Florida, the Texas capital-sentencing procedure guides and focuses the jury's objective consideration of the particularized circumstances of the individual offense and the individual offender before it can impose a sentence of death.

428 U.S. at 273–274, 96 S.Ct. at 2957. There is nothing in the amendments to Article 37.071 which would change this holding. Indeed, the addition of the new special issue regarding mitigating evidence brings Article 37.071 into further compliance with the concerns of the Eighth Amendment as expressed by the Supreme Court in *Jurek*. **Point of error five is overruled.**

*Sonnier*, 913 S.W.2d at 519-520 (footnotes omitted).

The Texas Court of Criminal Appeals appropriately observed that the Supreme Court in *Jurek* was not actually concerned with deliberateness; instead, the issue was whether a jury could fully consider mitigating factors. Indeed, with respect to the deliberateness and provocation special issues, the Supreme Court noted that "it is as yet undetermined whether or not the jury's consideration of those questions would properly include consideration of mitigating circumstances." *Jurek*, 428 U.S. at 272 n.7. In *Penry I*, the Court concluded that the statute did not permit a jury to consider all of the mitigating circumstances; thus, *Penry I* mandated the change in the statute. Roberson's focus on deliberateness as being pivotal misrepresents the issue that was an actual concern in *Jurek*. The issue was whether a jury could consider all of the mitigating evidence, not deliberateness. Roberson has not identified any Supreme Court or Fifth Circuit authority that supports his claim that Texas' current special issues violate the Eighth Amendment. As appropriately observed by the Texas Court of Criminal Appeals, the current special issues bring Article 37.071 into further compliance with the Eighth Amendment as expressed by the Supreme Court in *Jurek*. The claim lacks merit.

**Claim Number 34:  The statutory moral blameworthiness instructions and the trial court's improvised "personal culpability" instructions improperly limited the scope of the Texas mitigation inquiry.  *Skipper v. South Carolina*, 476 U.S. 1 (1986).**

In claim number 34, Roberson argues that the moral blameworthiness supplemental instruction to the mitigation inquiry, along with its improvised counterpart on "personal culpability," likely caused the sentencing jurors to disregard some parts of  the defendant's mitigation case.  He explained that mental health issues not amounting to outright insanity (such as his low IQ, probable child abuse, and other mental health issues not amounting to outright insanity) are entitled to some weight as mitigation, but many reasonable jurors may refuse to consider this evidence because it does not actually excuse the crime itself.  He asserted that good deeds and good conduct while incarcerated may also be excluded by this supplemental instruction.  He argued that this is a clear violation of the principles of *Lockett*, *Penry* and *Skipper* (good conduct while incarcerated must be considered by the capital sentencing jury).

The Director asserted in response that the claim is new and completely unexhausted.  A review of the record in this case reveals that this issue was not raised on either direct appeal or in the state habeas corpus proceedings.  The Director correctly characterized it as unexhausted.  A federal court may not grant habeas relief to a state prisoner unless "the applicant has exhausted the remedies available in the courts of the State." 28  U.S.C. § 2254(b)(1)(A).  In order to exhaust properly, he must "fairly present" all of his claims to the state court.  *Picard*, 404 U.S. at 275.  In Texas, all claims must be presented to and ruled on by the Texas Court of Criminal Appeals.  *Richardson v. Procunier*, 762 F.2d 429 (5th Cir. 1985);  *Deters v. Collins*, 985 F.2d 789 (5th Cir. 1993).  When a petition includes claims that have been exhausted along with claims that have not been exhausted, it is called a "mixed petition," and historically federal courts in Texas have dismissed the entire petition for failure to exhaust.  *Galtieri v. Wainwright*, 582 F.2d 348, 355 (5th Cir. 1978) (*en banc*).

78

In recent years, however, unexhausted claims in a mixed petition have been dismissed as procedurally barred.  *See Fearance v. Scott*, 56 F.3d 633, 642 (5th Cir.), *cert. denied*, 515 U.S. 1153 (1995);  *Emery v. Johnson*, 139 F.3d 191, 200-02 (5th Cir. 1998).  Such unexhausted claims would be procedurally barred because if a petitioner attempted to exhaust them in state court they would be barred by the abuse-of-the-writ doctrine of Article 11.071 of the Texas Code of Criminal Procedure.  *See Horsley v. Johnson*, 197 F.3d 134, 137 (5th Cir. 1999).  A federal district court abuses its discretion by dismissing unexhausted claims without prejudice when such claims would be barred by the Texas abuse-of-the-writ doctrine.  *Id.* at 138.  The procedural bar may be overcome by demonstrating cause for the default and actual prejudice, or demonstrating that failure to consider the claims will result in a fundamental miscarriage of justice.  *Fearance*, 56 F.3d at 642.

In the present case, Roberson's claim is unexhausted.  He made no attempt in the petition, supplemental petition or reply to the answer to overcome the procedural bar.  He has not demonstrated cause for the  default and actual prejudice, or demonstrated that the failure to consider the claim would result in a fundamental miscarriage of justice.  Consequently, claim number 34 is procedurally barred.

The Director also correctly noted that relief may be denied on unexhausted claims, but it cannot be granted.  28 U.S.C. § 2254(b)(1)(A); (b)(2); *Mercadel*, 179 F.3d at 276-78.  The present claim may alternatively be denied on the merits because it has been rejected by the Fifth Circuit.  *Blue*, 665 F.3d at 666; *Beazley v. Johnson*, 242 F.3d 248, 260 (5th Cir. 2001).  Claim number 34 is both procedurally barred and devoid of merit.

**Claim Number 35:  The failure to assign any burden of proof or persuasion to any party in the mitigation inquiry offends our basic notions of due process of law that do not apply at capital sentencing.  The failure to assign to the State the burden of proof and persuasion of facts adverse to the capital defendant's mitigation case also offends the Due Process Clause.  *In re Winship*, 397 U.S. 358 (1970).**

In claim number thirty-five, Roberson complains that the State does not have the burden of proof and persuasion of facts adverse to his mitigation case.  In some ways, the present claim is a rehash of claims twelve and thirteen, although it is an embellishment upon those claims.  To the extent that he has presented additional arguments in this ground for relief, he did not "fairly present" his claims to the Texas Court of Criminal Appeals.  In order to properly exhaust, he must have informed the state court system of the same facts and legal theories upon which he bases his assertions in his federal habeas petition.  *Picard*, 404 U.S. at 276-77;  *Dispensa*, 847 F.2d at 217-18.  He failed to do so.  As before, he did not attempt to overcome the procedural bar.  Roberson has not demonstrated cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrated that the failure to consider the claim would result in a fundamental miscarriage of justice; thus, the claim is procedurally barred to the extent that it is an embellishment on claims twelve and thirteen.

The Director correctly noted once again that "[a]n application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."  28 U.S.C. § 2254(b)(2).  *See Miller*, 431 F.3d at 245;  *Mercadel*, 179 F.3d at 276-78.  The type of argument presented in this ground for relief was rejected by the Fifth Circuit in *Rowell*, 398 F.3d at 378 ("No Supreme Court or Circuit precedent constitutionally requires that Texas's mitigation special issue be assigned a burden of proof.").  The Fifth Circuit has repeatedly held that claims regarding the failure to assign either party the burden of proof on the mitigation special issue are meritless.  *Blue*, 665 F.3d at 668;  *Druery*, 647 F.3d at 546;  *Adams*, 421 F. App'x at 334;

*Kerr*, 384 F. App'x at 403.  *See also Avila*, 560 F.3d at 315 (The Fifth Circuit found that it was bound by its precedent on this issue).  Claim number 35 is procedurally barred and devoid of merit.

> **Claim Number 36:  The failure to assign any burden of proof or persuasion at the mitigation inquiry is objectively unreasonable as it renders the decision to impose death incapable of meaningful appellate review.**

Claim number thirty-six is a variation of claim number twenty-six.  However, like the previous two claims, Roberson failed to present the specific argument to the Texas Court of Criminal Appeals.  As in the previous two claims, he made no attempt to overcome the procedural bar.  Roberson has not demonstrated cause for the procedural default and actual prejudice as a result of the alleged violation of federal law, or demonstrated that the failure to consider the claim would result in a fundamental miscarriage of justice; thus, it is procedurally barred.  Furthermore, the Fifth Circuit has regularly rejected claims that argue that the Constitution requires the Texas Court of Criminal Appeals to review mitigating evidence.  *Rowell*, 398 F.3d at 378;  *Woods*, 307 F.3d at 359-60;  *Moore*, 225 F.3d at 506-07.  Most recently, the Fifth Circuit rejected this type of claim "because it is easily rejected on the merits."  *Adams*, 421 F. App'x at 336-37.  The claim is both procedurally barred and devoid of merit.

> **Claim Number 37:  The Texas 10-12 and secrecy rule offend the guided discretion guidelines set out by the Supreme Court followed by the Fifth Circuit.**

Claim number thirty-seven is another challenge to the Texas 10-12 rule.  Roberson correctly noted that this claim should be read in connection, and probably merged, with claim number 25.  In conjunction with claim numbers 24 and 25, Roberson acknowledged that his challenge to the Texas 10-12 rule lacks merit in light of clearly established federal law as decided by the Fifth Circuit.  Indeed, the Fifth Circuit has regularly rejected such claims and found that they were barred by *Teague*.  *Blue*, 665 F.3d at 669-670;  *Dreury*, 647 F.3d at 542-43;  *Hughes*, 412 F.3d at 594,  *Miller*, 200 F.3d at 288-89.  Once again, Roberson has included a claim that is devoid of merit.  Moreover, like the

81

previous three claims, Roberson is presenting arguments that he did not present to the Texas Court of

Criminal Appeals.  As before, he has not demonstrated cause for the procedural default and actual

prejudice as a result of the alleged violation of federal law, or demonstrated that the failure to consider

the claim would result in a fundamental miscarriage of justice; thus it is procedurally barred.  The

claim is both procedurally barred and devoid of merit.

> **Claim Number 38:  By failing to conduct an adequate investigation into Mr. Roberson's background, mental health record, family history and upbringing, and by failing to present the results of an adequate investigation to competent experts or to present and explain the results of his investigation to the sentencing jury, trial counsel performed deficiently and below the prevailing professional norms of the legal profession as they existed in 2003.  This failure to investigate prejudiced Mr. Roberson's case for a lesser included offense and for a life sentence upon conviction for capital murder.  *Wiggins v. Smith*, 539 U.S. 510 (2003);  *Williams v. Taylor*, 529 U.S. 362, 395-97 (2000);  *Strickland v. Washington*, 466 U.S. 668 (1984).**

In claim number thirty-eight, Roberson asserts that he "comes from a long line of mental

defectives."  He argues that his "trial lawyer should have found out all about it, retained the right

experts, and made sure the sentencing jury did, too.  But he did not."

Roberson observed that the Texas Court of Criminal Appeals discussed the mitigation

presentation as follows:

> The appellant called two officers from the Anderson County jail to testify that the appellant had no history of violence or disciplinary problems while incarcerated there. The appellant then called Dr. John Krusz. Dr. Krusz's testimony consisted of that which was offered and excluded at the guilt-innocence phase, namely, a discussion of what he referred to as the appellant's "post-concussional type syndrome." Dr. Krusz said that his evaluation of the appellant led him to conclude that, despite his poor ability to deal with stressful situations in the past, the appellant would be able to control his behavior in the controlled, structured environment of prison.

> On cross-examination, Dr. Krusz acknowledged that the major portion of his work was in the treatment of chronic pain and migraine headaches. He also admitted that the appellant had not informed him of his history of abuse towards his ex-wife and children. He also acknowledged that, even if the appellant was brain damaged, there are many people in the world who are brain damaged and have not murdered a child. Dr. Krusz also conceded that the

> appellant's brain disorder might be attributable to the appellant's long-term history of drug abuse, including intravenous drugs.
>
>      The appellant then called Kelly R. Goodness, Ph.D. Dr. Goodness was a forensic psychologist who had interviewed the appellant while he was incarcerated during this trial, as well as other people who knew the appellant, including his family. Dr. Goodness testified that, in her opinion, the appellant had been physically abused as a child by his father, despite denials of abuse by the appellant and his family. She also said she believed that the appellant's two older children had been abused, but that she could find no conclusive evidence to say whether the abuse came from the appellant or his ex-wife. She said she believed the appellant suffered from brain damage—specifically, that his brain was "compromised"—as well as depression, substance dependence, and antisocial-personality disorder. She also testified that the appellant's mother had a very dominant influence on him and that, if not for her influence, he likely would not have sought custody of Nikki. In her opinion, the appellant was unlikely to attempt to escape from prison, nor was he likely to pose a future danger while in prison. After Dr. Goodness's testimony, the appellant rested his punishment case-in-chief.

*Roberson*, 2002 WL 34217382, at *10 (footnote omitted).  Roberson characterized the mitigation evidence presented by his trial counsel as shallow and incomplete.  He asserted that the mitigation investigation failed to meet prevailing professional norms for capital cases in Texas at the time of the 2003 trial.

To support the claim, Roberson obtained the services of Deborah F. Wright, a mitigation specialist and the spouse of one of his federal habeas counsel.  Ms. Wright interviewed one of Roberson's aunts and a cousin.  These family members "did confirm what the available evidence suggested - that there was a great deal of mental illness in Roberson's family.  Some of the family members are thought to be bipolar, and are MHMR clients."  Pet. 280.  In her statement, Ms. Wright expressed the opinion that Roberson has likely inherited a significant predisposition toward poor mental health.  She noted that these relatives were reluctant to divulge information, and they both expressed a desire not to come to court and testify.  Roberson argued that he should be given funding to further develop his *Wiggins* claim.

The Director noted in response that this claim is yet another unexhausted claim.  Roberson did not include the claim in either his direct appeal or in the state habeas corpus proceedings.  The Court would note that Roberson's federal counsel was also his state habeas counsel, and he had the opportunity to present the claim in the state habeas corpus proceedings; nonetheless, he failed to present the claim until the present proceeding.  The Director asserted that Roberson did not show cause and prejudice to excuse the default.  He thus argued that the claim is procedurally barred.

The Director's response is correct.  Roberson did not exhaust his state habeas corpus remedies on this issue.  He has not demonstrated cause for the default and actual prejudice, or demonstrated that the failure to consider the claim would result in a fundamental miscarriage of justice.  Until just recently, Roberson's claim would be foreclosed at this juncture as procedurally barred.  However, the Supreme Court opened the door slightly for a showing of cause and prejudice to excuse the default in *Martinez v. Ryan*, 132 S. Ct. 1309 (2012) and *Trevino v. Thaler*, 133 S. Ct. 1911 (2013).  In *Martinez*, the Supreme Court answered a question left open in *Coleman*: "whether a prisoner has a right to effective counsel in collateral proceedings which provide the first occasion to raise a claim of ineffective assistance at trial."  132 S. Ct. at 1315.  These proceedings were referred to as "initial-review collateral proceedings."  *Id.*  The Court held:

> Where, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance of counsel at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective.

*Id.* at 1320.  The standards of *Strickland* apply in assessing whether initial-review habeas counsel was ineffective.  *Id.* at 1318.

The Supreme Court extended *Martinez* to Texas in *Trevino*.  Although Texas does not preclude appellants from raising ineffective assistance of trial counsel claims on direct appeal, the Court held

84

that the rule in *Martinez* applies because "the Texas procedural system - as a matter of its structure, design, and operation - does not offer most defendants a meaningful opportunity to present a claim of ineffective assistance of trial counsel on direct appeal." *Trevino*, 133 S. Ct. at 1921.  The Court left it to the lower courts to determine on remand whether Trevino's claim of ineffective assistance of counsel was substantial and whether his initial state habeas attorney was ineffective. *Id.*

> The Fifth Circuit has summarized the rule announced in *Martinez* and *Trevino* as follows:
>
> To succeed in establishing cause to excuse the procedural default of his ineffective assistance of trial counsel claims, [petitioner] must show that (1) his underlying claims of ineffective assistance of trial counsel are "substantial," meaning that he "must demonstrate that the claim[s] ha[ve] some merit," *Martinez*, 132 S. Ct. at 1318; and (2) his initial state habeas counsel was ineffective in failing to present those claims in his first state habeas application. *See id.*; *Trevino*, 133 S. Ct. at 1921.

*Preyor v. Stephens*, 537 F. App'x 412, 421 (5th Cir. 2013).  "Conversely, the petitioner's failure to establish the deficiency of either attorney precludes a finding of cause and prejudice." *Sells v. Stephens*, 536 F. App'x 483, 492 (5th Cir. 2013).  The Fifth Circuit recently reaffirmed this basic approach in *Reed v. Stephens*, 739 F.3d 753, 774 (5th Cir. 2014).  The Fifth Circuit has also reiterated the basic principle that a federal court is barred from reviewing a procedurally defaulted claim unless a petitioner shows both cause and actual prejudice. *Hernandez v. Stephens*, 537 F. App'x 531, 542 (5th Cir. 2013).  To show actual prejudice, a petitioner "must establish not merely that the errors at his trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Id.* (citations omitted) (emphasis in original).

In the present case, Roberson is bringing an ineffective assistance of counsel claim based on *Wiggins*.  Thus the issue before the Court is whether his underlying claim of ineffective assistance of trial counsel based on *Wiggins* is "substantial," meaning he must demonstrate that the claim has some

merit.  In a capital sentencing proceeding, "defense counsel has the obligation to conduct a 'reasonably substantial, independent investigation' into potential mitigating circumstances." *Neal v. Puckett*, 286 F.3d 230, 236-37 (5th Cir. 2002) (quoting *Baldwin v. Maggio*, 704 F.2d 1325, 1332-33 (5th Cir. 1983)).  *See also Williams*, 529 U.S. at 395.  In assessing whether counsel's performance was deficient, courts look to such factors as what counsel did to prepare for sentencing, what mitigation evidence he had accumulated, what additional "leads" he had, and what results he might reasonably have expected from those leads.  *Neal*, 286 F.3d at 237.  The reasonableness of counsel's investigation involves "not only the quantum of evidence already known to counsel, but also whether the known evidence would lead a reasonable attorney to investigate further." *Wiggins*, 539 U.S. at 527.  *See also Blanton v. Quarterman*, 543 F.3d 230, 236 (5th Cir. 2008), *cert. denied*, 129 S. Ct. 2383 (2009).

"[C]ounsel should consider presenting . . . [the defendant's] medical history, educational history, employment and training history, family and social history, prior adult and juvenile correctional experience, and religious and cultural influences." *Id.* at 524 (citing ABA Guidelines for the Appointment and Performance of Counsel in Death Penalty Cases § 11.8.6, at 133 (1989).  The Supreme Court stated in *Wiggins* that the "investigation into mitigating evidence should comprise efforts to discover *all reasonably available* mitigating evidence." *Id.*

The Court added, however, that the investigation into mitigating evidence has limits:

[We] emphasize that *Strickland* does not require counsel to investigate every conceivable line of mitigating evidence no matter how unlikely the effort would be to assist the defendant at sentencing.  Nor does *Strickland* require defense counsel to present mitigating evidence at sentencing in every case.  Both conclusions would interfere with the "constitutionally protected independence of counsel" at the heart of *Strickland*, 466 U.S., at 689, 104 S.Ct. 2052.  We base our conclusion on the much more limited principle that "strategic choices made after less than complete investigation are reasonable" only to the extent that "reasonable professional judgments support the limitations on investigation." *Id.* at 690-91, 104 S.Ct. 2052.  A decision not to investigate thus "must be directly assessed for reasonableness in all the circumstances." *Id.*, at 691, 104 S.Ct. 2052.

86

*Wiggins*, 539 U.S. at 533.  The Court held in *Wiggins* that counsel's representation "fell short of . . . professional standards" for not expanding their investigation beyond the investigation report and one set of records they obtained, particularly "in light of what counsel actually discovered" in the records. *Id.* at 524-25.  On the other hand, the Court has found that trial counsel's performance was not deficient where he gathered a substantial amount of information and then made a reasonable decision not to pursue additional sources.  *Bobby v. Van Hook*, 558 U.S. 4, 11-12 (2009).  Similarly, in *Strickland*, the Court found that counsel's decision not to seek more character or psychological evidence than was already in hand was reasonable.  *Strickland*, 466 U.S. at 699.  In order to establish that counsel was ineffective due to a failure to investigate the case, Roberson must do more than merely allege a failure to investigate; instead, he must state with specificity what the investigation would have revealed, what specific evidence would have been disclosed, and how the evidence would have altered the outcome of the trial.  *Anderson v. Collins*, 18 F.3d 1208, 1221 (5th Cir. 1994);  *Rose v. Johnson*, 141 F.Supp.2d 661, 691 (S.D. Tex. 2001).

The Director asserts that the record shows that Roberson's trial attorneys complied with their duty under *Wiggins*.  *See* Answer, pages 97-98.  Roberson's attorneys subpoenaed the Child Protective Services (CPS) records and met with CPS counsel.  5 CR 599.[15]  They considered a number of psychological and physical examinations of Roberson and reviewed his EEG and MRI results with medical and psychiatric experts on more than one occasion.  5 CR 597-99.  Their investigator's records are consistent with counsel's account, revealing a number of interviews with family, neighbors and others.  5 CR 607-610.  The Director noted that Roberson does not contest that ample evidence about his background, abusive childhood, and mental deficiencies was introduced at trial.  He asserted that

---

[15]"CR" refers to the Clerk's Record of documents filed with the district court during Roberson's trial, preceded by a volume number and followed by page number(s).

if Roberson had a congenital mental illness, surely the experts he retained would have discovered it and shared it with the jury.  The Director stressed that the only support for Roberson's claim is an affidavit from a mitigation specialist which indicates that "some of the family members are thought to be bipolar, and are MHMR clients."  The Director noted that Roberson acknowledged that these statements merely "confirm what the available evidence suggested" and presents nothing to indicate that his attorneys did not already know about his familial history.  He stressed that absent evidence in the record, a court cannot consider a habeas petitioner's bald assertions on a critical issue, unsupported and unsupportable by anything else contained in the record, to be of probative value.  *Ross*, 694 F.2d at 1011;  *Koch*, 907 F.2d at 530.

In his response to the answer, Roberson merely discussed the Supreme Court's decision in *Martinez* and argued that it applies to Texas.  The applicability of *Martinez* to Texas, however, is not an issue in light of *Trevino*.  Roberson did not respond to the Director's answer regarding the merits of his *Wiggins* claim.  A review of the record cited by the Director supports a conclusion that Roberson's trial attorneys' investigation into mitigating evidence comprised efforts to discover all reasonably available mitigating evidence.  The new evidence cited by Roberson merely confirmed what his attorneys already knew about his familial history.  Overall, Roberson has not shown that his trial attorneys were ineffective with respect to their duty under *Wiggins* to conduct an investigation into mitigating evidence comprised of efforts to discover all reasonably available mitigating evidence.  Placing all of this in the context of the requirements of *Martinez/Trevino*, Roberson  has not shown an underlying claim of ineffective assistance of trial counsel based on *Wiggins* that is substantial or has some merit.  Furthermore, he has not shown actual prejudice.  He failed to satisfy the requirements of *Martinez/Trevino* in order to excuse the procedural default; thus, claim number 38 is procedurally barred.  Alternatively, it may be rejected because it lacks merit.

**Claim Number 39:  By excluding the testimony of defense witness Dr. Krusz before the jury during the guilt and innocence phase of the trial, the Texas courts unreasonably denied Roberson his right to present a complete defense, contrary to the guarantees of the Sixth, Eighth and Fourteenth Amendments.  *Holmes v. South Carolina.*[16]**

In claim number 39, Roberson complains that Dr. John Claude Krusz, M.D., was not allowed to testify about his diminished capacity and whether he actually intended to kill the victim.  He argued that the ruling excluding the testimony violated *Holmes*, where the Supreme Court found "that a criminal defendant's federal constitutional rights were violated by an evidence rule under which the defendant was not allowed to introduce evidence of third-party guilt if the prosecution has introduced forensic evidence that, if believed, strongly supports a guilty verdict."  *Id.* at 321.

The Texas Court of Criminal Appeals fully addressed whether Dr. Krusz should have been permitted to testify during the guilt-innocence phase of the trial.  The Court provided the following analysis:

> In his eleventh point of error, the appellant claims that the trial court erred by refusing to admit the testimony of John Claude Krusz, M.D. The appellant offered the testimony of Dr. Krusz toward the end of his case-in-chief. The State objected and was granted the opportunity to conduct a voir dire examination of Dr. Krusz outside the presence of the jury. Dr. Krusz testified on voir dire that he had examined the appellant and concluded that the appellant suffered from organic brain syndrome (or more specifically, post-concussional syndrome), which caused him to have poor impulse control and difficulty making rational decisions. The State objected that the testimony amounted to a diminished-capacity defense, which is not recognized as a legal justification for criminal acts. After the voir dire examination of Dr. Krusz, the trial court expressed reservations about the admissibility of his testimony:
>
> > [The Court]: Gentlemen, to be honest with you, as I listened to the doctor testify, that was my concern is, we're getting into the, you know, the negation, as they say of intent that he cannot form intent or knowledge in his mind to commit a crime.
> >
> > [Appellant's Counsel]: That's not all this doctor is testifying to, your honor. First of all, it's saying how he effects [sic], not that there's an absolute absence, but of how it affects his ability to form intent and knowledge. Further, the doctor I believe will

---

[16]547 U.S. 319 (2006).

testify that are certain stress factors, particularly the situation that is the subject will present an emotional response, your Honor. The jury has the obligation to find intentional and knowing conduct. There are also other culpable mental states that we're going to request that the Court put before this jury and I believe those type, the type of organic brain injury that my client suffers has a direct and loathing effect as to whether he was in one of those intents or whether or not he was acting primarily upon an emotional basis.

The trial court ultimately agreed with the State and excluded Dr. Krusz's testimony from the guilt-innocence phase of the trial.

*Roberson*, 2002 WL 34217382, at 6-7.

The Texas Court of Criminal Appeals went on to observe that Texas "does not recognize 'diminished capacity' as an affirmative defense, *i.e.,* a 'lesser form of the defense of insanity.'" *Id.* at 7 (citing *Jackson v. State*, 160 S.W.3d 568, 573 (Tex. Crim. App. 2005)).  Following the issuance of *Jackson*, the Supreme Court decided *Clark v. Arizona*, 548 U.S. 735 (2006).  It was noted that the Supreme Court concluded that every state is free to choose whether it wishes to "channel" mental-health evidence exclusively to the legal insanity defense.  *Roberson*, 2002 WL 34217382, at 7-8 (citing *Clark*, 548 U.S. at 778).

After reviewing *Jackson* and *Clark*, the Texas Court of Criminal Appeals overruled Roberson's ground for relief as follows:

> Acknowledging this ruling, we adhere to our decision in *Jackson* and will continue to give the trial judge discretion to determine whether mental-health evidence proposed by the defendant is relevant to *mens rea* and admissible. In the instant case, we find that the trial judge did not abuse his discretion in denying the appellant's request to call Dr. Krusz. The witness's proposed testimony regarding organic brain syndrome and poor impulse control is not relevant as to the appellant's ability to form the requisite *mens rea* for the offense. It appears that it was merely being used as a mental-health defense not rising to the level of insanity. Point of error eleven is overruled.

*Roberson*, 2002 WL 34217382, at 8.

Roberson argues that the decision is wrong because he had the right to rebut the State's case concerning whether he had the intent to kill.  He did not, however, address the Texas Court of Criminal

90

Appeals' analysis.  Nonetheless, his desire to present a defense less than insanity did not entitle him to present evidence of a diminished capacity.  In *Clark*, the Supreme Court observed that "'[w]hile the Constitution . . .  prohibits the exclusion of defense evidence under rules that serve no legitimate purpose or that are disproportionate to the ends that they are asserted to promote, well-established rules of evidence permit trial judges to exclude evidence if its probative value is outweighed by certain other factors such as unfair prejudice, confusion of issues, or potential to mislead the jury.'"  *Clark*, 548 U.S. at 770 (quoting *Holmes*, 547 U.S. at 326).  Roberson was not entitled to present evidence of a diminished capacity, and the Texas Court of Criminal Appeals' decision regarding the exclusion of such testimony was reasonable in light of the Supreme Court decisions in both *Clark* and *Holmes*.  Similarly, the Fifth Circuit has observed that a diminished capacity defense during the guilt-innocence phase of a trial is not a cognizable defense in Texas.  *Coble*, 496 F.3d at 437-38.  The Director persuasively argued that the exclusion of such evidence was proper.  Indeed, Roberson has not shown that the exclusion of the evidence was improper under clearly established federal law.  The Director also appropriately argued that the position advocated by Roberson would be a new rule of law barred by *Teague*.  Claim number 39 lacks merit.

> **Claim Number 40:  The prosecutor abused his office and intentionally fostered a false impression in the minds of the sentencing jurors by telling them that the word "probability" as used in the future dangerousness special issue, meant a low probability when he knew that the Texas courts had construed the term to mean "more likely than not."  Sixth, Eighth and Fourteenth Amendments.**

> **Claim Number 41:  The trial judge fostered a fundamental miscarriage of justice when he failed to correct the prosecutor's misleading of the sentencing jurors by telling them that the word "probability" as used in the future dangerousness special issue, meant a low probability when the Texas courts had construed the term to mean "more likely than not."  Sixth, Eighth and Fourteenth Amendments.**

> **Claim Number 42: Roberson's trial counsel rendered ineffective assistance to his client when he failed to object to the prosecutor's misleading of the sentencing jurors by telling them that the word "probability" as used  in the future dangerousness special issue,**

**meant a low probability when the Texas courts had construed the term to mean "more likely than not."  Sixth, Eighth and Fourteenth Amendments.**

Claims 40 through 42 were presented for the first time in the supplemental petition.  They concern the prosecutor's discussion of the term "probability" during closing arguments and the lack of a response by the trial court and defense counsel.  Roberson asserted that the prosecutor argued that "probability" means a "low probability," although he acknowledged that the prosecutor actually said, "[a]gain, we're talking about probability.  That doesn't mean high probability.  It can mean low probability.  Simply a probability."  49 RR 13.

The Director correctly observed that the grounds for relief are wholly new and unexhausted.  Roberson's reply did not address the Director's argument that relief should be denied for failure to exhaust.  He has not demonstrated cause for the procedural default and actual prejudice as a result of the alleged violation of federal law, or demonstrated that the failure to consider the claims would result in a fundamental miscarriage of justice.

Roberson employed the phrase "fundamental miscarriage of justice" in claim number 41, but that term is a term of art which means "actual innocence."  *Sawyer v. Whitley*, 505 U.S. 333, 339-40 (1992).  The Director appropriately argued that this claim does not implicate the actual innocence exception to the procedural default doctrine.

Until just recently, these claims would be foreclosed at this juncture as procedurally barred.  Once again, however, the Supreme Court opened the door slightly for a showing of cause and prejudice to excuse the default in *Martinez/Trevino*.  As was noted in conjunction with claim number 38, Roberson must show that (1) his underlying claims of ineffective assistance of trial counsel are substantial, meaning that he must demonstrate that the claims have some merit; and (2) his initial state habeas counsel was ineffective in failing to present those claims in his first state habeas application.

92

Roberson is once again demanding that the term "probability" be defined when a definition is not required.  In grounds 29 and 30, he complained that the term "probability" was not defined, but a definition simply was not required.  At trial, he was unsuccessful in his attempt to have the trial court instruct the jury that future dangerousness means a "high probability, at least 85%."  5 CR 628.  During the state habeas corpus proceedings, the trial court found that it "was not constitutionally required to define the commonly used words contained in the special issues."  17 SHCR 2779.  The Texas Court of Criminal Appeals subsequently adopted the finding.  The term "probability," along with the other terms mentioned in claim numbers 29 and 30, have a "common-sense core of meaning and that criminal juries should be capable of understanding them." *See Paredes v. Quarterman*, 574 F.3d 281, 294 n.17 (5th Cir. 2009) (citing *Jurek*, 428 U.S. at 279 (White, J., concurring));  *Anderson v. Quarterman*, 204 F. App'x 402, 408 (5th Cir. 2006).  The prosecutor's discussion of the term was consistent with a common-sense understanding of the word - it "doesn't mean high probability.  It can mean low probability.  Simply a probability."  Roberson misrepresents the prosecutor's argument in implying that the prosecutor limited the concept of "probability" to only a "low probability."  The Director persuasively argued that, at best, Roberson has only shown that the prosecutor's argument was inconsistent with state law, which is not cognizable under federal habeas review.  *Creel v. Johnson*, 162 F.3d 385, 395 (5th Cir. 1998), *cert. denied*, 526 U.S. 1148 (1999);  *Weeks v. Scott*, 55 F.3d 1059, 1063 (5th Cir. 1995).  Counsel did not have a legitimate basis to object to the prosecutor's discussion of the term. Counsel was not required to make frivolous or futile motions or objections.  *Johnson v. Cockrell*, 306 F.3d at 255;  *Koch v. Puckett*, 907 F.2d at 527.  In the context of *Martinez/Trevino*, Roberson has not shown a substantial claim of ineffective assistance of trial counsel based on his attorney's failure to object to the prosecutor's rather innocuous discussion of the term.

93

Overall, with respect to claim numbers 40 through 42, Roberson has not demonstrated cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrated that the failure to consider the claim would result in a fundamental miscarriage of justice; thus, the claims are procedurally barred.  Alternatively, the claims may be dismissed as meritless.

**Claim Number 43:  The trial was rendered fundamentally unfair because trial counsel failed to request the trial court to instruct the jury at the guilt/innocence phase that the jurors could not consider the evidence tending to show that Roberson sexually assaulted the victim, for any purpose, unless they found and believed beyond a reasonable doubt that the defendant committed a sexual assault of the victim, and even then that the jurors may only consider the same for its proffered purpose, and for no other purposes. Sixth, Eighth and Fourteenth Amendments.**

**Claim Number 44:  The trial was rendered fundamentally unfair because the trial court failed to instruct the jury at the guilt/innocence phase that the jurors could not consider the evidence tending to show that Roberson sexually assaulted the victim, for any purpose, unless they found and believed beyond a reasonable doubt that the defendant committed a sexual assault of the victim, and even then that the jurors may only consider the same for its proffered purpose, and for no other purposes.  Sixth, Eighth and Fourteenth Amendments.**

**Claim Number 45:  Roberson's trial counsel performed deficiently, and prejudiced Roberson's defense of the capital prosecution, in that he failed to request the trial court to instruct the jury at the guilt/innocence phase that the jurors could not consider the evidence tending to show that Roberson sexually assaulted the victim, for any purpose, unless they found and believed beyond a reasonable doubt that the defendant committed a sexual assault of the victim, and even then that the jurors may only consider the same for its proffered purpose, and for no other purposes.  Sixth, Eighth and Fourteenth Amendments.**

Claim numbers 43 through 45 concern the lack of a limiting instruction regarding the evidence of sexual assault.  The Director argued that the claims are wholly unexhausted and procedurally barred. Roberson did not respond to the argument in his reply.  He made no attempt to show that the claims are not procedurally barred.

As before, the discussion of these claims would end at this juncture if it were not slight opening provided by the Supreme Court in *Martinez*/*Trevino*.  Once again, in order to obtain relief, Roberson

must show that (1) his underlying claims of ineffective assistance of trial counsel are substantial, meaning that he must demonstrate that the claims have some merit; and (2) his initial state habeas counsel was ineffective in failing to present those claims in his first state habeas application.  He made no attempt to satisfy his burden.  Claims 43 through 45 are procedurally barred.

Morever, the Director persuasively argued that Roberson's guilt-innocence phase instruction was proper.  Article 38.36(a) of the Texas Code of Criminal Procedure permits the introduction of "all relevant facts and circumstances surrounding the killing and the previous relationship between the accused and the deceased."  The statute made extraneous acts relevant for all purposes, thus rendering a limiting instruction unnecessary.  *See Ex parte Varelas*, 45 S.W.3d 627, 637 (Tex. Crim. App. 2001) (Keller, P.J., dissenting).  Further, under state law, unless a party requests a limiting instruction at the time the evidence is proffered, it is not error to admit it generally without a limiting instruction, *sua sponte* or otherwise, later on.  *Delgado v. State*, 235 S.W.3d 244, 251 (Tex. Crim. App. 2007).  Because the sexual assault was relevant to one of the manner and means charged at the time it was proffered, it was proper for it to be admitted generally.

With respect to ineffective assistance of trial counsel, the Director appropriately argued that counsel's representation was not deficient for failing to ask for a limiting instruction when the jury instructions were proper.  The Texas Court of Criminal Appeals has noted that the question of whether to request a limiting instruction is one of strategy.  *Posey v. State*, 966 S.W.2d 57, 63 (Tex. Crim. App. 1998).  In *Delgado*, the Court made the following observations:

> Texas courts have frequently stated that the decision of whether to request a limiting instruction concerning the proper use of certain evidence, including extraneous offenses, may be a matter of trial strategy.  This is in accord with federal precedent as well, in which trial courts are generally wary of giving a limiting instruction sua sponte because a party might well intentionally forego a limiting instruction as part of its "deliberate . . . trial strategy to minimize the jury's recollection of the unfavorable evidence."

*Delgado*, 235 S.W.2d at 250 (citations omitted).  A court  "must be highly deferential" to counsel and every effort must be made to eliminate the "distorting effect of hindsight." *Strickland*, 466 U.S. at 689. Roberson has not shown that counsel's representation fell below an objective standard of reasonableness by failing to ask for a limiting instruction.  Roberson once again failed to present a substantial claim of ineffective assistance of trial counsel in order to satisfy *Martinez/Trevino*.  Overall, with respect to claim numbers 43 through 45, Roberson has not demonstrated cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrated that the failure to consider the claims would result in a fundamental miscarriage of justice; thus, the claims are procedurally barred.

In conclusion, Roberson has not shown that he is entitled to federal habeas corpus relief with respect to any of his claims.  The petition for a writ of habeas corpus should be denied.

## CERTIFICATE OF APPEALABILITY

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability."  28 U.S.C. § 2253(c)(1)(A).  Although Roberson has not yet filed a notice of appeal, it is respectfully recommended that this Court, nonetheless, address whether he would be entitled to a certificate of appealability.  *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000) (A district court may *sua sponte* rule on a certificate of appealability because "the district court that denies a petitioner relief is in the best position to determine whether the petitioner has made a substantial showing of a denial of a constitutional right on the issues before the court.  Further briefing and argument on the very issues the court has just ruled on would be repetitious.").

A certificate of appealability may issue only if a petitioner has made a substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2).  The Supreme Court fully explained the

requirement associated with a "substantial showing of the denial of a constitutional right" in *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).   In cases where a district court rejected a petitioner's constitutional claims on the merits, "the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.*;   *Henry v. Cockrell*, 327 F.3d 429, 431 (5th Cir. 2003).   "When a district court denies a habeas petition on procedural grounds without reaching the petitioner's underlying constitutional claim, a COA should issue when the petitioner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*

In this case, it is respectfully recommended that reasonable jurists could not debate the denial of Roberson's § 2254 petition on substantive or procedural grounds, nor find that the issues presented are adequate to deserve encouragement to proceed.  *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack*, 529 U.S. at 484).  Accordingly, it is respectfully recommended that the Court find that Roberson is not entitled to a certificate of appealability as to his claims.

## RECOMMENDATION

It is accordingly recommended that the above-styled petition for a writ of habeas corpus be denied and that the case be dismissed with prejudice.  It is further recommended that a certificate of appealability be denied.

## OBJECTIONS

Within fourteen (14) days after receipt of the magistrate judge's report, any party may serve and file written objections to the findings and recommendations contained in the report.

A party's failure to file written objections to the findings, conclusions and recommendations contained in this Report within fourteen days after being served with a copy shall bar that party from

*de novo* review by the district judge of those findings, conclusions and recommendations and, except on grounds of plain error, from appellate review of unobjected-to factual findings and legal conclusions accepted and adopted by the district court. *Douglass v. United Servs. Auto Ass'n.*, 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*).

   **SIGNED this 20th day of August, 2014.**


ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE